# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| RARE BREED TRIGGERS, INC., a Texas corporation,<br><br>*Plaintiff,*<br><br>v.<br><br>BIG DADDY ENTERPRISES, INC., a Florida corporation, BIG DADDY UNLIMITED, INC., a Florida corporation, BLACKSTOCK, INC., a Florida corporation, WIDE OPEN ENTERPRISES, LLC, a New Mexico limited liability company, WE GOT AMMO, INC., a Florida corporation, PERFORMANCE TRIGGERS INC., a Florida Corporation, ATRIUS DEVELOPMENT GROUP CORP., D/B/A ATRIUS TRIGGERS, an Idaho corporation, DELTA 7 LLC, a Florida limited liability company, C&C HOLDINGS GROUP LLC, a Florida limited liability company, ANTHONY MCKNIGHT, an individual, SHERRIE MCKNIGHT, an individual, DOUGLAS RIOS, an individual, CHRISTOPHER RIOS, an individual, MALCOLM BROWN, an individual, LEA ANDREOLI, an individual, and ANDREW MYERS, an individual,<br><br>*Defendants.* | Docket No.: _____<br><br><br>**COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Rare Breed Triggers, Inc. ("RBT"), by and through its attorneys,

Dhillon Law Group, Inc. and Wood Herron & Evans LLP, brings this Complaint



against Defendants Big Daddy Enterprises, Inc., Big Daddy Unlimited, Inc.,

Blackstock, Inc., Wide Open Enterprises, LLC, We Got Ammo, Inc., Atrius

Development Group Corp., at times d/b/a Atrius Triggers, Performance Triggers

Inc., Delta 7 LLC, C&C Holdings Group LLC, Anthony McKnight, Sherrie

McKnight, Douglas Rios, Christopher Rios, Malcolm Brown, Lea Andreoli, and

Andrew Myers (collectively, "Defendants"), and allege, on knowledge as to its

own actions and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1.     This action seeks, among other things, to enforce a Settlement

Agreement that resolved two prior lawsuits over Defendants Big Daddy

Enterprises, Inc., Big Daddy Unlimited, Inc., Wide Open Enterprises, We Got

Ammo, Blackstock, Anthony McKnight, Sherrie McKnight, and Douglas Rios's

(collectively, the "Settling Defendants") infringement of U.S. Patent No.

10,514,223 ("the '223 Patent") covering Forced Reset Trigger ("FRT")

technology, for which RBT holds the exclusive license.

2.     Specifically, after stipulating to the validity, enforceability, and

infringement of the '223 Patent, and to RBT's status as the exclusive licensee, the

Settling Defendants agreed to: (a) permanently cease the manufacture, marketing,

and sale of all FRTs, meaning any fire control group where movement of the action

causes the trigger member to be forced to the fully reset position, including those

described as "hard reset" or "positive displacement"; (b) refrain from assisting others in doing so; and (c) transfer the domain name wideopentriggers.com, among other domain names, to RBT—in exchange for dismissal of the claims against them.

3.    The court entered a Permanent Injunction on October 19, 2022, ordering the Settling Defendants and all those acting in concert with them to cease producing or selling any infringing FRTs during the life of the '223 Patent.

4.    The Settling Defendants have not only violated the letter and spirit of these binding commitments—they have done so brazenly and repeatedly. Through a deliberate scheme of concealment, proxies, and shell entities, the Settling Defendants continue to manufacture and distribute infringing FRTs while hiding their involvement behind front companies, affiliate websites, and third-party intermediaries.

5.    RBT agreed to settle the underlying litigation and dismiss its claims in reliance on the Settling Defendants' express written representations—memorialized in the Settlement Agreement—that they would permanently cease all FRT-related activity and transfer specified domain names. RBT also relied on a specific oral assurance made by Defendant Anthony McKnight on September 21, 2022, that the Settling Defendants were prepared to stop selling FRTs and cease interfering with RBT's business in exchange for settlement. The underlying actions

did not include a cause of action for fraud, and nothing in the litigation record suggested that the Settling Defendants intended to breach the agreement. At the time of settlement, RBT had no access to Defendants' concealed pre- or post-agreement activities and no reason to suspect ongoing fraud. RBT reasonably assumed that parties who sign a settlement to dismiss litigation against them, and stipulate to a permanent federal injunction—a violation of which could result in literal jail time— would comply with those agreements, and acted accordingly by refraining from further enforcement and litigation.

6.      Settling Defendants have used companies such as Defendants Performance Triggers, Atrius Development Group Corp., at times d/b/a Atrius Triggers—controlled by Defendant Malcolm Brown—and Delta 7 LLC—controlled by Defendant Andrew Myers—to facilitate these unlawful sales.

7.      Together, Defendants sold infringing FRTs under old and new product names—including the "WOT Trigger," "WOT 3-Position," "Selektor Trigger," "Super Selektor," and "Super Safety AR-15 Trigger," "Atrius Select-Fire Assisted Reset Trigger"—that were designed to circumvent detection, but which all operate within the Settlement Agreement's definition of a Forced Reset Trigger and thus are all prohibited by it.[1]

---

[1] Due to Defendants' continued covert scheme to produce and sell violative triggers, this list is not exhaustive.

8.    Defendants utilized reconfigured and newly launched websites, including performancetriggers.com, wot15.com, mid-tierdefense.com, beararmsoutfitters.com, selektortriggers.com, fasttrigger.com, and others, to advertise and fulfill thousands of orders for FRTs. These sales occurred both before and after Defendants dissolved their prior corporate entities—including Big Daddy Enterprises, Bid Daddy Unlimited, and Blackstock—in an effort to evade the reach of the injunction.

9.    Upon information and belief, Defendant Atrius Development Group Corp. ("Atrius"), operating under the direction of Defendant Brown, fulfilled approximately 9,000 consumer orders for infringing FRTs in a span of roughly two (2) weeks—generating at least $1.79 million in revenue.

10.    Defendants Anthony McKnight and Douglas Rios, both of whom were personally bound by the Settlement Agreement and Injunction, as well as Defendants Christopher Rios and C&C Holdings Group LLC, directed and controlled Defendant Performance Triggers during its continued FRT sales. Douglas Rios has been identified as Performance Triggers' owner by his former attorney and in the 2023 annual report filed with Florida's Secretary of State. Anthony McKnight incorporated the company, arranged its dealer pricing, and controlled affiliated web domains that redirected traffic to active infringing storefronts.

11.     Defendant Andrew Myers worked in concert with Defendants Anthony McKnight and Douglas Rios to operate a network of storefronts under the name Delta 7 LLC. Myers registered the business, configured websites, and processed sales for infringing FRT units and parts, resulting in sales generating well over $100,000 in profits.

12.     Through these coordinated efforts, Defendants willfully and repeatedly breached the Settlement Agreement. Their scheme was designed not only to continue profiting from infringing FRTs, but also to obstruct Plaintiff RBT's ability to enforce its rights by hiding the scope and scale of these ongoing violations.

13.     As a direct result of Defendants' conduct, RBT has suffered significant harm, including lost sales, diversion of customers, enforcement costs, and irreparable injury to the market.

14.     Under the Settlement Agreement, RBT is entitled to liquidated damages of $1,000,000 in the event of Defendants' breach and $1,000 per unit or part made or sold in breach, attorneys' fees and costs, and injunctive relief.

15.     RBT now seeks to enforce its rights and recover compensatory damages, liquidated damages, disgorgement of Defendants' profits, punitive damages, injunctive relief, fees and costs, prejudgment and post-judgment interest, and any further relief the Court deems just and proper.

# JURISDICTION

16.    This Court has personal jurisdiction over Defendants Big Daddy
Enterprises, Inc., Big Daddy Unlimited, Inc., Blackstock, Inc., We Got Ammo,
Inc., because they are corporations that are incorporated and have their principal
place of business in Florida; over Defendant Performance Triggers, Inc., because it
is a corporation incorporated in Florida; over Defendants Delta 7 LLC and C&C
Holdings Group LLC because they are limited liability companies with all
members domiciled in Florida; and over Defendants Anthony McKnight, Sherrie
McKnight, Douglas Rios, and Christopher Rios because they are individuals
domiciled in Florida. Also, the Court has personal jurisdiction over the Settling
Defendants because they agreed in the Settlement Agreement to "jurisdiction and
venue of the Northern District of Florida."

17.    This Court has personal jurisdiction over Defendant Atrius
Development Group Corp., under Florida Statute § 48.193(1)(a)(1), (2), and (6)(b),
and (2), because it conducted a business venture in Florida by selling thousands of
infringing triggers into the state, knowingly participated in fraud and in the Settling
Defendants' breach of the Settlement Agreement, and acted in concert with
Florida-based Defendants to conceal and continue those violations; over Defendant
Wide Open Enterprises, LLC under Florida Statute § 48.193(1)(a)(1), (2), and
(6)(b), and (2), because it operated in Florida, was a party to the Settlement

Agreement containing a Florida forum clause, and knowingly participated in the

manufacture and distribution of infringing products in violation of that agreement;

over Defendant Malcolm Brown under Florida Statute § 48.193(1)(a)(2), (6)(b),

and (2), because he directed the design and sale of infringing triggers through

Florida-based infrastructure, knowingly assisted the Settling Defendants in evading

the Settlement Agreement, and worked in concert with them to continue sales in

violation of the Permanent Injunction; and over Defendant Lea Andreoli under

Florida Statutes §§ 48.193(1)(a)(2) and (6)(b), because, on information and belief,

she helped conceal proceeds from infringing sales that caused injury in Florida and

knowingly participated in efforts to facilitate or disguise the Settling Defendants'

ongoing breach of the Settlement Agreement.

18.    This Court has subject matter jurisdiction over this action pursuant to

28 U.S.C. § 1332(a)(1) because it is a civil action between Plaintiff RBT Inc., a

Texas corporation, and Defendants Big Daddy Enterprises, Inc., Big Daddy

Unlimited, Inc., We Got Ammo, Inc., Performance Triggers, Inc., and Blackstock,

Inc., which are Florida corporations; C&C Holdings Group LLC, a Florida limited

liability company; Atrius Development Group Corp., at times d/b/a Atrius

Triggers, an Idaho corporation; Wide Open Enterprises, LLC, a New Mexico

limited liability company; Delta 7 LLC, a Florida limited liability company;

Anthony McKnight, Sherrie McKnight, Douglas Rios, Christopher Rios, and

Andrew Myers, who are residents of Florida; and Malcolm Brown and Lea Andreoli, who are residents of California, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

19.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims occurred in this district, and because the Settlement Agreement includes a forum selection clause specifying that the parties agree to "jurisdiction and venue in the Northern District of Florida." (*See* Exhibit A, Settlement Agreement, ¶ 23.)

## PARTIES

20.    Plaintiff Rare Breed Triggers, Inc. ("RBT"), is a corporation organized under the laws of Texas and does business in Wichita Falls, Texas. Rare Breed Triggers, LLC merged on November 15, 2023, with Rare Breed Triggers, Inc., which was incorporated in Texas on August 7, 2023. Accordingly, Rare Breed Triggers, Inc. is Rare Breed Triggers, LLC's successor in interest.

21.    Upon information and belief, Defendant Big Daddy Enterprises, Inc., is a corporation that is incorporated in Florida and has its principal place of business in Gainesville, Florida.

22.    Upon information and belief, Defendant Big Daddy Unlimited, Inc., is a corporation that is incorporated in Florida and has its principal place of business in Gainesville, Florida.

23.    Upon information and belief, Defendant Blackstock, Inc. is a corporation that is incorporated in Florida and has its principal place of business in Gainesville, Florida.

24.    Upon information and belief, Defendant Wide Open Enterprises, LLC, is a limited liability company formed under the laws of New Mexico and does business in Ocala, Florida. There is no evidence that any members of this Defendant entity are citizens of Texas.

25.    Upon information and belief, Defendant We Got Ammo, Inc., is a corporation that is incorporated in Florida and has its principal place of business in Gainesville, Florida.

26.    Upon information and belief, Defendant Atrius Development Group Corp. ("Atrius"), is a corporation that is incorporated in Idaho and has its principal place of business in Lake Forest, California. Atrius is owned and operated by Defendant Malcom Brown.

27.    Upon information and belief, Defendant Performance Triggers, Inc., is a corporation that is incorporated in Florida and has its principal place of business in Columbus, Ohio.

28.     Upon information and belief, Defendant C&C Holdings Group LLC is a limited liability company formed under the laws of Florida.

29.     Upon information and belief, Defendant Delta 7 LLC is a limited liability company formed under the laws of Florida and does business in Gainesville, Florida. Upon information and belief, Delta 7 LLC has one (1) member: Andrew Myers, a resident of Lake City, Florida.

30.     Upon information and belief, Defendant Anthony McKnight is an individual who resides in Florida.

31.     Upon information and belief, Defendant Sherrie McKnight is an individual who resides in Florida.

32.     Upon information and belief, Defendant Douglas Rios is an individual who resides in Florida.

33.     Upon information and belief, Defendant Christopher Rios is an individual who resides in Florida.

34.     Upon information and belief, Defendant Malcolm Brown is an individual who resides in California.

35.     Upon information and belief, Defendant Lea Andreoli is an individual who resides in California.

36.     Upon information and belief, Defendant Andrew Myers is an individual who resides in Florida.

37.     While certain Defendants did not sign the Settlement Agreement, they are nonetheless bound by its terms because they acted as agents, alter egos, or were otherwise so closely related to the parties who entered the agreement—and to the conduct it prohibits—that it was foreseeable they would be bound. These Defendants knowingly participated in and facilitated the breach of the Settlement Agreement, and their liability arises under established principles of agency, estoppel, and related doctrines. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *B & B Jewelry, Inc. v. Pandora Jewelry LLC*, 247 F. Supp. 3d 1283, 1287 n.3 (S.D. Fla. 2017).

## FACTS

38.     RBT is the exclusive licensee of U.S. Patent No. 10,514,223 entitled "Firearm Trigger Mechanism" (the '223 Patent") and has standing to enforce it and to recover damages for infringement.

### ***Prior Litigation Between the Parties***

39.     On September 15, 2021, Plaintiff RBT filed an action for patent infringement against Defendants Big Daddy Enterprises, Inc., Big Daddy Unlimited, Inc., Wide Open Enterprises, We Got Ammo, Anthony McKnight, Sherrie McKnight, and Douglas Rios in the Northern District of Florida, Case No. 1:21-cv-00149-RH-HTC.

40.    The infringing products at issue in the litigation against the Settling Defendants were the "Wide Open Trigger" (WOT) and "Powered by Graves ALAMO-15," both of which are forced reset triggers ("FRTs") that infringe one or more claims of the '223 Patent, and violate the Settlement Agreement.

41.    On December 30, 2021, a preliminary injunction was entered in that action ordering Defendants not to "manufacture, market, sell, offer to sell, import, or transfer possession of any Wide Open trigger or substantially similar device." (*See* Exhibit C, Preliminary Injunction, at 13.)

42.    On March 8, 2022, RBT filed a related infringement action against the Defendants Big Daddy Unlimited, Inc., Big Daddy Enterprises, Inc., and Blackstock, Inc., in Case No. 1:22-cv-00061-RH-HTC.

43.    On or around September 21, 2022, following the deposition of RBT consultant Cole Leleux, Defendant Anthony McKnight represented—on behalf of himself and Defendants Big Daddy Enterprises, Big Daddy Unlimited, Wide Open Enterprises, Blackstock, We Got Ammo, Sherrie McKnight, Douglas Rios—that they were prepared to cease all sales of any FRTs and to stop their interference with RBT's business and licensed rights in exchange for a settlement whereby RBT agreed to dismiss its claims against them.

44.    In September 2022, RBT and Defendants Big Daddy Enterprises, Big Daddy Unlimited, Wide Open Enterprises, Blackstock, We Got Ammo, Anthony

McKnight, Sherrie McKnight, Douglas Rios (collectively, the "Settling

Defendants"), entered into a written Confidential Settlement Agreement

("Settlement Agreement"), which resolved the pending litigation. (*See* Exhibit A,

Settlement Agreement.)

45.    The Settlement Agreement contained the following provisions:

a.    The Settling Defendants agreed that they would "not assist any
other individual or entity in challenging the validity, enforceability,
or scope of the '223 Patent in any forum." (Ex. A ¶ 2.) Defendants
also admitted that "the Wide Open WOT Trigger and Powered By
Graves ALAMO-15 trigger infringe the '223 Patent, affirm the
validity and enforceability of the '223 Patent, and agree not to
challenge the same in any forum and waive defenses to
enforceability against the '223 Patent." (*Id.*)

b.    "Forced Reset Trigger" was defined as meaning "any fire control
group where movement of the action causes the trigger member to
be forced to the fully reset position, including those described as
'hard reset' or 'positive displacement.'" (*Id.* ¶ 3.)

c.    The Settling Defendants "agree[d] to no longer produce or sell
Forced Reset Triggers or parts that can be used as part of Forced
Reset Triggers." (*Id.* ¶ 11.) Defendants also agreed to assign and

transfer to RBT a host of websites where Defendants sold infringing triggers, including wideopentriggers.com and wotar15.com. (*Id.* ¶ 8.)

d.  The Settling Defendants agreed to a liquidated damages provision of $1,000,000 for their breach of the Settlement Agreement and $1,000 per unit or part made or sold in violation of the Settlement Agreement. (*Id.* ¶ 16.)

e.  The parties agreed that Plaintiff can recover attorneys' fees and costs incurred in enforcing the Settlement Agreement's terms. (*Id.*)

f.  The parties agreed that "[a]ny failure or delay by any Party, or by any of their respective representatives, in exercising any right, power, or privilege under this Agreement shall not operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege under this Agreement preclude any other future exercise of any right, power, or privilege." (*Id.* ¶ 20.)

g.  The parties agreed the Settlement Agreement "is binding upon, inures to the benefit of, and delegates all duties of the Parties, their officers, agents, directors, affiliates, legal representatives, employees, successors, heirs and assigns." (*Id.* ¶ 22) (emphasis added.)

h. The parties agreed "to jurisdiction and venue of the Northern District of Florida." (*Id.* ¶ 23.)

i. The parties agreed that when legal enforcement of the Settlement Agreement is required, they are not restricted from disclosing the Settlement Agreement's terms. (*Id.* ¶ 24.)

46.    On October 19, 2022, the Court entered a Consent Judgment and Permanent Injunction ("Permanent Injunction") against the Settling Defendants. (*See* Ex. B, Permanent Injunction.)

47.    The Permanent Injunction set forth the following stipulated facts and directives:

a. Stipulated Facts:

i. RBT holds the exclusive license to sell products covered by the '223 Patent and has standing to collect damages for lost profits. (*Id.* at 3, ¶ 14.)

ii. All claims of the '223 Patent are valid and enforceable. (*Id.* at 3, ¶ 15.)

iii. The Settling Defendants had been manufacturing, using, importing, offering for sale, and selling forced reset triggers— including the Wide Open Trigger (WOT) and/or the Powered By Graves ALAMO-15 trigger—that are covered by one or

more claims of the '223 Patent, or causing others to do so. (*Id.* at 4, ¶ 18.)

    iv. Any violation of the Permanent Injunction by the Settling Defendants, or anyone acting in concert with them, would cause irreparable harm to Plaintiffs. Upon such a violation, Plaintiffs are entitled to pursue remedies consistent with the Consent Judgment and Permanent Injunction. (*Id.* at 5, ¶ 23.)

    v. After entry of the Consent Judgment and Permanent Injunction, the action was dismissed with prejudice, but the Court retained jurisdiction to enforce its terms. (*Id.* at 5, ¶ 25.)

b. Directives:

    i. All Defendants—including successors, agents, assigns, transferees, related entities, and principals or members with actual notice—were permanently enjoined, during the unexpired term of the '223 Patent, from manufacturing, using, importing, offering for sale, or selling any Infringing Products in the United States, whether directly, contributorily, or by inducement. (*Id.* at 5, ¶ 1.)

    ii. The issues of infringement, validity, and enforceability were finally resolved, and the injunction bars all Defendants from

asserting in this or any other proceeding that the claims of the

'223 Patent are invalid, unenforceable, or not infringed. (*Id.* at

6, ¶ 4.)

   iii.  The Consent Judgment and Permanent Injunction bound all

parties and affiliates acting by, through, or under them. (*Id.* at 7,

¶ 7.)

   iv.  The Permanent Injunction does not expire until at least

September 2038. (*Id.* at 6, ¶ 2.)

48.    RBT agreed to settle the underlying litigation and dismiss its claims in

reliance on the Settling Defendants' express commitments in the Settlement

Agreement that they would permanently cease all FRT-related activity and transfer

control of specified domain names. RBT also relied on a specific oral assurance

made by Defendant Anthony McKnight on or around September 21, 2022,

reaffirming that the Settling Defendants would comply with those obligations. The

underlying lawsuits did not assert fraud, and nothing in the record gave RBT

reason to doubt that the Settling Defendants would honor their commitments. At

the time of settlement, RBT had no access to Defendants' concealed misconduct

and reasonably believed that parties entering into a formal settlement agreement

and stipulated federal injunction—a violation of which could result in literal jail

time—would abide by them.

49.     ABC IP, LLC, who owns the '223 Patent and was a party to the prior litigation between the parties, has assigned all rights to liquidated damages under the Settlement Agreement to Plaintiff RBT.

### *Defendants' Unlawful Scheme to Circumvent the Settlement Agreement and Permanent Injunction*

50.     After the entry of the Settlement Agreement and Permanent Injunction in October 2022, Settling Defendants, including Anthony McKnight, Douglas Rios, and others, deliberately orchestrated a scheme to circumvent their obligations by continuing to manufacture, import, market, and sell infringing FRTs in violation of the Settlement Agreement and Permanent Injunction.

51.     On information and belief, this ongoing scheme involved creating or using proxy entities—including but not limited to Performance Triggers Inc., Atrius, and Delta 7 LLC—and affiliated websites such as performancetriggers.com, beararmsoutfitters.com, and mid-tierdefense.com, to conceal Settling Defendants' involvement and continue the infringing activity.

52.     On information and belief, Defendants utilized concealed payment channels, shell companies, proxy owners, third-party intermediaries, and foreign suppliers to hide their identities, avoid detection, and evade enforcement efforts by RBT.

53.     Despite the express prohibitions in the Settlement Agreement and Permanent Injunction, Defendants manufactured and sold FRT products including

but not limited to the "WOT Trigger," "Selector Trigger," "Super Selektor 3 Position Forced Reset Safety Kit," "Super Safety AR-15 Trigger," "3-position WOT Trigger," and an "Atrius Select-Fire Assisted Reset Trigger," modeled directly after the Alamo-15 previously adjudicated to infringe the '223 Patent.

54.     On information and belief, these infringing activities generated significant revenue, including approximately $1.8 million from roughly 9,000 direct customer orders fulfilled by Defendant Atrius over just a two-week period.

55.     Settling Defendants also breached the Settlement Agreement by failing to assign and transfer specified domain names to RBT, including wideopentriggers.com, and instead redirected these domains to newly created websites used to continue selling infringing FRTs, such as performancetriggers.com.

### *Defendant Malcolm Brown and Atrius Design, Manufacture, and Sell Infringing FRTs in Coordination with the Settling Defendants*

56.     Defendant Malcolm Brown operates Atrius, a firearms component business that conspired with the Settling Defendants to design, manufacture, and sell FRTs in violation of the Settlement Agreement and Permanent Injunction.

57.     In or around January 2022, *while subject to the preliminary injunction*, Defendants Anthony McKnight and Douglas Rios acted in concert with a third-party individual, Rene Neubacher, to develop an FRT that would have violated the terms of the preliminary injunction if done during its effective period.

58.    Beginning as early as 2021 and continuing into 2023—during the pendency of the prior litigation and while the preliminary injunction was in effect—Defendant Brown collaborated with Defendants Anthony McKnight and Douglas Rios to develop a three-position FRT intentionally modeled on the Alamo-15 trigger, which would soon be adjudicated to infringe on RBT's exclusive license to the '223 Patent.

59.    In January 2022, Defendant Brown received payment from Defendants Anthony McKnight and Douglas Rios for his work developing this infringing three-position FRT. To conceal the nature of this transaction, Defendants McKnight and Rios routed payments through a bank account held in the name of Brown's wife, Defendant Lea Andreoli.

60.    On information and belief, this collaboration continued past the execution of the Settlement Agreement in September 2022, and the Permanent Injunction in October 2022. Defendant Brown and Defendants Anthony McKnight and Douglas Rios further developed and finalized the three-position FRT, notwithstanding the explicit prohibitions in the Settlement Agreement and Permanent Injunction.

61.    By December 2023—after the Settlement Agreement and Permanent Injunction took effect—Atrius, under Defendant Brown's direction, began actively

marketing and selling the infringing three-position FRT product branded as the "Atrius Select-Fire Assisted Reset Trigger for the AR-15 Platform."

62.    Atrius advertised this product explicitly as an FRT, emphasizing the feature of "elimination of trigger reset," which directly replicates the patented functionality prohibited by the Settlement Agreement.

63.    On May 19, 2025—just three (3) days after a preliminary injunction restraining Plaintiff RBT from pursuing certain patent enforcement actions was lifted—Defendant Atrius launched a public-facing website, atrius.dev, to facilitate direct sales of FRTs to consumers nationwide.

64.    On information and belief, Defendant Atrius fulfilled approximately 9,000 direct consumer orders of infringing FRTs within roughly two (2) weeks of launching its direct-to-consumer website, generating approximately $1,791,000 in sales revenue.

65.    The full scope of Atrius' sales and profits from these infringing FRTs, as well as the complete extent of Defendant Brown's involvement and coordination with Settling Defendants, remain unknown and cannot be ascertained without the aid of formal discovery.

***Defendants Performance Triggers, Anthony McKnight, and
Douglas Rios Continue to Manufacture and Sell FRTs in Violation
of the Settlement Agreement***

66.    Following entry of the Settlement Agreement and Permanent

Injunction, Defendants Anthony McKnight and Douglas Rios orchestrated a

scheme to circumvent their obligations by continuing to manufacture, import,

market, and sell prohibited FRTs through a newly formed entity—Defendant

Performance Triggers, Inc.—while concealing their direct involvement.

67.    On January 21, 2022, Defendant Anthony McKnight incorporated

Performance Triggers in Florida, identifying himself as president in the company's

electronic articles of incorporation.

68.    On November 17, 2022, Performance Triggers filed amended

corporate documents removing McKnight as president and substituting a corporate

entity named REV2A Inc.

69.    On August 15, 2023, Performance Triggers filed another amendment

removing REV2A Inc. and naming C&C Holdings Group as its president.

70.    On March 20, 2024, Performance Triggers' annual report identified

Defendant Douglas Rios as its owner and principal, listing its principal place of

business at 4505 Kenny Road, #1102, [Columbus] Ohio 43220, an address that

belongs to a Staples office supply store. On information and belief, Defendants

attempted to conceal that Performance Triggers' address was actually a Staples

office supply store by listing its principal place of business as Kenny, Ohio, which does not exist.

71.    At various times, Defendant Christopher Rios has served as the president of Performance Triggers, functioning as a means for his brother, Douglas Rios, and McKnight to control Performance Triggers as an alter ego for BDU after McKnight formally stepped down as president.

72.    Although the Florida corporate entity of Performance Triggers voluntarily dissolved on November 4, 2024, its website, performancetriggers.com, remained active thereafter, continuing to publicly list the Ohio address.

73.    As early as January 18, 2022—while the preliminary injunction remained in effect—Defendant Big Daddy Unlimited publicly advertised Performance Triggers' forthcoming website. At that time, the footer of the website listed the affiliation as "Thomas Alan Graves x Big Daddy Unlimited."

74.    By October 28, 2022—nine days after entry of the Permanent Injunction—the Performance Triggers website still advertised that it was "coming soon," but the footer affiliation had changed to "Big Daddy Unlimited x TacCon x Graves."

75.    In 2023, Performance Triggers began selling the infringing "Atrius Select Fire FRT," explicitly marketing it as a three-position FRT that eliminated

trigger reset functionality—directly contravening the Settlement Agreement's prohibitions.

76.    On November 11, 2023, Defendant Big Daddy Unlimited publicly promoted the Atrius Select Fire FRT through a YouTube video to approximately 80,000 subscribers featuring Defendant Malcolm Brown demonstrating the trigger's infringing functionality and with a song in the background containing lyrics stating, "Let the bodies hit the floor, let the bodies hit the floor, let the bodies hit the floor, let the bodies hit the … FLOORRRRRR." This video is viewable at https://www.youtube.com/watch?v=aYFegHIeY5o.

77.    No later than November 2023, Sales Orders from Performance Triggers were being issued directly by Big Daddy Unlimited's Director of Finance, and Anthony McKnight personally distributed Performance Triggers' dealer pricing sheets.

78.    On January 10, 2024, Defendants Anthony McKnight and Douglas Rios were using and controlling the domain selektortriggers.com, which actively redirected to performancetriggers.com to obscure their continued infringing activity.

79.    On January 12, 2024, Douglas Rios' former defense counsel, Adam Floyd, while attempting to become personally involved in the "FRT business," explicitly identified Defendant Douglas Rios as the owner of Performance Triggers

during a recorded meeting with RBT's representative. Floyd's statements, in addition to filings with the Florida Secretary of State, confirmed Rios' ongoing and direct role in violating the Settlement Agreement, as well as the Permanent Injunction.

80.    On information and belief, throughout 2023 and into 2025, Defendants continued relying on foreign manufacturers, including Bosnian entity AC Unity, to produce infringing triggers such as the three-position WOT and Selektor triggers—components substantially identical to those previously adjudicated as infringing, and falling within the Settlement Agreements definition of an FRT.

81.    On or about March 14, 2025, Defendant Douglas Rios facilitated at least one cash transaction through a representative in a Home Depot parking lot near where Defendant Big Daddy Unlimited was located, selling WOT-style three-position FRTs substantially identical to the previously enjoined Wide Open Trigger.

82.    The full extent of sales and profits realized from Performance Triggers' continued infringing FRT sales remains unknown absent discovery, but sales activity demonstrably continued well after the September 2022 Settlement Agreement and the Court's Permanent Injunction of October 19, 2022.

83.    The full extent of sales and profits from the infringing triggers marketed by Atrius and its affiliates is presently unknown and cannot be determined without the aid of formal discovery.

### *Defendants Andrew Myers and Delta 7 LLC Create Affiliate Websites and Front Entities to Facilitate Defendants' Continued Sales of Infringing FRTs*

84.    Following entry of the Settlement Agreement in September 2022, Defendant Andrew Myers worked in concert with Settling Defendants Anthony McKnight and Douglas Dougals Rios to facilitate the continued sale of infringing FRTs through a series of websites and a Florida front entity, Defendant Delta 7 LLC.

85.    On or about July 14, 2022, Myers filed articles of organization for Delta 7 LLC, listing 519 SW Tunsil St., Lake City, Florida as the street and registered agent address, and 693 SW Hamlet Circle, Lake City, Florida as the mailing address.

86.    Several months later, Myers amended Delta 7 LLC's filings to list 9200 NW 39th Ave, Suite 130, Box 3556, Gainesville, Florida—the same address used by the websites wot15.com and beararmsoutfitters.com—as both the entity's physical and mailing address. Myers also changed Delta 7's registered agent address to 881 SW Brookdale Drive, Lake City, Florida.

87.    On information and belief, to avoid the Settlement Agreement and Permanent Injunction, Defendants Douglas Rios and McKnight sold FRTs to Defendant Myers for cash to resell. Myers operated the website wot15.com from sometime after June 23, 2022, through April 20, 2024. The site offered for sale the Wide Open Trigger, which had been adjudicated as infringing the '223 Patent.

88.    On or about April 20, 2024, wot15.com began redirecting visitors to beararmsoutfitters.com. That site offered both the WOT and a product marketed as an "enhanced reset" trigger that, on information and belief, functioned as a three-position FRT and is a Forced Reset Trigger under the Settlement Agreement.

89.    By March or April 2025, the "shop now" page of beararmsoutfitters.com began redirecting to mid-tierdefense.com. The new site began offering for sale a product labeled the "Super Safety AR-15 Trigger," which, on information and belief, is another infringing FRT that violates the Settlement Agreement.

90.    At least two of these sites—wot15.com and beararmsoutfitters.com—were operated by or under the control of Myers and used or redirected to common addresses and contact information, including 9200 NW 39th Ave, Suite 130, Box 3556, Gainesville, Florida, and phone number (352) 720-8218.

91.    On information and belief, Myers handled the technical infrastructure—including payment processors and routing protocols—necessary to maintain the infringing sales operations.

92.    On information and belief, Myers's websites processed numerous transactions for infringing FRTs during the time period when Settling Defendants were legally prohibited from marketing or selling such products.

93.    Myers has admitted to purchasing FRTs in parking lots for cash and acknowledged that sellers only accepted cash payments. These transactions overlapped with the period in which the Settling Defendants were actively avoiding enforcement of the Settlement Agreement and Permanent Injunction.

94.    Delta 7 LLC was voluntarily dissolved on July 22, 2024, after nearly two years of facilitating and concealing infringing sales activity.

95.    Through his operation of Delta 7, Myers knowingly acted in concert with the Settling Defendants to enable the sale and promotion of infringing FRTs for their mutual benefit. His coordination through multiple front-end websites and concealed hosting arrangements was central to the Settling Defendants' ongoing scheme to evade the restrictions imposed by the Settlement Agreement.

### *Defendant Douglas Rios's Continued Involvement in Performance Triggers and Admission of Ownership By Former Counsel*

96.     On January 12, 2024, Adam Floyd, former defense counsel for Douglas Rios, met with a representative of Plaintiff RBT after requesting an in-person meeting to discuss a proposed business opportunity involving FRTs.

97.     During that meeting, Floyd initially stated he was seeking a license to sell FRTs for himself, but also later stated that he was acting on behalf of Defendant Douglas Rios, as well, who intended to continue selling FRTs despite the Permanent Injunction.

98.     Floyd confirmed that Defendant Douglas Rios owned Performance Triggers. Floyd repeatedly referred to the company as "Doug's" and acknowledged that Rios had been directing its operations.

99.     Floyd also stated that Defendant Douglas Rios had discussed involving Defendant Anthony McKnight in future ventures due to McKnight's experience in setting up websites and payment systems, but expressed reservations about McKnight's trustworthiness. Floyd emphasized that if McKnight participated, Floyd would insist on controlling the money to ensure McKnight's debts were satisfied from the proceeds.

100.    Floyd further confirmed that Defendant Douglas Rios had already paid him for his prior legal services, distinguishing him from Anthony McKnight, who still owed him $150,000. Floyd indicated his belief that McKnight's ongoing

business operations were precarious, agreeing to the comparison of a "house of cards," and expressed surprise that McKnight remained in operation given his financial and legal liabilities.

101.    This conversation corroborated other evidence that Defendant Douglas Rios retained operational control of Performance Triggers throughout 2023 and into 2024, and that he continued to coordinate sales of FRTs in violation of the Settlement Agreement and Permanent Injunction.

### Additional Entities, Individuals, Devices, and Information Sources Involved in Defendants' Conspiracy

102.    On information and belief, numerous third parties and affiliated actors played essential roles in enabling or concealing the Settling Defendants' continued sale of infringing FRTs, including through technical support, financial facilitation, product development, order fulfillment, and online advertising. These entities and individuals are directly linked to the sale, design, distribution, or marketing of infringing FRTs, and may possess information relevant to the claims herein.

103.    Settling Defendants, acting in concert with or through others, used Michael Goldberg to facilitate or complete cash-based sales of infringing FRTs. These in-person transactions occurred after entry of the Permanent Injunction and demonstrate ongoing willful circumvention of court orders.

104.    On information and belief, Dairyland Defense participated in the sale and distribution of infringing FRTs. In a public email sent to its contact list,

Dairyland Defense acknowledged that Plaintiff's legal restrictions had lifted and that it expected enforcement action, confirming knowledge of the underlying dispute and its role in continued sales.

105.   Similarly, on information and belief, Trigger Parts USA offered or fulfilled orders for infringing FRTs through affiliate websites and may possess transactional data relevant to the scope of Defendants' violations.

106.   Defendants' online marketing and sales infrastructure was developed by or with the assistance of Waqas Raja, a programmer who previously created web infrastructure for Big Daddy Unlimited. On information and belief, Raja helped build websites used to facilitate infringing sales of FRTs.

107.   During development of Defendants' websites, funds were commingled with EGX Chemical Inc., a corporate entity whose Vice President is Defendant Douglas Rios and President is Christopher Rios.

108.   Omar Zumot, a former associate of Defendants Anthony McKnight and Douglas Rios, has knowledge of Defendants' scheme to sell infringing FRTs and violate the Settlement Agreement.

109.   On information and belief, Defendants and their affiliates used social media platforms and online forums, including Facebook groups such as "Bear Arms" and "Atrius," to market, promote, or solicit orders for infringing FRTs.

110.    On information and belief, Settling Defendants have used Michael Goldberg to coordinate parking lot FRT transactions for cash.

111.    The following FRT models were marketed, sold, or distributed in violation of the Settlement Agreement and Permanent Injunction, and fall within the agreement's definition of "Forced Reset Trigger":

      a.  Atrius Select-Fire Assisted Reset Trigger for the AR-15 Platform

      b.  Super Selektor 3-Position Forced Reset Safety Kit

      c.  Super Safety AR-15 Trigger

      d.  WOT (Wide Open Trigger)

      e.  WOT 3-Position Trigger

      f.  Alamo-15

      g.  "Enhanced Reset" Trigger

### *The Sum of Defendants' Unlawful Conduct*

112.    As described above, the Settlement Agreement permanently prohibited the Settling Defendants from manufacturing, selling, or assisting in the sale of any FRT, defined broadly to include any fire control group in which the action forces the trigger to reset, including "hard reset" or "positive displacement" designs.

113.    Despite these clear prohibitions, numerous Defendants—including Anthony McKnight, Douglas Rios, Malcolm Brown, Andrew Myers, Atrius, and

Delta 7—actively participated in the continued development, manufacture, and distribution of prohibited FRTs.

114.   On information and belief, given their close relationship with the Settling Defendants and the steps taken to conceal their conduct, Defendants Brown and Myers—along with the entities they controlled or operated, Defendants Atrius and Delta 7—were aware of the Settlement Agreement and Permanent Injunction and knowingly conspired with the Settling Defendants to violate its terms nonetheless.

115.   Defendant Performance Triggers, a company founded and controlled by Defendants Anthony McKnight and Douglas Rios, marketed and sold multiple FRT models, including the Atrius Select Fire FRT and the Super Selektor 3 Position Forced Reset Safety Kit. These devices fall squarely within the Settlement Agreement's definition of an FRT, and therefore violate the Settlement Agreement's prohibition.

116.   On information and belief, Atrius, with active involvement by Defendant Brown, facilitated the manufacture and sale of these infringing triggers, including through public promotion, YouTube demonstrations, and direct online sales, all in knowing violation of the Settlement Agreement's restrictions.

117.   Defendant Myers, in coordination with Defendants Anthony McKnight and Douglas Rios, created and operated websites used to market and sell

these devices under various aliases, while concealing their connection to the

Settling Defendants. In doing so, he materially assisted and encouraged continued

breaches of the Settlement Agreement.

118. Defendant Christopher Rios aided and abetted the fraudulent conduct

committed by the Defendants by serving as the president of Defendant

Performance Triggers, enabling Defendants Big Daddy Unlimited, Anthony

McKnight, and Christopher Rios's brother, Douglas Rios, to continue selling FRTs

while misrepresenting to RBT that they had ceased doing so.

119. These Defendants' coordinated conduct constitutes both direct

breaches and knowing facilitation of the Settling Defendants' breach of the

Settlement Agreement, fraudulent conduct, statutory violations, and other unlawful

conduct.

120. Under the express terms of the Settlement Agreement, RBT is entitled

to liquidated damages of $1 million plus (by assignment), $1,000 per unit or part

made or sold in breach, as well as attorneys' fees and injunctive relief.

121. Moreover, Settling Defendants failed to assign certain agreed-upon

domain addresses—such as wideopentriggers.com—and instead redirected them to

infringing sales platforms such as performancetriggers.com, further evidencing a

willful effort to circumvent the Agreement.

35

122.   The volume of sales achieved through these operations is substantial. For instance, on information and belief, Atrius alone processed over 9,000 orders—totaling more than $1.7 million—in a matter of weeks, with additional sales occurring through indirect vendors and affiliated websites. On information and belief, these sales likely represent a fraction of Defendants' combined profits.

123.   The non-settling Defendants' acts in concert with and on behalf of the Settling Defendants are ongoing and systematic, and constitute a flagrant disregard of the binding Settlement Agreement and Permanent Injunction issued by this Court.

### COUNT I—BREACH OF CONTRACT
*Against Defendants Big Daddy Enterprises, Inc.; Big Daddy Unlimited, Inc.; Blackstock, Inc.; Wide Open Enterprises, LLC; We Got Ammo, Inc.; Anthony McKnight; Sherrie McKnight; and Douglas Rios (collectively, the "Settling Defendants")*

124.   Plaintiff RBT repeats and realleges paragraphs 1 through 123 as if fully set forth herein.

125.   RBT entered into a written Settlement Agreement dated October 19, 2022, with Defendants Big Daddy Enterprises, Inc.; Big Daddy Unlimited, Inc.; Blackstock, Inc.; Wide Open Enterprises, LLC; We Got Ammo, Inc.; Anthony McKnight; Sherrie McKnight; and Douglas Rios (collectively, the "Settling Defendants").

126.   Under the Settlement Agreement, the Settling Defendants agreed not to produce, sell, or assist in the sale of any "Forced Reset Trigger" ("FRT") units or parts that could be used in such triggers. They also agreed to transfer certain domain names and pay liquidated damages of $1,000,000 for a breach of the Settlement Agreement and $1,000 for each unit made or sold in breach of the Settlement Agreement, as well as attorneys' fees and injunctive relief in the event of a breach.

127.   RBT fully performed its obligations under the Settlement Agreement, including by dismissing its claims in the related litigation as required and refraining from enforcing its patent rights during the standstill period provided in the Settlement Agreement.

128.   Defendants materially breached the Settlement Agreement by:

- Continuing to manufacture, market, and sell FRTs through newly formed entities, including Defendant Performance Triggers, and under different brand names such as the Atrius Select Fire FRT and the Super Selektor 3-Position Trigger;

- Redirecting traffic from wideopentriggers.com—one of the domains that Defendants were obligated to transfer to RBT—to performancetriggers.com, in direct violation of the domain assignment provisions;

- Selling infringing FRTs in public and in concealed transactions, including through online sales and parking-lot exchanges facilitated by Defendant Douglas Rios;

- Distributing FRTs manufactured by foreign suppliers such as AC Unity, which were functionally identical to previously enjoined products;

- Promoting and demonstrating infringing products online, including through videos featuring Defendant Brown and advertisements posted by Defendant Big Daddy Unlimited;

- Using shell entities, false corporate filings, and domain redirections to conceal their continuing operations and evade detection by RBT.

129.   These breaches were knowing, repeated, and calculated to circumvent the terms of the Settlement Agreement while continuing to profit from the very conduct the agreement sought to prohibit.

130.   As a direct and proximate result of Defendants' breach, RBT has suffered substantial damages, including but not limited to:

- Loss of market exclusivity for its patented FRT technology;

- Diversion of customers and market share;

- Brand dilution;

- Increased enforcement costs and attorneys' fees;

- Loss of goodwill;

- Liquidated damages for each infringing units sold; and

- The need for permanent injunctive relief to halt ongoing and
  future violations.

131.  RBT seeks compensatory damages, liquidated damages as set forth in
the Settlement Agreement, injunctive relief, attorneys' fees, prejudgment and post-
judgment interest, and such other relief as the Court deems just and proper.

## COUNT II—BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### Against the Settling Defendants

132.  Plaintiff RBT repeats and realleges paragraphs 1 through 123 as if
fully set forth herein.

133.  In September 2022, RBT and the Settling Defendants entered into the
Settlement Agreement to resolve litigation and prevent further manufacture or sale
of the products at issue, including any conduct that would undermine RBT's
intellectual property rights or the enforcement of federal orders.

134.  The Settling Defendants materially breached the express terms of the
Settlement Agreement by continuing to produce and sell the same or substantially
similar products through different corporate entities and online platforms; failing to
transfer the wideopentriggers.com domain and instead redirecting it to

performancetriggers.com; and by facilitating, encouraging, or directly assisting sales through affiliated individuals and websites.

135.   These actions were taken deliberately and in bad faith to circumvent the prohibitions and obligations of the Settlement Agreement, frustrate RBT's ability to enforce its rights, and continue profiting from conduct they expressly agreed to cease.

136.   The Settling Defendants' false representations unfairly frustrated the common purpose of the Settlement Agreement; defeated RBT's reasonable expectations; and deprived RBT of the full benefit of its bargain, including market exclusivity, enforcement finality, and reputational protection.

137.   As a result, RBT has suffered damages including but not limited to lost revenue, enforcement costs, attorneys' fees, and the loss of contractual protections for which they bargained.

138.   RBT seeks compensatory damages, liquidated damages as set forth in the Settlement Agreement, attorneys' fees and costs, prejudgment and post-judgment interest, and such further relief as the Court deems just and proper.

## COUNT III—FRAUD: FRAUDULENT MISREPRESENTATION, FRAUDULENT CONCEALMENT, AND FRAUDULENT INDUCEMENT
### *Against the Settling Defendants*

139.   Plaintiff RBT repeats and realleges paragraphs 1 through 123 as if fully set forth herein.

140.   The Settling Defendants made material representations in the Settlement Agreement that they would permanently cease the manufacture, marketing, and sale of FRTs, including any "trigger unit or trigger part prohibited by this Agreement," and that they would transfer ownership and control of specified domains, including wideopentriggers.com, to RBT. These representations were precise, formal representations made in a court-supervised context, memorialized in an executed Settlement Agreement and a Consent Judgment and Permanent Injunction, conveyed through counsel, and were material to RBT's agreement to dismiss the prior lawsuit and forego continued litigation against the Settling Defendants.

141.   Further, on or around September 21, 2022, Defendant Anthony McKnight represented—on behalf of himself and the Settling Defendants—that they were prepared to cease all sales of FRTs and to stop their interference with RBT's business and license rights in exchange for a settlement whereby RBT agreed to stop the prosecution of the prior litigation and impending motion for a permanent injunction.

142.   These representations were knowingly false. At the time the Settlement Agreement was executed, the Settling Defendants had already formed and operationalized alternate entities—such as Performance Triggers and Atrius—for the purpose of continuing to market and sell the same or materially

indistinguishable FRT units and parts. Additionally, they either retained control over or redirected traffic from key domains—such as wideopentriggers.com—to promote and sell products that infringed on RBT's exclusive license to the '223 patent.

143.    Prior to the Settlement Agreement being executed by the parties, the Settling Defendants did not disclose their fraudulent conduct and in fact took active steps to conceal it, including (a) using intermediaries to operate shell entities, (b) routing domain traffic through masked or privately registered sites, and (c) directing sales through affiliated third-party platforms such as mid-tierdefense.com. These omissions were material and deprived RBT of the opportunity to prevent further breaches or seek immediate injunctive relief.

144.    The Settling Defendants made the above false representations and omissions with the intent to induce RBT to enter into the Settlement Agreement. Their purpose was to (a) avoid an adverse ruling on the then-pending motion for permanent injunction, (b) forestall discovery into their ongoing sales and affiliate structure, and (c) insulate themselves from direct liability while continuing to profit from the sale of infringing products.

145.    There was no cause of action for fraud in the underlying litigation, and nothing in the litigation record suggested that the Settling Defendants would

fail to comply with a court-ordered permanent injunction—a violation of which is literal jail time—or the Settlement Agreement.

146.    RBT would not have agreed to dismiss its claims against the Settling Defendants but for Defendant Anthony McKnight's representation, on or around September 21, 2022, that the Settling Defendants would refrain from manufacturing or selling infringing FRT units or parts, and the inclusion of this representation in the Settlement Agreement. RBT reasonably assumed, based on the parties' stipulation and the entry of a federal Consent Judgment and Permanent Injunction, that the Settling Defendants would abide by their legal obligations under the Settlement Agreement.

147.    RBT relied on the Settling Defendants' representations and omissions in good faith. In executing the Settlement Agreement, RBT dismissed its suit, discontinued enforcement activity, and reasonably expected compliance with the Agreement's express terms, including the cessation of sales and transfer of domain control over wideopentriggers.com. These actions were significant and taken in reliance on formal, written commitments made in a litigation context. RBT could not have reasonably anticipated that Defendants would immediately and systematically violate a federal court order they had voluntarily agreed to.

148.   Upon learning of the Settling Defendants' brazen violations of the Settlement Agreement, RBT promptly initiated investigative efforts, and filed this action.

149.   As a direct result of RBT's justified reliance on the Settling Defendants' false representations and omissions, RBT has suffered significant harm. Defendants' fraudulent conduct enabled the continued sale of infringing triggers, eroded RBT's market position, caused consumer confusion, and resulted in tens of thousands of additional units sold through unauthorized channels—sales that RBT was contractually entitled to prevent or recover liquidated damages for. RBT has also incurred costs in investigating, uncovering, and attempting to redress this misconduct, including attorneys' fees, expert costs, and reputational damage.

150.   The conduct described above constitutes fraudulent misrepresentation, fraudulent inducement, and fraudulent concealment. The Settling Defendants made false statements of material fact, knew those statements were false, intended RBT to rely on them, and succeeded in inducing such reliance to RBT's detriment. They also concealed material facts they had a duty to disclose and provided substantial assistance to third parties continuing the fraudulent scheme. No reasonable plaintiff could have foreseen such a coordinated effort to circumvent a binding court order.

151.   RBT seeks compensatory damages for the injury caused by Defendants' fraud, punitive damages to deter such misconduct, disgorgement of

profits unlawfully obtained, injunctive relief, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## COUNT IV—AIDING AND ABETTING FRAUD
### *Against All Non-Settling Defendants*

152.    Plaintiff RBT repeats and realleges paragraphs 1 through 123 as if fully set forth herein.

153.    As outlined above, the Settling Defendants committed fraud by misrepresenting their intent to comply with the terms of the Settlement Agreement and Permanent Injunction. Specifically, they falsely represented that they would cease manufacturing, marketing, and selling prohibited Forced Reset Triggers, and that they would transfer control of key domain names to RBT, while in fact taking steps to circumvent those obligations through the use of newly formed entities and concealed affiliate arrangements.

154.    This fraud was conceived, sustained, and concealed through the coordinated and substantial assistance of the other Defendants, including but not limited to Defendants Atrius, Performance Triggers, Delta 7, Christopher Rios, Malcolm Brown, and Andrew Myers.

155.    On information and belief, each Defendant was aware of the Settlement Agreement and Permanent Injunction and understood the obligations imposed on the Settling Defendants—including the ban on manufacturing or selling the enjoined products and the requirement to cease use of specific brands

45

and websites—at or before the time they began assisting the Settling Defendants with infringing sales. Their roles in launching successor websites, redirecting traffic from domains named in the Settlement Agreement, and transacting directly with Settling Defendants—often for cash—underscore their contemporaneous knowledge of the fraud and the objectives of the scheme before or shortly after the Settlement Agreement was executed.

156.   Each of these Defendants had actual knowledge of the fraud committed by the Settling Defendants, or at a minimum acted with reckless indifference to whether their conduct enabled the Settling Defendants to violate the Settlement Agreement. This includes, among other things, continuing to build or operate web infrastructure redirecting traffic from prohibited domains; selling FRT units or parts known to be materially identical to previously enjoined designs; and accepting payment for facilitating transactions that closely followed the enjoined conduct. These facts demonstrate actual knowledge or, at minimum, willful blindness or reckless indifference.

157.   Each of the Defendants undertook specific and affirmative acts to substantially assist the Settling Defendants in furtherance of their fraud in one or more of the following ways:

- Defendant Brown operated Atrius, which actively developed and sold prohibited products originating from the same designs and tooling used by the Settling Defendants;

- Further, Defendant Brown received funds from the Settling Defendants through accounts held in his wife's name, Defendant Lea Andreoli;

- Defendant Lea Andreoli aided the scheme by allowing her personal bank account to be used as a conduit for payments from Settling Defendants to Defendant Brown, thereby helping to conceal the nature and purpose of the transactions;

- Performance Triggers and those operating under its name used digital infrastructure and customer data diverted from the Settling Defendants' prior businesses;

- Delta 7, operated by Defendant Myers, produced and shipped trigger devices that violated the injunction, on behalf of or in coordination with the Settling Defendants;

- Defendant Myers also coordinated domain registration and redirection of traffic from websites expressly covered by the Settlement Agreement to newly controlled or disguised sales channels;

47

- Defendant Christopher Rios served as the president of Defendant Performance Triggers to enable Defendants Big Daddy Unlimited, Anthony McKnight, and his brother, Douglas Rios, to continue selling FRT units and parts while misrepresenting to RBT that they had ceased doing so, in a pattern designed to obscure the continuity between the enjoined and successor businesses;

- We Got Ammo, Blackstock, and Wide Open Enterprises served as shell corporations or distributor fronts, concealing the origin of funds, providing logistical support, or acting as pass-throughs for the continued sale of enjoined products.

158.   The coordinated nature of Defendants' conduct—including interlocking directorships, shared web infrastructure, redirected domains, and rapid relaunch of infringing products under new names—demonstrates a common plan to assist and conceal the Settling Defendants' fraud. These facts support the inference that Defendants did not merely act in parallel, but were active participants in a fraudulent scheme designed to circumvent the Settlement Agreement for shared financial gain.

159.   The financial benefits flowing to Defendants from their participation in the scheme—including revenue from FRT sales, traffic diverted through

redirected domains, and consulting or operational fees—reinforce that their

conduct was not incidental or negligent, but deliberate and profit-driven. These

gains gave each Defendant a direct economic incentive to assist and conceal the

Settling Defendants' fraud.

160.   By structuring transactions to avoid detection—e.g., cash sales in

parking lots, domain obfuscation, use of dissolved entities, and public promotion

under assumed names—Defendants took affirmative steps to prevent RBT from

discovering the Settling Defendants' continuing breaches. Their conduct delayed

enforcement, permitted the sale of tens of thousands of infringing products, and

exacerbated the harm caused by the Settling Defendants' original fraud.

161.   Because of the Defendants' concerted efforts to obscure the origin of

sales, redirect domains, and dissolve or reconstitute entities, RBT could not have

discovered the full scope of Defendants' participation without significant

investigative effort and third-party discovery. This ongoing concealment

forestalled detection and prevented timely intervention.

162.   Given their direct role in product development, fulfillment,

advertising, and payment processing, each Defendant knew or should have known

that their conduct would foreseeably and directly cause economic harm to RBT by

enabling and concealing continued violations of the Settlement Agreement.

163.   As a direct and proximate result of Defendants' aiding and abetting of the Settling Defendants' fraud, RBT has suffered substantial harm, including lost market share, infringement of intellectual property, dilution of brand goodwill, loss of exclusivity, legal and investigatory expenses, and an erosion of the deterrent effect intended by the Permanent Injunction.

164.   RBT seeks compensatory and punitive damages, disgorgement of profits, equitable relief, including to unwind and disable the corporate structures and websites used to further the fraud, attorneys' fees and costs, and any other relief the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request that the Court enter judgment in its favor and against Defendants, jointly and severally, and award the following relief:

1. Compensatory damages in an amount to be determined at trial;

2. Punitive damages in an amount to be determined at trial;

3. Liquidated damages as provided under the Settlement Agreement;

4. Injunctive and equitable relief as necessary to prevent further violations, including disgorgement of ill-gotten gains, an asset freeze and appointment of a receiver;

5. Reasonable attorneys' fees and costs;

6. Prejudgment and post-judgment interest; and

7. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a

trial by jury of any issues so triable by right.

Dated: June 27, 2025

**DHILLON LAW GROUP INC.**

By: */s/ Jacob W. Roth*
Josiah Contarino (PHV forthcoming)
Jacob William Roth (Bar No. 1036551
Anthony J. Fusaro, Jr. (PHV forthcoming)
Dhillon Law Group, Inc.
1601 Forum Place, Suite 403
West Palm Beach. FL, 33401
415-433-1700
jcontarino@dhillonlaw.com
jroth@dhillonlaw.com
afusaro@dhillonlaw.com

**WOOD HERRON & EVANS LLP**

Glenn D. Bellamy
Wood Herron & Evans LLP
600 Vine Street, Suite 2800
Cincinnati. Ohio 45202
gbellamy@whe-law.com

*Attorneys for Plaintiff*

4917-7232-3663, v. 11

51



not ship liquids, blood, animals...

ab and pull quickly.

Please use seal closest to edge first.

**FedEx**

Place a co
inside the
shipper/re
flap. Follo
the packa
© 2018 Fed
U.S. Patent

ORIGIN ID:APCA    (415) 433-1700
HARMEET K. DHILLON
DHILLON LAW GROUP, INC.
177 POST ST, SUITE 700

SAN FRANCISCO, CA 94108
UNITED STATES US

SHIP DATE: 27JUN25
ACTWGT: 1 00 LB
CAD: 9354362/INET4535

BILL SENDER

TO  HON. ROBERT L. HINKLE
UNITED STATES DISTRICT COURT JUDGE
NORTHERN DISTRICT OF FLORIDA
111 N. ADAMS STREET
TALLAHASSEE FL 32301
(949) 688-7707    REF:
INV:
PO:               DEPT:

**FedEx**
Express

**E**

FedEx                          TUE - 01 JUL 5:00P
TRK#
0201  8823 7047 1559    STANDARD OVERNIGHT

XA TLHA                   32301
              FL-US   TLH

New paks are only for FedEx Express
You can help us get your package safely to its
PEEL HERE

JUL 01 2025