## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA

RARE BREED TRIGGERS, INC., a
Texas corporation,

*Plaintiff,*

v.

BIG DADDY ENTERPRISES, INC., a
Florida corporation, BIG DADDY
UNLIMITED, INC., a Florida
corporation, BLACKSTOCK, INC., a
Florida corporation, WIDE OPEN
ENTERPRISES, LLC, a New Mexico
limited liability company, WE GOT
AMMO, INC., a Florida corporation,
PERFORMANCE TRIGGERS INC., a
Florida Corporation, ATRIUS
DEVELOPMENT GROUP CORP.,
D/B/A ATRIUS TRIGGERS, an Idaho
corporation, DELTA 7 LLC, a Florida
limited liability company, C&C
HOLDINGS GROUP LLC, a Florida
limited liability company, ANTHONY
MCKNIGHT, an individual, SHERRIE
MCKNIGHT, an individual,
DOUGLAS RIOS, an individual,
CHRISTOPHER RIOS, an individual,
MALCOLM BROWN, an individual,
LEA ANDREOLI, an individual, and
ANDREW MYERS, an individual,

*Defendants.*

Docket No.: _____

**PLAINTIFF'S EMERGENCY
MOTION FOR LEAVE TO FILE
COMPLAINT,** *EX PARTE*
**MOTION FOR TEMPORARY
RESTRAINING ORDER, AND
SUPPORTING DOCUMENTS
ORDER UNDER SEAL**



RCVD USDC FLND TL
JUL 1 '25 PM1:07

1

TO THE HONORABLE COURT:

Plaintiff Rare Breed Triggers, Inc. ("RBT") moves for leave to file under seal the Complaint, *Ex Parte* Motion for Temporary Restraining Order (the "TRO"), Brief in Support of the TRO, Declaration of Lawrence DeMonico and its attachments, Certification Pursuant to Fed. R. Civ. P. 65(b), Proposed Temporary Restraining Order, Summonses, Civil Cover Sheet, Notice of Similar Case, and Corporate Disclosure Statement (together, the "Filing Documents").

RBT requests leave to file these documents under seal because they detail how Defendants Big Daddy Enterprises, Inc., Big Daddy Unlimited, Inc., Wide Open Enterprises, LLC, We Got Ammo, Inc., Blackstock, Inc., Anthony McKnight, Sherrie McKnight, and Douglas Rios (collectively, the "Settling Defendants") engaged in a fraud scheme related to a September 2022 settlement agreement intended to resolve litigation in this district in two related patent infringement cases: *Rare Breed Triggers, LLC, et al.* v. *Big Daddy Enterprises, Inc. et al*, Case No. 1:21-cv-00149 (N.D. Fla.) and *Rare Breed Triggers, LLC, et al.* v. *Big Daddy Unlimited, Inc. et al*, Case No. 1:22-cv-00061 (N.D. Fla.) (together, the "Patent Litigation"). The cases concerned the Settling Defendants' sales of firearms components known as "forced reset triggers" ("FRTs") that infringed on a patent for FRT technology held by Plaintiffs: U.S. Patent No. 10,514,223 ("the '223 Patent"). Compl. ¶¶ 1-2, 44-45. The Patent Litigation was resolved with the

2

execution of the Settlement Agreement and a subsequent consent judgment and permanent injunction (the "Permanent Injunction") jointly entered in both cases. The Permanent Injunction prohibited the Settling Defendants from selling FRTs that infringe on the '223 Patent. The Settlement Agreement prohibited the Settling Defendants from producing or selling FRTs broadly.

The Filing Documents allege in detail how Defendants collaborated to fraudulently induce Plaintiff RBT to enter the settlement agreement (the "Settlement Agreement") through false promises that the Settling Defendants intended to cease production and sale of infringing FRTs—whereas they in fact had set up a web of covert sales strategies with the knowing assistance of the remaining Defendants through shell entities, proxies, redirected websites, and under-the-table cash transactions. *Id.* ¶¶ 4, 6-12, 51-52, 56-65, 66-82, 84-95.

The Filing Documents reveal sensitive details of Defendants' scheme, including Defendants Bid Daddy Unlimited, Inc. ("BDU"), Anthony McKnight, and Douglas Rios' use of proxy entities like Performance Triggers, Inc., Atrius Development Group Corp., and Delta 7, LLC to sell infringing FRTs under names such as "WOT Trigger," "Selektor Trigger," and "Atrius Select-Fire Assisted Reset Trigger." Compl. ¶¶ 7, 51, 56, 61, 75, 84, 87-89. They describe coordinated efforts to conceal these violating sales through cash transactions, foreign manufacturers, and redirected domains like wideopentriggers.com to performancetriggers.com, in

3

violation of the Settlement Agreement and Permanent Injunction. *Id.* ¶¶ 55, 78, 81, 87-89, 93, 103, 110. They also disclose the transcript of a recorded admission by Defendants' former counsel, Adam Floyd, confirming Douglas Rios's ownership of Performance Triggers and ongoing FRT sales. *Id.* ¶¶ 79, 96-100.

Public disclosure of these allegations risks tipping off Defendants, potentially leading to further spoliation of evidence, asset concealment, or new tactics to evade enforcement, as Defendants have already demonstrated a willingness to obscure their misconduct. *See* Compl. ¶¶ 4, 12, 51-52, 59, 70, 93, 103. Sealing is necessary to protect the integrity of this Court's Permanent Injunction, prevent further harm to RBT's patent rights, and ensure effective enforcement of the Settlement Agreement. *Id.* ¶¶ 3, 12-13, 46-47.

## MEMORANDUM IN SUPPORT

I.    **Good Cause Exists to Permit RBT to File the Filing Documents Under Seal Because Disclosure Before the TRO Is Issued Creates a Substantial Risk that Defendants Will Destroy Evidence, Dissipate Assets, or Otherwise Conceal Their Fraudulent Conduct.**

The common-law right of access to judicial records is qualified and may be outweighed by interests such as confidentiality or preserving the integrity of judicial proceedings. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001). A court must weigh the parties' interest in confidentiality against the public's interest in disclosure. *Id.* at 1312-13. This

4

balancing test is often framed as a "good cause" standard, met by demonstrating that disclosure would result in a clearly defined and serious harm. *Dish Network LLC v. TV Net Solutions, LLC*, No. 6:12-cv-1629, 2014 WL 4954683, at *1 (M.D. Fla. Oct. 2, 2014).

To determine whether "good cause" exists to shield documents from disclosure, courts consider factors such as: whether disclosure would impair the functioning of the court; whether it would harm legitimate privacy interests; the degree and likelihood of injury resulting from disclosure; the reliability of the information; whether there is an opportunity for affected parties to respond; whether the information involves public officials or matters of public concern; and the availability of less burdensome alternatives to sealing. *Id.*

Here, good cause exists to file the Filing Documents under seal until the requested temporary restraining order is issued because public disclosure before then would create a substantial risk that Defendants will destroy evidence or otherwise conceal their fraudulent conduct, thereby undermining the effectiveness of the temporary restraining order and the Court's ability to enforce it. *See Dish Network*, 2014 WL 4954683, at *1. Defendants have engaged in a deliberate scheme to evade the Settlement Agreement and Permanent Injunction by using shell entities, redirecting domains, and conducting concealed transactions. Compl. ¶¶ 4, 51-52, 55, 59, 70, 78, 81, 87-89, 93, 103, 110. For example, Defendants failed

to transfer control of *wideopentriggers.com*, instead redirecting it to their own website, *performancetriggers.com*, and used foreign manufacturers like AC Unity to produce infringing triggers. *Id.* ¶¶ 55, 78, 80. They have also dissolved entities like Performance Triggers and Delta 7 LLC to obscure their activities. *Id.* ¶¶ 72, 94. Additionally, Defendants have conducted cash-based sales in parking lots and used intermediaries like Michael Goldberg to further conceal their operations. *Id.* ¶¶ 81, 103, 110.

If the Filing Documents are disclosed before the temporary restraining order is issued, Defendants will be alerted to the specific allegations and evidence against them, including details of their shell entities, redirected domains, and the recorded admission by their former counsel, Adam Floyd, confirming ongoing infringement. *See Dish Network*, 2014 WL 4954683, at *1; Compl. ¶¶ 79, 96-100. Given their history of concealment, it is highly likely that Defendants would use this advance notice to destroy records, transfer assets, or devise new schemes to evade the temporary restraining order, rendering it ineffective. *See Dish Network*, 2014 WL 4954683, at *1; Compl. ¶¶ 4, 12, 51-52, 59, 93. Sealing the Filing Documents until the temporary restraining order is issued is therefore critical to preserve the Court's ability to enforce the temporary restraining order and protect RBT's exclusive license to the '223 Patent. *See Dish Network*, 2014 WL 4954683, at *1; Compl. ¶¶ 3, 12-13, 46-47.

The good cause factors weigh in favor of sealing. Disclosure before the temporary restraining order is issued would impair court functions by enabling Defendants to conceal evidence or shift tactics, thereby frustrating the enforcement of the temporary restraining order and undermining judicial authority. *See Dish Network*, 2014 WL 4954683, at *1; Compl. ¶¶ 12, 47, 123. The Filing Documents implicate privacy interests, including those of third parties, like the Settling Defendants' former counsel, Adam Floyd, who provided sensitive evidence and may face retaliation. *See Dish Network*, 2014 WL 4954683, at *1; Compl. ¶¶ 79, 96-100. The risk of harm is severe and likely given Defendants' past concealment and rapid sales (e.g., Atrius's $1.79 million in two weeks). *See Dish Network*, 2014 WL 4954683, at *1; Compl. ¶¶ 9, 64, 70, 93.

Further, the information in the Filing Documents is reliable, based on corporate filings, website activity, and Floyd's recorded statements. *See Dish Network*, 2014 WL 4954683, at *1; Compl. ¶¶ 7, 55, 63, 67-70, 78-79, 87-89, 96-100. This matter involves a private business dispute over patent rights, not public officials or broad policy concerns. *See Dish Network*, 2014 WL 4954683, at *1; Compl. ¶¶ 1, 18. Finally, no less restrictive alternative exists, as partial redaction would still alert Defendants to the allegations and evidence, enabling them to take preemptive action. *See Dish Network*, 2014 WL 4954683, at *1.

Accordingly, sealing the Filing Documents until the temporary restraining order is issued is necessary to prevent Defendants from undermining the temporary restraining order's purpose, protect the judicial process, and safeguard RBT's rights.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff RBT's Emergency Motion For Leave To File Complaint, *Ex Parte* Motion For Temporary Restraining Order, And Supporting Documents Under Seal.

Dated: June 27, 2025        **DHILLON LAW GROUP INC.**

By: */s/ Jacob W. Roth*
        Josiah Contarino (PHV forthcoming)
        Jacob William Roth (Bar No. 1036551
        Anthony J. Fusaro, Jr. (PHV forthcoming)
        Dhillon Law Group, Inc.
        1601 Forum Place, Suite 403
        West Palm Beach. FL, 33401
        415-433-1700
        jcontarino@dhillonlaw.com
        jroth@dhillonlaw.com
        afusaro@dhillonlaw.com

**WOOD HERRON & EVANS LLP**

Glenn D. Bellamy
Wood Herron & Evans LLP
600 Vine Street, Suite 2800
Cincinnati. Ohio 45202
gbellamy@whe-law.com

*Attorneys for Plaintiffs*

Please use seal closest to edge first.

ORIGIN ID:APCA    (415) 433-1700
HARMEET K. DHILLON
DHILLON LAW GROUP, INC.
177 POST ST, SUITE 700

SAN FRANCISCO, CA 94108
UNITED STATES US

SHIP DATE: 27JUN25
ACTWGT: 1.00 LB
CAD: 9354362/INET4535

BILL SENDER

TO    JESSICA LYUBLANOVITS
CLERK OF COURT
NORTHERN DISTRICT OF FLORIDA
111 N. ADAMS STREET
TALLAHASSEE FL 32301
(949) 688-7707         REF:
INV:
PO:                            DEPT:



FedEx
Express

FedEx                                      TUE - 01 JUL 5:00P
TRK#  8823 7032 4723        STANDARD OVERNIGHT
0201

XA TLHA                              32301
                              FL-US   TLH



58GJ3/D553/59F2



New paks are only for FedEx Express® shipments.

You can help us get your package safely to its
destination by packing your FedEx shipment
Need help? Go to **fedex.com** for packing tips.

PEEL HERE