# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

## CASE NO.: 1:25-cv-00181-RH-MAF

**RARE BREED TRIGGERS, INC.**, a
Texas corporation,

      Plaintiff,

v.

**BIG DADDY ENTERPRISES, INC.**,
et al.,

      Defendants.

---

## DEFENDANTS' JOINT EMERGENCY MOTION TO QUASH 31 THIRD-PARTY SUBPOENAS, MOTION FOR SANCTIONS AND MEMORANDUM IN SUPPORT

---

Big Daddy Enterprises, Inc., ("BDE"), Big Daddy Unlimited, Inc. ("BDU"), BlackStock, Inc., Wide Open Enterprises, LLC, We Got Ammo, Inc. ("WGA"), Performance Triggers, Inc., Atrius Development Group Corp., Sherrie McKnight, Anthony McKnight, Douglas Rios, Christopher Rios, Lea Andreoli, and Malcolm Brown (together, "Defendants")[1] hereby file this Emergency Motion to Quash 31 Third-Party Subpoenas and a Motion for Sanctions against Josiah Contarino the attorney that signed the subpoenas both pursuant to Rule 45) of the Federal Rules of

---

[1] To Defendants' knowledge, Andrew Myers, CC Holdings Group LLC, and Delta 7 LLC have not yet been served and/or appeared.

Civil Procedure and applicable case law. Defendants will demonstrate that these subpoenas are facially deficient, and a fishing expedition aimed a third parties not in any way related to any of the Defendants. Some of the targeted third-parties being sued in other forums for patent infringement. The present case is a breach of contract case related to a Settlement Agreement, and does not contain any claims of patent infringement. Engaging in such gamesmanship is a blatant misuse of judicial process and should not be tolerated by this Court under whose authority the deficient subpoenas were issued.

It is unclear why the Court has allowed this case to continue, especially at an expedited pace. Defendants would respectfully point out to the Court they have been continuously denied due process of law. The Court has been engaging with Plaintiffs through briefings and a hearing, all prior to the Defendants even being served. While the Court recognized that Plaintiffs failed to show a likelihood of success and denied their request for a TRO, it inexplicably established expedited briefing on their preliminary injunction request. The basis for denying the TRO was that, due to a mandatory arbitration clause in the Settlement Agreement, Plaintiffs are unlikely to succeed; that same basis applies to Plaintiffs' preliminary injunction request. Defendants are simultaneously filing a Rule 60 Motion to vacate the two orders this Court issued prior to Defendants being served, as they constitute denial of due

process. Defendants hired counsel within two weeks of being served, which is quite reasonable. Counsel was then faced with literally hundreds of pages of briefing and exhibits to wade through, while dealing with Plaintiffs who were already frantically pushing for discovery. Three days after appearing, three Defendants filed a motion to stay the case pending arbitration [ECF #49]; the remaining Defendants followed suit [ECF #55]. The same day, opposing counsel presented Defendants with 31 third-party subpoenas. Shortly thereafter, Atrius filed a motion for protection from discovery, again requesting the Court stay this case. The Defendants again request the Court stay the case, after sanctioning Mr. Contarino.

Defendants will now address Plaintiffs' numerous misrepresentations made throughout the hundreds of pages of briefing already filed with this Court and demonstrate that this Court should not put stock into anything Plaintiffs represent without allowing Defendants an opportunity to respond. Defendants will then demonstrate that the subpoenas are facially flawed, unduly burdensome, and not directed at this case but rather other pending patent infringement cases as well as identifying other targets for additional lawsuits. But a short background on forced reset triggers ("FRT's") will clear up many misconceptions this Court may have based upon numerous misrepresentations by Plaintiffs.

REINER & REINER, P.A.
ONE DATRAN CENTER ⬥ 9100 SOUTH DADELAND BLVD ⬥ SUITE 901 ⬥ MIAMI ⬥ FLORIDA ⬥ 33156 ⬥ TEL: 305 670-8282 ⬥ FAX: 305 670-8989

## I. Factual Background

### A. *Forced Reset Triggers*

The AR 15 is a civilian, semi-automatic version of the fully automatic M 16 used by our military since 1964. At that time, civilians were allowed to own fully automatic firearms (i.e., machine guns). In 1986, the National Firearms Act ("NFA") was amended to prevent the further manufacture of machine guns for the civilian market. As the supply of pre-1986 machine guns dwindled, the price of the existing supply of machine guns that civilians could legally own skyrocketed. Currently, a pre-1986 M 16 sells for around $20,000, whereas, an AR-15 can be had for under $1,000.

Consequently, there have been a number of innovations designed to mimic fully automatic fire, while not running afoul of the NFA. One of which is the FRT, which was the subject of the two prior lawsuits in front of this Court. In an FRT, the reciprocating bolt of the AR-15 is used to force the trigger to reset very rapidly. So, rapidly that as the bolt chambers the next round, the trigger may be pulled again. Thus, by applying a steady backward pressure on the trigger the firearm will continue firing at rate very close to a machine gun (e.g., 800 rounds per minute in an AR 15).

Contrary to Plaintiffs' contentions, forced reset triggers have been around for decades. For example, U.S. Pat. No. 2,056,975 discloses a forced reset trigger for a

4

Colt 1911 handgun. The patent describes the invention as a "machine-gun" because in 1934, when Michal '975 was filed, the NFA had just been passed and for the first time legally defined the term "machine gun." U.S. Pat. No. 7,398,723 discloses a forced reset trigger for use in an AR 15. This patent pre-dates the patent (U.S. Pat. No. 10,514,223) that was asserted in the prior cases by 14 years. In fact, Defendants were going use the '723 Patent to invalidate the '223 Patent in the prior cases, but the defendants were financially unable to continue and settled out. The Plaintiffs, upon learning of the '723 Patent, purchased it.

While FRT's have been known for a long period of time, the Bureau of Alcohol Tobacco Firearms Explosives ("ATF"), the federal agency responsible for regulating firearms, took the position that FRT's were "machine guns" as defined by the NFA. Consequently, there was no market for them. However, this changed last year when a court ruled that FRT's are not "machine guns" as defined by NFA. *National Association for Gun Rights, et al. v. Garland*, 4:23-cv-00830 (N.D. Tex.– Ft. Worth). The ATF settled the case, agreeing to halt its actions against FRT's and FRT manufacturers.

### B. *Prior Litigations Before this Court*

About four years prior to the ATF's defeat, Rare Breed[2] ("RB") was

---

[2] The corporate structure involves several companies and is here, collectively, simply referred to as Rare Breed. The Court in New York found that the structure was a

5

REINER & REINER, P.A.
ONE DATRAN CENTER ⬥ 9100 SOUTH DADELAND BLVD ⬥ SUITE 901 ⬥ MIAMI ⬥ FLORIDA ⬥ 33156 ⬥ TEL: 305 670-8282 ⬥ FAX: 305 670-8989

established by Lawrence DeMonico, Cole Leleux, Mike Register, and Kevin Maxwell. RB entered into a contract with Big Daddy Unlimited ("BDU") to retail RB triggers, however, RB never disclosed to BDU that it had reason to believe its triggers might constitute illegal machine guns and indeed provided BDU assurances that they did not. BDU was dissatisfied with the quality of the RB triggers and did not agree with RB's business approach which resulted in a falling out. So, BDU began having its own triggers made (designated "WOT") and began selling them. At some point, BDU had a second trigger, the Alamo-15, designed and built. This resulted in two cases before this Court. *Rare Breed, et al. v. Big Daddy Enterprises Inc., et al.*, 1:21-cv-00149 (N.D. Florida) and *Rare Breed Triggers, LLC, et al. v. Big Daddy Unlimited, Inc., et al.*, 1:22-cv-00061 (N.D. Florida). The defendants ultimately settled those cases and consequently were bankrupted.

In addition to the two lawsuits that were pending before this Court, Rare Breed also filed suit against several other companies that manufactured FRT's, even though its '223 Patent was likely not valid or infringed. These small players, like the two defendants in the prior case, did not have the financial resources to withstand a

---

deliberate attempt to obfuscate ownership in an attempt to evade the ATF. *U.S. v. Rare Breed Triggers LLC, et al.*, 1:23-cv-00369 (E.D.N.Y.). That case involved charges of conspiracy, mail fraud, and wire fraud against RB, Mr. DeMonico, and Mr. Maxwell.

REINER & REINER, P.A.
ONE DATRAN CENTER ◆ 9100 SOUTH DADELAND BLVD ◆ SUITE 901 ◆ MIAMI ◆ FLORIDA ◆ 33156 ◆ TEL: 305 670-8282 ◆ FAX: 305 670-8989

protracted and expensive patent litigation.

As we will see, some of these prior defendants will become relevant to the subpoenas in question. Following these prior settlements, RB began selling some of the FRT's sold by the prior defendants. Specifically, the ATF caught RB selling WOT triggers. This too will become relevant.

### C. *Current RB Litigations*

RB has sued a number of companies for selling FRT's, most of which do not appear to infringe upon any of RB's patents. These companies, like the former defendants of other cases, are being targeted by the third-party subpoenas being issued from this case. These cases are:

> *ABC IP, et al. v. 80 Mills, et al.*, 1:25-CV-1262 (N.D. Ohio)
> *ABC IP, et al. v. Harrison Gunworks, et al.*, 4:25-cv-00299 (E.D. Idaho)
> *ABC IP, et al. v. Hanes Tactical, et al.*, 3:25-cv-00201 (W.D. Tex.—El Paso Div.)
> *ABC IP, et al. v. Kline*, 3:25-cv-454 (S.D. Miss.—Northern Div.)
> *ABC IP, et al. v. Nguyen*, 4:25-CV-2961 (S.D. Tex.—Houston)
> *ABC IP, et al. v. Z3 Productions, et al.*, 5:25-cv-00695 (W.D. Okl.)
> *ABC IP, et al. v. Dairyland Defense, et al.*, 2:25-cv-00852 (E.D. Wis.—Milwaukee Div.)
> *ABC IP, et al. v. FRT Triggers LLC*, 1:25-cv-00124 (D. Wy.)
> *ABC IP, et al. v. Spider Hole LLC, et al.*, 1:25-cv-00864 (W.D. Tex.—Austin Div.)

Tellingly, RB has avoided suing any of the larger manufacturers of FRT's, which not only shows its understanding of the tenuous nature of its patents, but also belies its alleged claim that it is being irreparably harmed from the sale of FRT's by one or

more of the Defendants.

**II.    The Court Quash the Subpoenas**

Rule 45(d)(3)(A) states that, "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c) ;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden."

*A.    The Subpoenas are Facially Defective*

Rule 45(c)(2)(A) allows requested documents to be produced within 100 miles of where the person resides, is employed, or regularly transacts business in person. Here, all 31 subpoenas demand the documents be produced at the law offices of Dhillon Law Group in Newark, NJ with the exception of two which have no address designated.[3] The recipients of the subpoenas are in Oklahoma, Texas, Alabama, Washington, Georgia, and seven other states, but none of them are in New Jersey or within 100 miles of Dhillon Law Group's Newark office. Two of them are outside the United States (Tucows in Toronto, Canada and AC Unity in Bosnia)

---

[3] The subpoenas for U.S. Customs and Borders and Michael Goldberg have no location designated for the document production and are thus facially invalid.

8

which of course makes them invalid.

### B. *Plaintiffs Failed to Provide Proper Notice of the Subpoenas to Defendants*

Rule 45(a)(4) requires that any subpoena commanding the production of documents must be served on each party "**before** it is served on the person to whom it is directed." In this case, Plaintiffs issued the subpoenas on July 28 and began to have them served immediately, with some being served the next day. Meanwhile, several of the Defendants had not yet been properly served and, of those that were, they were receiving notice of the subpoenas as they were being actively served, not before. The Committee Notes to the 2013 Amendment of Rule 45 provide guidance:

> Rule 45(a)(4) is added to highlight and slightly modify a notice requirement first included in the rule in 1991. Under the 1991 amendments, Rule 45(b)(1) required prior notice of the service of a "documents only" subpoena to the other parties. Rule 45(b)(1) was clarified in 2007 to specify that **this notice must be served before the subpoena is served on the witness**.
>
> The Committee has been informed that parties serving subpoenas frequently fail to give the required notice to the other parties. The amendment moves the notice requirement to a new provision in Rule 45(a) and requires that the notice include a copy of the subpoena. **The amendments are intended to achieve the original purpose of enabling the other parties to object or to serve a subpoena for additional materials**.

Committee Notes on Rules—2013 Amendment (emphasis added).

### C. *The Subpoenas are Not Directed at this Case*

Many of the requests are not directed to any claim in this case. For example,

REINER & REINER, P.A.
ONE DATRAN CENTER ◆ 9100 SOUTH DADELAND BLVD ◆ SUITE 901 ◆ MIAMI ◆ FLORIDA ◆ 33156 ◆ TEL: 305 670-8282 ◆ FAX: 305 670-8989

the subpoena to David Gormley is clearly directed to discovering parties to sue for patent infringement.

- Req. 14: Manufacturing records, including production logs, batch numbers, or quality control reports related to the FRTs.

- Req. 17: Any documents reflecting your knowledge or inquiries about the ownership, licensing, or authorization of trademarks, designs, or intellectual property used in the FRTs.

- Req. 18: Any internal memoranda, reports, or communications discussing potential infringement risks related to the FRTs.

- Req. 19: Documents reflecting any subcontractors, suppliers, or third parties involved in the manufacture or supply of the FRTs for any of the Defendants.

- Req. 20: Communications with third parties regarding the production or intellectual property aspects of the FTRs.

- Req. 22: Any royalty, licensing, or commission payments made or received in connection with the FRTs.

Subpoenas to two companies that that manage websites seek to learn the identity of the company or person behind the website. Presumably, RB believes said party is infringing upon one of its patents. Domains by Proxy was asked for:

> All documents related to mid-tierdefense.com from January 2024 to the present, including identification of, and contact information for, all owners, registrants, points of contact, registrations or updates to registrations (together, the "Associated People or Entities"), including but not limited to documents sufficient to show the:
> 
> - Full legal name(s) of the Associated People or Entities;
> - Email address(es) of the Associated People or Entities;

- Phone number(s) of the Associated People or Entities;
- Physical/billing address(es) of the Associated People or Entities
- Organization/company name(s) (if provided)
- Name on the credit card or payment method of the Associated People or Entities;
- Email(s) associated with billing of the Associated People or Entities;
- Payment methods used (credit card, PayPal, cryptocurrency, etc.) by the Associated People or Entities;
- Transaction history for the domain (including timestamps);
- Username(s) and associated email address(es) of the Associated People or Entities;
- IP addresses used to access the account;
- Dates/times of account logins;Any other domains managed under the same account;
- Initial registration date;
- Registrar and reseller details;
- Domain status (active, suspended, etc.);
- Renewal and expiration dates;
- DNS records and hosting information;
- Nameservers and associated IP addresses;
- Web server access logs showing IP addresses used to log in to the website admin panel;
- Hosting account registration info (if different from domain);
- FTP/SFTP access logs or credentials;
- Associated hosted content or backups;
- Real registrant information behind any WHOIS privacy or proxy service; Contract or communication between registrant and privacy/proxy service.

The same requests were sent to Tucows in Toronto pertaining to a website WOT.com.

Many of the requests are for products not made or associated with any of the Defendants in this case, but relate to defendants in the on-going patent litigations

11

identified earlier. For example, Mid-Tier Defense's requests include:

- Req. 3: All documents sufficient to show what person or entity you approached, or who approached you, to offer for sale the Super Safety AR-15 Trigger Kit – 4140 Super Safety
- Req. 4 pertains to Complete Mil-spec Super Safety Trigger Kit
- Req. 5 pertains to Premium Super Safety Trigger Kit
- Req 6 pertains to CNC 4140 Super Safety
- Req 7 pertains to CNC D2 Super Safety
- Req. 8: pertains to Super Safety AR-15-D2
- Req. 15: All invoices, purchase orders, receipts, bills of sale, or other documents reflecting your purchase or acquisition of any of the items in Exhibit A (together, the "Infringing Goods"), including but not limited to:
- Req. 16: All documents sufficient to identify the person, company, or companies fulfilling the orders of Infringing Goods you sold.
- Req. 17: All contracts, agreements, or correspondence with the person(s), company, or companies supplying the Infringing Goods, including but not limited to:
- Req. 18: All communications (e.g., emails, letters, text messages, or other electronic messages) between you and the person(s), company or companies supplying the Infringing Goods

The Super Safety is a product specifically accused of infringement in many of the cases identified herein as "Current RB Litigations." None of the Defendants in this litigation are selling or accused of selling this product. Moreover, this case is a breach of contract suit–not a patent infringement suit. Got Your 6 Tactical had similar requests (Req. 9–11).

Crawford is a manufacturer of gun parts that RB previously sued on its invalid '223 patent: So, RB wants to know if he is making any FRT's and for whom. Again, FRT's have been around long before RB and its worthless patents do not cover any FRT.

12

REINER & REINER, P.A.
ONE DATRAN CENTER ◆ 9100 SOUTH DADELAND BLVD ◆ SUITE 901 ◆ MIAMI ◆ FLORIDA ◆ 33156 ◆ TEL: 305 670-8282 ◆ FAX: 305 670-8989

- o Req 10: Any records of meetings, phone calls, or negotiations that led to the agreement to manufacture the FRTs, including meeting notes, agendas, or call logs.
- o Req 14: Manufacturing records, including production logs, batch numbers, or quality control reports related to the FRTs.
- o Req 17: Any documents reflecting your knowledge or inquiries about the ownership, licensing, or authorization of trademarks, designs, or intellectual property used in the FRTs.
- o Req. 18: Any internal memoranda, reports, or communications discussing potential infringement risks related to the FRTs.
- o Req. 19: Communications with third parties regarding the production or intellectual property aspects of the FTRs.
- o Req. 22: Any royalty, licensing, or commission payments made or received in connection with the FRTs.

Similarly, the requests to Zumot, Goldberg, Neubacher, and others request all documents related to any FRT.

Two of the subpoenas, those to Adam Floyd and Steve Kalishman, are directed to attorneys who worked with the defendants in the prior two cases and ask for clearly privileged documents. The subpoena to Floyd, who routinely works with gun manufacturers, is broadly directed to all communications with anyone related to FRT's.

### D. *Behavior is Sanctionable*

Rule 45(d)(1) provides for sanctions where the party or attorney responsible for issuing the subpoena did not take reasonable steps to avoid imposing undue burden or expense on the recipient of the subpoena. Under Rule 45(a)(1), "the court for the district where compliance is required **must** enforce this duty and impose an

appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply" (emphasis added). Attorneys Josiah Contarino and Anthony Fusaro issued these subpoenas acting as an officer of this Court, and as such had the responsibility to uphold the integrity of the legal system. Here, these third parties are clearly unduly burdened by subpoenas which are not directed to gathering evidence for this contract dispute, but rather are clearly directed at RB's numerous other patent litigations and its attempts to discover additional targets.

### III. Conclusion and Prayer

Defendants respectfully ask this Court to quash the 31 subpoenas, sanction RB, Mr. Fusaro, and Mr. Contarino, and stay this action. The Court revoke Mr. Fusaro's and Mr. Contarino's privileges of appearing *pro hac vice* before this Court.

### CERTIFICATE OF CONFERRAL

I certify that undersigned conferred with Plaintiff's counsel regarding the foregoing via email dated July 29, 2025, and Plaintiff's counsel indicated opposition to the relief sought herein. See also conferral at ECF 54.

### CERTIFICATE OF WORD COUNT

Undersigned counsel certifies per L.R.7.1.(F) that this memorandum contains 3,150 words.

14

REINER & REINER, P.A.
ONE DATRAN CENTER ⬥ 9100 SOUTH DADELAND BLVD ⬥ SUITE 901 ⬥ MIAMI ⬥ FLORIDA ⬥ 33156 ⬥ TEL: 305 670-8282 ⬥ FAX: 305 670-8989

DATED: August 4, 2025                Respectfully submitted,

**REINER & REINER, P.A.**
*Counsel for Atrius Development Group Corp., Malcolm Brown, and Lea Andreoli*
9100 So. Dadeland Boulevard, Suite 901
Miami, Florida  33156-7815
Tel: (305) 670-8282; Fax: (305) 670-8989
dpr@reinerslaw.com

    */s/ David P. Reiner, II*
By: _____
 **DAVID P. REINER II**; FBN 416400


s/ *Michael J. Smith*
Michael J. Smith
Texas Bar No. 24037517
**THE FOWLER LAW FIRM P.C.**
3301 Northland Drive, Suite 101
Austin, Texas 78731
Tel. No.: (512) 441-1411
Email: msmith@thefowlerlawfirm.com

*Attorney for Defendants Big Daddy Enterprises, Inc., Big Daddy Unlimited, Inc., Blackstock, Inc., Wide Open Enterprises, LLC, We Got Ammo, Inc., Performance Triggers Inc., Anthony McKnight, Sherrie McKnight, Douglas Rios, and Christopher Rios*

## CERTIFICATE OF SERVICE

*I HEREBY CERTIFY that on **August 5, 2025**, I filed the foregoing with the Clerk of the Court via CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.*

By:  */s/ David P. Reiner, II*
_____
**DAVID P. REINER II**; FBN 416400

REINER & REINER, P.A.
ONE DATRAN CENTER ⬥ 9100 SOUTH DADELAND BLVD ⬥ SUITE 901 ⬥ MIAMI ⬥ FLORIDA ⬥ 33156 ⬥ TEL: 305 670-8282 ⬥ FAX: 305 670-8989