UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

| | |
|---|---|
| RARE BREED TRIGGERS, INC., a Texas corporation, | |
| *Plaintiff*, | Case No. 1:25-cv-00181-RH-MAF |
| v. | |
| BIG DADDY ENTERPRISES, INC., *et al.*, | |
| *Defendants*. | Judge Robert L. Hinkle |
| | Magistrate Judge Martin A. Fitzpatrick |

**PLAINTIFF'S OPPOSITION TO THE MOTION TO COMPEL
ARBITRATION AND STAY THE CASE PENDING ARBITRATION FILED
BY DEFENDANTS ATRIUS DEVELOPMENT GROUP CORP.,
MALCOLM BROWN, AND LEA ANDREOLI**

There are several reasons why Defendants Atrius Development Group Corp. ("Atrius"), Malcolm Brown, and Lea Andreoli's (collectively, "Atrius Defendants") motion to compel arbitration and stay the case pending arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. ¶ 3, should be denied.

To start, the position of this Circuit is that the FAA does not prevent district courts from granting one party a preliminary injunction to preserve the status quo pending arbitration. This follows circuits across the country, which have explained that a district court's grant of a preliminary injunction furthers the policies underlying the FAA. In other words, even if a binding arbitration clause existed here, the Court should continue to oversee and consider the merits of Plaintiff Rare

Breed Triggers, Inc.'s ("RBT") requested preliminary injunction, which it filed along with its *ex parte* motion for a temporary restraining order at the start of this litigation. Although not necessary, the language agreed to by those Defendants who signed the settlement agreement and consent judgment provides further support and indeed compels the Court to continue to oversee and consider the preliminary injunction hearing scheduled for next month.

But the Court should also find the arbitration provision here non-binding and unenforceable as to the claims RBT has brought. It is settled that parties must intend to waive their right to have disputes resolved by court. Here, the arbitration provision conflicts with other provisions of the settlement agreement and the subsequent consent judgment that specifically reserve litigation and continuing jurisdiction to this Court, making clear the parties' intent to litigate certain disputes. Finally, because the arbitration clause applies only to disputes "regarding this Agreement," it is narrowly drafted and does not encompass intentional tort claims like the aiding and abetting fraud claim alleged against Atrius Defendants.

For all these reasons, Atrius Defendants' motion to compel arbitration and stay the case pending arbitration should be denied.

## RELEVANT STATEMENT OF FACTS

This case involves a coordinated scheme to conceal and perpetuate infringement of Plaintiff Rare Breed Triggers, Inc.'s ("RBT") patent rights by

individuals and entities that were at times restrained by a temporary injunction, and eventually restrained by a permanent injunction. (ECF No. 1, Compl. ¶¶ 1, 3-4, 6-7.) Among the central participants in this scheme are Atrius, its operator Brown, and Andreoli, who played key roles in disguising the ongoing infringement. (*Id.* ¶¶ 26, 34–35, 56.)

### A.    Background.

Atrius is a corporate entity incorporated in Idaho and based in California. (*Id.* ¶ 26.) It is owned and operated by Malcolm Brown, who personally oversaw the design, marketing, and sale of a three-position forced reset trigger ("FRT") that was branded as the "Atrius Select-Fire Assisted Reset Trigger" ("Atrius FRT"). (*Id.* ¶¶ 26, 56, 61.)

Beginning as early as 2021, Brown collaborated with Defendants Anthony McKnight ("McKnight") and Douglas Rios ("Rios") to develop an FRT that replicated the functionality of the Alamo-15 trigger: an FRT that would be found to infringe RBT's patent before the Atrius FRT was ever brought to market. (*Id.* ¶¶ 58–60.) In January 2022, while subject to a preliminary injunction, McKnight and Rios paid Brown for this design work not through Atrius's bank account but instead—in an effort to obscure the transaction and Atrius and Brown's involvement—through a bank account held in Andreoli's name. (*Id.* ¶ 59.) This collaboration continued into at least 2023, well after entry of the consent judgment

and permanent injunction in the related matters of 1:21-cv-00149-RH-HTC and

1:22-cv-61-RH-HTC ("Consent Judgment" or "Consent Judgment and Permanent

Injunction"). (*Id.* ¶¶ 60-61.)

Atrius explicitly promoted the Atrius FRT's forced reset functionality,

touting its elimination of the trigger reset and thereby highlighting the very feature

that placed prior devices in violation of RBT's patent and the terms of the

settlement agreement. (*Id.* ¶¶ 61–62.) Yet the marketing concealed any connection

to McKnight, Rios, or the previously enjoined trigger designs. (*Id.* ¶¶ 58–61.)

Brown's role in this campaign was not limited to development and

marketing. He also took steps to conceal coordination with McKnight and Rios,

including routing payments through Andreoli to hide the source and purpose of the

funds. (*Id.* ¶ 59.) Andreoli knowingly permitted her account to be used in this

fashion, directly facilitating the effort to obscure the identity of those involved in

the Atrius FRT's development. (*Id.*)

These efforts to conceal the origin and control of the product were essential

to its continued sale. Atrius's branding and infrastructure created the false

appearance that it was an independent venture with no connection to the parties

enjoined by this Court in 1:21-cv-00149-RH-HTC and 1:22-cv-61-RH-HTC and

bound to the settlement agreement. (*Id.* ¶¶ 58–65, 114–116.) In reality, the product

was functionally identical to those previously found to infringe RBT's patent,

developed in coordination with the same individuals, and within the scope of the settlement agreement's definition of prohibited FRTs. (*Id.* ¶¶ 54, 58–62.) Indeed, McKnight and Rios *paid for its development*, including payment that satisfied work directed by McKnight and Rios when they were preliminary enjoined from doing so. (*Id.* ¶ 59.)

**B.    RBT sues Atrius Defendants for aiding and abetting fraud.**

On July 1, 2025, RBT filed its claim against Atrius Defendants for aiding and abetting fraud, alleging that they knowingly participated in a scheme to conceal ongoing infringement of RBT's patent rights and breaches of the settlement agreement by previously enjoined individuals. (*Id.* ¶¶ 114–116.) Their conduct—including facilitating the development, marketing, and sale of infringing triggers under a new brand, obscuring financial transactions, and masking the involvement of McKnight and Rios—was central to the fraudulent concealment. (*Id.* ¶¶ 56–65.) By helping create the false appearance of an independent venture, Atrius Defendants misled consumers, the Court, and RBT, obstructing RBT's ability to detect and halt either the continued infringement or McKnight and Rios's misrepresentations regarding same. (*Id.* ¶¶ 58–62.)

**C.    RBT sues other Defendants for breach of contract.**

RBT brought a separate breach of contract claim against other Defendants. That claim relies on the settlement agreement, which was executed by RBT and

5

certain enjoined parties—including McKnight and Rios—on September 22, 2022

(the "Settlement Agreement"). (Compl. ¶¶ 3-4, 50.) Atrius Defendants are

nonsignatories and did not execute the Settlement Agreement (*id.* ¶¶ 34-35), but

are now attempting to reap what they perceive to be a benefit of it. The Settlement

Agreement includes the following provisions:

- Any dispute regarding this Agreement will be resolved through confidential private arbitration before a mutually agreeable arbitrator. (Compl. Ex. A ¶ 15) ("Arbitration Clause").

- The Parties agree to jurisdiction and venue of the Northern District of Florida and the Parties agree to continuing jurisdiction of this Court for enforcement of the Agreement. The Agreement shall be governed by Florida law, without regard to choice-of-law principles. (*Id.* ¶ 23) ("Court Continuing Jurisdiction and Enforcement Clause").

- The Parties will keep all terms of this Agreement strictly confidential and will not disclose those terms beyond the individuals and entities involved. The Parties further agree that they have not and will not give information to any other third-party, including competitors, media, or any government agency regarding the transfer, location or origin of the merchandise. **The Parties are not restricted from disclosure should legal enforcement of this Agreement or its terms become necessary**. Notwithstanding this provision, the Patent Rights Assignment can be recorded in the U.S. Patent and Trademark Office. (*Id.* ¶ 24) (emphasis added.)

## D.    RBT files its Complaint and *ex parte* motions for a temporary restraining order and preliminary injunction.

In conjunction with filing its Complaint on July 1, 2025, RBT moved for an

*ex parte* temporary restraining order and a preliminary injunction. (ECF No. 3 at

1–2.) Among other things, the motion for a preliminary injunction seeks to stop the

sale of infringing triggers, freeze assets, and order the preservation of records. (*Id.* at 2.) RBT explains in its motion that Defendants—the fraud of which Atrius Defendants aided and abetted—"hid from RBT their extensive violations of the Preliminary Injunction, their continuing sale of FRTs through a web of alter egos and intermediaries, and their intent to continue these illicit operations," and even directed an employee to "delete emails and text messages that were evidence of their scheme." (ECF No. 4 at 16 (citing ECF No. 3-5 ¶¶ 87, 84).) Although the Court was not satisfied that RBT met its burden for an *ex parte* temporary restraining order, it did not deny RBT's motion for a preliminary injunction; instead, the Court ordered that RBT's motion for a "preliminary injunction remains pending." (ECF No. 9 at 6, ¶ 2.) The Court scheduled the preliminary injunction hearing for September 16, 2025, at 9:00 a.m. (*Id.* ¶ 11.[1])

---

[1] Consistent with the Court's order, including its directive that discovery may begin on July 28, 2025 (ECF No. 9 at 3, ¶ 3), RBT had third-party subpoenas served on or after July 29, 2025. The day before, on July 28, RBT's counsel sent counsel for Atrius Defendants—the only Defendants to have appeared at that point—copies of the subpoenas and advised they would be served. The following motions were then filed by either Atrius Defendants or Defendants jointly: Objection And Motion For Protective Order Regarding Discovery & Motion To Expedite Ruling On Motion For Stay And To Compel Arbitration (ECF No. 54); Emergency Motion to Quash 31 Third-Party Subpoenas, Motion for Sanctions and Memorandum in Support (ECF No. 57); and Emergency Motion to Vacate Orders Pursuant to Rule 60(b) and Alternative Motion for Reconsideration Pursuant to Rule 54(b) (ECF No. 58). Incredibly, Defendants seek sanctions against RBT's attorney for *following* the Court's July 10, 2025, Order and serving third-party subpoenas. The Court has already denied the emergency motion to vacate. RBT will be opposing the remaining motions.

This pattern of evading accountability for their violative conduct and attempting to thwart RBT's recovery has continued in this litigation. For example, nearly every defendant has evaded service. Some have literally built fences from the time when service began to a week or so later, presumably to prevent service of process. Declaration of Josiah Contarino ("Contarino Dec.") ¶ 3, Ex. A at 1. Others already had a fence with numerous signs warning of harm for trespassing, including one that said, "WARNING NO TRESPASSING YOU QUITE POSSIBLY COULD GET SHOT OR HURT AND THEN TRY TO SUE RESULTING IN A LONG DRAWN OUT COURT BATTLE. YOU WILL LOSE BECAUSE THIS SIGN WILL BE 'EXHIBIT A.'" *Id.* ¶ 4, Ex. B at 2. For still other Defendants, the process server heard voices in response to his knock, but those Defendants ignored him and would not open the door on multiple occasions. *Id.* ¶ 5, Ex. C at 2.

Another example concerns Defendant C&C Holdings Group LLC ("C&C Holdings"). C&C Holdings is listed as an officer of several of the corporate Defendants, most times with a Florida address, but occasionally with an Ohio address. RBT has searched in both Florida and Ohio for this entity, but a C&C Holdings entity associated with other Defendants does not appear in those states. RBT may have located C&C Holdings in Delaware. Circumstantial evidence— such as when the entity was activated compared to when it started to appear as an

officer for other of the corporate Defendants—suggests this. Although the records provided by Delaware are sparce, a status document provided by Delaware shows C&C Holdings' status as "voluntarily cancelled" on July 17, 2025—after RBT filed this suit against Defendants, including C&C Holdings. *Id.* ¶ 6, Ex. D. This C&C Holdings has since been served via its registered agent in Delaware. *Id.* ¶ 7, Ex. E.

Defendants' destruction of evidence, transfer of assets, habitual evasion of service, and alteration of the legal status of the potential corporate Defendant RBT has been unable to locate, are among the very actions that prompted RBT to seek temporary and preliminary relief in the first place.

### E.    Atrius Defendants file a motion to compel arbitration and stay the case pending arbitration.

On July 25, 2025, Atrius Defendants filed a motion to compel arbitration and stay the case pending arbitration. (ECF No. 49, Defendants' Motion to Compel Arbitration and Stay the Case Pending Arbitration ("Defs. Mot.") at 1.) Their motion asserts that the relief RBT seeks against them, including its pending preliminary injunction motion, must be resolved through private arbitration pursuant to the terms of the Settlement Agreement. (*Id.* at 4–5.) This opposition follows.

## ARGUMENT

Atrius Defendants' motion to compel arbitration and stay the case should be denied for three independent reasons. *First*, it is proper for this Court to oversee and consider RBT's motion for a preliminary injunction because this Circuit, the FAA, and the Revised Florida Arbitration Code ("RFAC")[2] enable RBT to seek equitable relief to preserve the status quo, including a preliminary injunction and temporary restraining order, even if there is an enforceable arbitration clause. Circuits across the country have ruled that district courts are correct to grant preliminary injunctive relief when there is an enforceable arbitration clause, even when that arbitration clause and the contract containing it are silent on whether injunctive relief should be issued by the court or the arbitrator.

Here, we have at least that: the arbitration clause is silent on preliminary injunctive relief and therefore it is appropriate for the Court to oversee the preliminary injunction hearing scheduled for next month. But there are also other provisions in the Settlement Agreement that support this Court's deciding the preliminary injunction. These include the Court Continuing Jurisdiction and Enforcement Clause, which reveals the parties' intent to reserve litigation and continuing jurisdiction to this Court to enforce the Settlement Agreement. Also

---

[2] Because the Settlement Agreement involved interstate commerce, it is subject to the RFAC to the extent the RFAC is not in conflict with the FAA. *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 463 (Fla. 2011).

included is the injunctive relief clause, which permits RBT—not Defendants—to seek injunctive relief through enforcing the Settlement Agreement. Defendants who signed the Settlement Agreement also signed a subsequent document that binds them—the Consent Judgment and Permanent Injunction—which similarly retained this Court's jurisdiction to enforce its terms and provisions, one of which concerned the Settlement Agreement.

*Second*, the Arbitration Clause directly conflicts with other provisions of the Settlement Agreement and a later Consent Judgment that specifically reserve litigation and continuing jurisdiction to this Court, including the Court Continuing Jurisdiction and Enforcement Clause, making clear the parties' intent to litigate certain disputes. Atrius Defendants fail to address the Court Continuing Jurisdiction and Enforcement Clause or the Consent Judgment in their motion. The cumulative language in Settlement Agreement and Consent Judgment reveal the parties' intent to arbitrate only a very narrow category of claims: settling Defendants' payment to RBT of infringing FRTs (*i.e.*, "merchandise") that the ATF then argued were illegal machineguns. (The ATF has since changed its position.)

*Third*, the Arbitration Clause, which applies only to disputes "regarding this Agreement," is narrowly drafted and does not encompass intentional tort claims like the aiding and abetting fraud claim alleged here.

11

I.    **Atrius Defendants' motion to compel arbitration and stay the case should be denied because it is proper for this Court to oversee RBT's motion for a preliminary injunction.**

A.    **It is proper for this Court to oversee and consider RBT's motion for a preliminary injunction when the Arbitration Clause itself is silent on the issue of equitable relief, including preliminary injunctive relief.**

Federal precedent and Florida law make clear that an arbitration agreement does not prevent a court from granting equitable relief, including a temporary restraining order and preliminary injunction prior to arbitration, when the arbitration agreement is silent on the issue of equitable relief.

Federal courts applying the FAA routinely hold that even where arbitration is mandatory, district courts retain jurisdiction to issue preliminary injunctive relief before arbitration begins. *See Teel v. Aaron's, Inc.*, No. 3:14-CV-640-J-32PDB, 2015 WL 1346846, at *2 n.4 (M.D. Fla. Mar. 24, 2015) (citation omitted) (noting that, "[e]ven when a dispute is subject to mandatory arbitration under the FAA, a district court has subject matter jurisdiction under ¶ 3 of the FAA to grant preliminary injunctive relief prior to sending the dispute to arbitration"); *Talk Fusion, Inc. v. Ulrich*, No. 8:11-CV-1134-T-33AEP, 2011 WL 2681677, at *8 (M.D. Fla. June 21, 2011), *report and recommendation adopted*, No. 811-CV-1134-T-33AEP, 2011 WL 2681848 (M.D. Fla. July 11, 2011) (holding that "injunctive relief is appropriate in spite of the arbitration clause").

As the Eleventh Circuit has noted, the FAA does not prevent a district court "'from granting one party a preliminary injunction to preserve the status quo pending arbitration.'" *Variable Annuity Life Ins. Co. v. Laferrera*, 680 F. App'x 880, 886 (11th Cir. 2017) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1052 (4th Cir. 1985)).[3] In *Variable*, the Eleventh Circuit

---

[3] *See also Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894–95 (2d Cir. 2015) (concluding that "where the parties have agreed to arbitrate a dispute, a district court has jurisdiction to issue a preliminary injunction to preserve the status quo pending arbitration," even when arbitration has not been initiated); *Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co. of New York*, 749 F.2d 124, 125 (2d Cir. 1984) (reversing the district court's denial of a preliminary injunction that was based on the errant belief that a valid arbitration clause "stripped the court of power to grant injunctive relief," and explaining that the "fact that a dispute is to be arbitrated, however, does not absolve the court of its obligation to consider the merits of a requested preliminary injunction"); *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1380 (6th Cir. 1995) (adopting the "reasoning of the First, Second, Third, Fourth, Seventh, and arguably the Ninth, Circuits and hold[ing] that in a dispute subject to mandatory arbitration under the Federal Arbitration Act, a district court has subject matter jurisdiction under ¶ 3 of the Act to grant preliminary injunctive relief"); *but see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey*, 726 F.2d 1286, 1292 (8th Cir. 1984) (declining to permit injunctive relief in court if claim is arbitrable when "no qualifying contractual language has been alleged"); *Bellemore v. SSS Educ. Inc.*, No. 8:19-CV-2053-T-23JSS, 2019 WL 6321050, at *6 (M.D. Fla. Nov. 26, 2019) (concluding that "a court can both issue a preliminary injunction and compel arbitration" and recognizing that the weight of federal appellate authority agrees, but declining to consider preliminary injunctive relief when the arbitrator retains authority to provide it). The arbitration clause in *Bellemore* was expansive, designating "a single arbitrator administered by the American Arbitration Association in accordance with its Consumer Arbitration Rules," waiving the right "to litigate the dispute or claim in any court," and highlighting that "other rights [the plaintiff] would have in court also may not be available in arbitration." Mot. Dismiss or Stay Case and Compel Arb. at 1–2, *Bellemore v. SSS Educ. Inc.*, No. 8:19-CV-2053-T-23JSS (M.D. Fla. Aug. 26, 2019), ECF No. 9.

quoted *Bradley*, which concerned an arbitration clause that, like the Arbitration Clause here, was silent on obtaining preliminary equitable relief in court. Instead, it said that "'any controversy between myself [Bradley] and Merrill Lynch arising out of my employment, or the termination of my employment with Merrill Lynch for any reason whatsoever shall be settled by arbitration. . . .'" *Bradley*, 756 F.2d at 1050 (alterations in original). [4]

So the *Bradley* court looked to the text of the FAA, including the section Atrius Defendants rely on to support their motion to stay: 9 U.S.C. ¶ 3. It provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties **stay the trial of the action** until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. ¶ 3 (emphasis added).

---

[4] Like the Arbitration Clause here, the arbitration agreement in *Bradley* also called exclusively for arbitration to resolve disputes between the parties. *Id.* at 1050–51. There is also no indication in *Bradley* that other provisions in the parties' agreements contemplated any court involvement, whereas other provisions at play here do contemplate court involvement.

The *Bradley* court relied on the plain language of the FAA to rule that the district court was correct to grant a preliminary injunction to preserve the status quo pending the arbitration of the parties' dispute, reasoning that the "trial of the action" referenced in the FAA does not include "preliminary injunctions or other pre-trial proceedings." *Bradley*, 756 F.2d at 1052. The *Bradley* court further distinguished the FAA from other statutes that *do* require a blanket stay, like a bankruptcy stay, noting that Congress certainly "knows how to draft a statute which addresses all actions within the judicial power" when it intends to. *Id.* In this regard, the *Bradley* court opined that a district court's review of preliminary injunctive relief "will further, not frustrate, the policies underlying the Federal Arbitration Act." *Id.* at 1054.

In *Teel*, the court in the Middle District of Florida held a preliminary injunction hearing, considered the plaintiffs' preliminary injunction motion, and ultimately ruled that the plaintiffs did not meet the four-part preliminary injunction test. *Teel*, 2015 WL 1346846, at *1–*3, *6. At the same time, the court granted the defendant's motion to compel arbitration based on an arbitration clause that the court applied to all plaintiffs, which stated:

> YOU AND WE AGREE THAT ANY AND ALL DISPUTES ARISING OUT OF OR RELATING IN ANY WAY TO YOUR AGREEMENT(S) WITH AARON'S . . . [or] THE PRODUCTS OR SERVICES PROVIDED TO YOU BY AARON'S . . . SHALL BE RESOLVED EXCLUSIVELY IN BINDING

15

ARBITRATION RATHER THAN LITIGATION IN COURT.

*Id.* at *1 (alterations in original). When ruling on the preliminary injunction, the court noted that the mandatory arbitration clause did not divest it of subject matter jurisdiction under the FAA to consider preliminary injunctive relief. *Id.* at *2 n.4.

In *Talk Fusion*, a sister court oversaw and granted the plaintiff's preliminary injunction motion. 2011 WL 2681677, at *9. The parties' contract had an arbitration clause[5] and a carve-out for injunctive relief. *Id.* at *8. Yet the court ruled that even absent the carve-out, preliminary injunctive relief would have been appropriate because "a district court may grant preliminary injunctive relief pending arbitration, if the requirements for injunctive relief are met." *Id.* (clarifying that "there are there are two independent bases under which the Court may grant injunctive relief in this case despite the existence of the arbitration clause under the Policies," one being that federal law interprets the FAA as

---

[5] The arbitration clause stated:

> Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

*Talk Fusion*, 2011 WL 2681677, at *8.

permitting it even when there is no carve-out, and the other being the plain

language of the carve-out).

Florida law is aligned with the FAA and the federal courts interpreting the

FAA to permit preliminary injunctive relief even if a mandatory arbitration clause

otherwise covers the parties' dispute. Under the Revised Florida Arbitration Code

("RFAC") ¶ 682.031(1), even after an arbitration proceeding has been initiated but

before an arbitrator is appointed and authorized to act, the court "may enter an

order for provisional remedies to protect the effectiveness of the arbitration

proceeding to the same extent and under the same conditions as if the controversy

were the subject of a civil action." Fla. Stat. ¶ 682.031(1). And, as mentioned,

because the Settlement Agreement involves interstate commerce, it is subject to the

RFAC to the extent the RFAC does not conflict with the FAA. *Shotts v. OP Winter*

*Haven, Inc.*, 86 So. 3d 456, 463 (Fla. 2011). Here, there is no conflict between the

two statutes on this issue, so the RFAC is another basis on which this Court can

proceed with overseeing the preliminary injunction hearing scheduled for next

month.

The Arbitration Clause cannot be construed to bar RBT from seeking

preliminary equitable relief against any Defendants, including Atrius Defendants.

The Arbitration Clause is silent as to preliminary injunctive relief, stating only that

"[a]ny dispute regarding this Agreement will be resolved through confidential

private arbitration before a mutually agreeable arbitrator." (Compl. Ex. A ¶ 15.) As

mentioned, federal courts interpreting analogous provisions of the FAA hold that a

stay under ¶ 3 does not preclude injunctive relief. *See Laferrera*, 680 F. App'x at

886; *Teel*, 2015 WL 1346846, at *2 n.4; *Talk Fusion*, 2011 WL 2681677, at *8.

Florida law also expressly authorizes courts to grant provisional remedies prior to

arbitration where necessary "to protect the effectiveness of the arbitration

proceeding." Fla. Stat. ¶ 682.031(1).

The Court therefore has full authority to continue overseeing and deciding

RBT's motion for a preliminary injunction based on the Arbitration Clause alone.

Especially considering the fact that most—if not all—the parties here will be

before the Court in the likely contempt proceedings in 1:21-cv-00149-RH-HTC

and 1:22-cv-00061-RH-HTC, the Court should exercise its discretion to oversee

the pending preliminary injunction motion scheduled for a hearing next month. In

addition, as described below, the terms of the parties' Settlement Agreement and

subsequent Consent Judgment provide even further support for this Court's

involvement.

/ / / /

/ / / /

/ / / /

**B.    When faced with an Arbitration Clause that is silent as to preliminary injunctive relief, it is proper for this Court to oversee and consider RBT's motion for a preliminary injunction, especially when other provisions of (1) the Settlement Agreement and (2) a subsequent Consent Judgment signed by the settling Defendants authorize the Court's involvement.**

Federal precedent and Florida law make clear that an arbitration clause does not prevent a court from granting equitable relief, including a temporary restraining order and preliminary injunction prior to arbitration, particularly where, as here, the arbitration clause is not only silent on the issue, but the contract containing it contemplates court involvement. Indeed, the Eleventh Circuit has held that, when a contract includes an enforceable arbitration clause and language that contemplates court involvement in equitable relief, the district court errs when it fails to consider a preliminary injunction.

Specifically, in *Am. Exp. Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 & 940 n.6 (11th Cir. 1997), the court reversed the district court's decision that an enforceable arbitration clause required denial of the plaintiff's motion for a preliminary injunction. In so ruling, the court found the arbitration clause included language that contemplated court involvement limited to injunctive relief. *Id.* at 940 (noting the arbitration clause's language that if a dispute is submitted to arbitration, only American Express "is entitled to an injunction from a court of

competent jurisdiction"). The court reasoned that the carve-out contradicted the district court's conclusion and, therefore, reversed and remanded to the district court to determine as soon as possible whether to grant injunctive relief. *Id.* at 940–41.

In *Variable*, the carve-out was less clear, but the court nevertheless agreed that the enforceable arbitration clause did not prevent the district court from issuing preliminary injunctive relief. 680 Fed. Appx. at 885. The arbitration clause in *Variable* stated that disputes between the parties "'shall be resolved in accordance with [FINRA's] Code of Arbitration Procedures.'" *Id.* at 882.[6] No carve-out was present in the contract's arbitration provision. But a carve-out was present in FINRA's Code of Arbitration Procedures, which provided that the parties "'may seek a temporary injunctive order from a court of competent jurisdiction.'" *Id.* at 885. The *Variable* court found the carve-out sufficient to permit the plaintiff to seek injunctive relief from the district court. *Id.* It later quoted *Bradley's* holding that the "language of [9 U.S.C.] ¶ 3 does not preclude a district court from granting one party a preliminary injunction to preserve the status quo pending arbitration." *Id.* at 886 (citation and internal quotation marks omitted).

---

[6] There was also a provision for claims involving non-parties that is not relevant here. *Id.*

Similar to the provision in *Variable*, the agreements at issue here—the Settlement Agreement and the Consent Judgment—contemplate court involvement in providing injunctive relief to RBT and not to the settling Defendants. The Settlement Agreement states that "Plaintiffs will also be entitled to *injunctive relief* and to recover its costs, including reasonable attorneys' fees, in *enforcing this Agreement*." (*Id.* ¶ 16 (emphasis added).) The Settlement Agreement's Court Continuing Jurisdiction and Enforcement Clause provides that the parties "agree to jurisdiction and venue of the Northern District of Florida and the Parties *agree to continuing jurisdiction of this Court* for *enforcement of the Agreement*." (Compl. Ex. A ¶ 23 (emphasis added).)

The Settlement Agreement was signed by the parties on September 22, 2022. Defendants Douglas Rios, Anthony McKnight, We Got Ammo, Inc.—and others—signed the Consent Judgment later on October 10, 2022. (Compl. Ex. B at 9.) They thereby agreed that the "Court shall retain jurisdiction to *enforce* the terms and provisions of this Consent Judgment [and] Permanent Injunction," with one such term describing the Settlement Agreement "Plaintiffs and Defendants have entered into . . . in which they have agreed to terms of compensation for the infringement." (*Id.* at 4 ¶ 21, 5 ¶ 25 (emphasis added).) In the end, the "Court retain[ed] exclusive jurisdiction of th[e] [earlier] action[s] for the purpose of compliance with" the Consent Judgment and Permanent Injunction. (*Id.* at 7 ¶ 9.)

21

Taken together, these several provisions in the Settlement Agreement and Consent Judgment evidence the parties' intent for RBT to be able to seek, at a minimum, injunctive relief in this Court—just as in *Makarewicz*, where American Express retained the right for it alone to seek injunctive relief in court notwithstanding an enforceable arbitration agreement that governed the parties' dispute. Here, the parties repeatedly provided for the Court's retention of jurisdiction and enforcement powers, both contemporaneously with and after including the Arbitration Clause. While these carve-out provisions were not in the Arbitration Clause itself, they need not be. The carve-out in *Variable* was not in the arbitration provision but instead in a section of the rules that were selected to govern the arbitration.

In addition, as more fully described below, the way in which the Consent Judgment references the Settlement Agreement is evidence of how the Arbitration Clause therein could apply to certain claims but not others. The Consent Judgment describes the Settlement Agreement as one that "Plaintiffs and Defendants have entered into . . . in which they have agreed to terms of compensation for the infringement." (Compl., Ex. B at 4 ¶ 21.) This suggests that the Arbitration Clause in the Settlement Agreement addressed this difference between the Settlement Agreement and the Consent Judgment—namely, a dispute over the compensation the settling Defendants owed RBT for their infringement.

22

Here, ample evidence shows that the parties intended to permit RBT the right to seek injunctive relief from the Court: (1) the Settlement Agreement's Court Continuing Jurisdiction and Enforcement Clause provides for jurisdiction and venue in the Northern District of Florida and the parties' agreement to the Court's continuing jurisdiction to enforce the Agreement; (2) the Consent Judgment similarly retains the Court's exclusive jurisdiction to enforce its terms, one of which describes the Settlement Agreement; and (3) the Settlement Agreement expressly entitles RBT to "injunctive relief and to recover its costs, including reasonable attorneys' fees, in enforcing this Agreement."

**C.    RBT has sought preliminary equitable relief from the first day of this litigation and, whether through discretion based on the Arbitration Clause's silence on the issue, or through compulsion based on the parties' intent as revealed in the varying provisions of the Settlement Agreement and Consent Judgment, the Court should continue to oversee RBT's preliminary injunction hearing scheduled for next month.**

RBT expressly seeks equitable relief in this case. The Complaint requests "injunctive and equitable relief as necessary to prevent further violations, including disgorgement of ill-gotten gains, an asset freeze, and appointment of a receiver." (Compl. ¶ 164, Prayer for Relief ¶ 4.)

Consistent with these requests, RBT moved for an *ex parte* temporary restraining order and preliminary injunction to enjoin further sales of infringing products, freeze assets, and preserve evidence. (*See* ECF No. 3, Pl.'s Ex Parte Mot.

23

for TRO and Prelim. Inj.; ECF No. 4, Mem. of Law in Supp. of TRO.) These are classic forms of equitable relief designed to maintain the status quo and prevent irreparable harm—precisely the kind of court-ordered remedies that courts have upheld as consistent with the FAA and Florida law. *See Laferrera*, 680 F. App'x at 886 (reiterating that the FAA does not prevent a district court "from granting one party a preliminary injunction to preserve the status quo pending arbitration" (citation and internal quotation marks omitted)); *Teel*, 2015 WL 1346846, at *2 n.4 (recognizing the court's jurisdiction to grant injunctive relief before arbitration begins); *Talk Fusion*, 2011 WL 2681677, at *8 (holding that "injunctive relief is appropriate in spite of the arbitration clause"); Fla. Stat. ¶ 682.031(1). Not that it matters for purposes of this Court overseeing the pending preliminary injunction, but this Court did not deny RBT's motion for a preliminary injunction; instead, the Court ordered that RBT's motion for a "preliminary injunction remains pending." ECF No. 9 at 6, ¶ 2.[7]

---

[7] The Court was not satisfied that RBT met its burden for an *ex parte* temporary restraining order, but that does not mean RBT had no right to seek it. *See, e.g.*, *Braintree Lab'ys, Inc. v. Citigroup Glob. Markets Inc.*, 622 F.3d 36, 43 (1st Cir. 2010) (affirming the trial court's denial of preliminary injunction after "assessing the propriety of injunctive relief pending arbitration . . . according to the familiar set of four factors"); *Teel*, 2015 WL 1346846, at *2 n.4 (conducting preliminary injunction hearing notwithstanding an enforceable arbitration clause but concluding preliminary injunction standard not met). Indeed, RBT could not have sought *ex parte* relief under the Arbitration Clause because arbitral tribunals do not offer it, *see* Cheryl L. Mullin et al., *Injunctive Relief Pending Arbitration: The Evolving Role of Judicial Action*, 38 Franchise L.J. 547, 551 n.20 (2019)

Therefore, the Arbitration Clause does not—and under Florida and federal law, cannot—bar RBT from pursuing preliminary injunctive relief through the Court. Consequently, Atrius Defendants cannot compel arbitration of RBT's requests for equitable relief to preserve the status quo before arbitration is initiated, and their motion to stay the preliminary injunction proceeding scheduled for next month must be denied.[8]

## II.    The Arbitration Clause does not encompass RBT's claims because it conflicts with the Court Continuing Jurisdiction and Enforcement Clause in the Settlement Agreement, and other provisions in the subsequently executed Consent Judgment, all which reserve litigation and continuing jurisdiction to this Court.

The Eleventh Circuit has explained that courts should consider motions to compel arbitration in a manner similar to motions for summary judgment. *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021) (citing

---

(reviewing rules of major arbitration tribunals), and because the Arbitration Clause fails to specify any governing arbitration rules. The Arbitration Clause could never strip RBT of its right to *ex parte* relief without explicitly stating as much.

[8] The Settlement Agreement provides that "[t]he Parties are *not restricted from disclosure should legal enforcement of this Agreement or its terms become necessary*." (Compl. Ex. A ¶ 24 (emphasis added).) Plainly, as the Complaint describes, legal enforcement became necessary here. This squarely refutes Atrius Defendants' suggestion that RBT violated the Settlement Agreement's confidentiality clause. (*See* Defs. Mot. at 5, fn. 1.) Among other arguments, the availability of equitable relief to preserve the status quo prior to arbitration further disproves any claim of breach. RBT filed this action to enforce its rights, moved for a temporary restraining order and preliminary injunction, and submitted the Settlement Agreement itself as an exhibit—all actions expressly permitted by the Settlement Agreement and authorized under federal and Florida law.

*Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (concluding "that a summary judgment-like standard is appropriate and hold[ing] that a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if there is no genuine dispute as to any material fact concerning the formation of such an agreement" (citation and internal quotation marks omitted))).

When interpreting multiple provisions in a contract, courts must avoid constructions that render any term meaningless. *Hirsch v. Jupiter Golf Club LLC*, 232 F. Supp. 3d 1243, 1253–54 (S.D. Fla. 2017). Instead, courts strive to give effect to all provisions "while doing violence to none." *Id.* (internal quotations and citation omitted). And courts "place arbitration agreements on an equal footing with other contracts," no more, no less, "enforc[ing] them according to their terms." *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted).

In *Coinbase, Inc. v. Suski*, 602 U.S. 143, 149–50 (2024), the Supreme Court held that courts—not arbitrators—decide whether a later forum selection clause supersedes an earlier arbitration agreement. In that case, the Ninth Circuit ruled that a later forum selection clause superseded the earlier arbitration agreement because the later agreement sufficiently demonstrated the parties' intent to do so. *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1230–31 (9th Cir. 2022).

26

While *Suski* applied California law, Florida law also recognizes that "it is 'well established that a written contract may be modified by a subsequent oral agreement or subsequent conduct of the parties, even though the written contract purports to prohibit such modification.'" *ConSeal Int'l Inc. v. Neogen Corp.*, 488 F. Supp. 3d 1257, 1268 (S.D. Fla. 2020) (quoting *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1298 (M.D. Fla. 2009)). The *ConSeal* court denied the parties' cross-motions for summary judgment where they disputed whether the defendant's acquisition of a third-party company, and its post-acquisition conduct with the plaintiff, had amended the original license agreement between the plaintiff and that third-party. *Id.* at 1261, 1268–69. The court concluded that the parties' "contrasting views, in essence, amount to disagreements about the parties' intent and mutual understanding about [the] [d]efendant's potential assumption of the [a]greement," and therefore denied the cross-motions for summary judgment. *Id.* at 1268–69.

Similar to *Suski*, the Eleventh Circuit has affirmed a trial court's denial of a motion to compel arbitration when, despite the fact that an earlier version of the parties' agreement contained an arbitration clause, that agreement was superseded by a newer agreement that was silent on arbitration. *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1113 (11th Cir. 2014) (applying North Carolina law).

Here, there are multiple provisions and documents at play that must be analyzed to determine the parties' intent. The Settlement Agreement's Arbitration

27

Clause provides that "[a]ny dispute regarding this Agreement will be resolved

through confidential private arbitration before a mutually agreeable arbitrator."

(Compl. Ex. A ¶ 15.) It does not state that the arbitration will be binding.[9] At the

same time, the Settlement Agreement also provides that "[t]he Parties agree to

jurisdiction and venue of the Northern District of Florida and the *Parties agree to*

*continuing jurisdiction of this Court for enforcement of the Agreement*." (*Id.* ¶ 23

(emphasis added).) As *Hirsch* instructs, the Court must interpret the Settlement

Agreement to give effect to both clauses without rendering either clause

meaningless.

---

[9] This omission cannot be viewed in isolation. "There can be no quarrel that a contract cannot stand if it is missing the 'essential terms of an agreement.'" *Greenbrook NH, LLC v. Est. of Sayre, ex rel. Raymond*, 150 So. 3d 878, 881 (Fla. Dist. Ct. App. 2014) (quoting *Bergman v. DeIulio,* 826 So.2d 500, 503 (Fla. 4th DCA 2002)). "The essential terms of an arbitration agreement include 'the form and procedure for arbitration, the number of arbitrators, how the arbitrators were to be selected, or . . . the issues to be decided by arbitration.'" *Id.* (quoting *Malone & Hyde, Inc. v. RTC Transp., Inc.,* 515 So.2d 365, 366 (Fla. 4th DCA 1987)). Of course, when an arbitration clause does not include specifics such as the specific rules or the arbitration organization governing potential disputes, but designates that Florida law governs, the RFAC serves as a gap-filler for those missing provisions. *Premier Real Est. Holdings, LLC v. Butch*, 24 So. 3d 708, 710 (Fla. Dist. Ct. App. 2009). But in court decisions relying on RFAC to fill gaps, the arbitration clauses confirmed that the arbitration was to be "binding," *see, e.g.*, *id.* at 709; *Osprey Health Care Ctr., LLC v. Pascazi by & through Outwater*, 329 So. 3d 177, 188 (Fla. Dist. Ct. App. 2021); *Hoboken Yacht Club LLC v. Marinetek N. Am. Inc.*, No. CV 19-12199 (JMV), 2019 WL 7207486, at *2 (D.N.J. Dec. 26, 2019) (applying Florida law), whereas the Arbitration Clause here does not.

Also at play here is the Consent Judgment. Defendants Douglas Rios, Anthony McKnight, We Got Ammo, Inc.—and others—signed the Consent Judgment on October 10, 2022, after agreeing to the Settlement Agreement on September 22, 2022. (Compl. Ex. B at 9.) They thereby agreed that the "Court shall retain jurisdiction to *enforce* the terms and provisions of this Consent Judgment [and] Permanent Injunction," with one such term referencing and describing the Settlement Agreement "Plaintiffs and Defendants have entered into . . . in which they have agreed to terms of compensation for the infringement." (*Id.* at 4 ¶ 21, 5 ¶ 25 (emphasis added).) In the end, the "Court retain[ed] exclusive jurisdiction of th[e] [earlier] action[s] for the purpose of compliance with" the Consent Judgment and Permanent Injunction. (*Id.* at 7 ¶ 9.)

Reading the provisions together, the Court Continuing Jurisdiction and Enforcement Clause confirms that the parties agreed to litigate in this Court when enforcement is sought. Evidence of this intent is bolstered by the Consent Judgment, in which the parties reserved jurisdiction in this Court to enforce its terms, one of which referenced and described the Settlement Agreement. Those commitments would serve no purpose if every dispute were subject to mandatory arbitration. Because RBT's claim involves enforcement-related conduct and seeks relief aligned with the parties' attempt to have the Court reserve jurisdiction,

compelling arbitration would override the litigation forum the parties expressly preserved.

Atrius Defendants fail to address the Court Continuing Jurisdiction and Enforcement Clause or the Consent Judgment. At the same time, Atrius Defendants seek to reap what they perceive to be a benefit of the Settlement Agreement, the Arbitration Clause. Yet Atrius Defendants cannot attempt to benefit from one provision of the Settlement Agreement and disregard others. *Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1055 (S.D. Fla. 2009) ("A non-signatory to a contract cannot invoke the benefits of a contract and, at the same time, disavow portions that impose an obligation." (citation and internal quotation marks omitted)). Further, the facts of this case are different from the facts of those cases that have found standard forum selection and arbitration clauses compatible, *e.g.*, *D.A.M. Prods., Inc. v. Acosta Resituyo*, No. 17-22962-CIV, 2018 WL 11372106, at *6 (S.D. Fla. Feb. 12, 2018), because the forum selection clause here is not standard and because a later agreement exists in which the signatories to the Settlement Agreement agreed to the exclusive jurisdiction of this Court. No standard forum selection clause includes the parties "agree[ment] to [the] *continuing jurisdiction* of this Court for *enforcement of the Agreement*." (Compl. Ex. A ¶ 23 (emphasis added).) Among possible others, a reason for the parties agreeing to the Court's continuing designation to enforce the Settlement

Agreement is explained by another provision: the "Parties will jointly move the Court for entry of a Consent Judgment and Permanent Injunction in the Civil Actions." (Compl. Ex. A ¶ 23 (emphasis added).) In other words, the parties knew that the forthcoming Consent Judgment would, among other things, mandate that the settling Defendants would no longer sell FRTs and that they would not challenge the validity of the '223 patent, which track those same obligations in the Consent Judgment. So it would make little sense for the parties to desire the Court to oversee those obligations of the settling Defendants in the earlier infringement actions but have those obligations reserved for arbitration in this matter.

The Consent Judgment does not specify, however, how the settling Defendants would pay for their infringement. The Settlement Agreement alone provides that "Defendants will deliver to Rare Breed or Rare Breed's representative to a designated location in North Dakota agreed upon merchandise packaged and in new, salable condition." (*Id.* ¶ 4.) That merchandise was the infringing FRTs the settling Defendants had manufactured, which at the time the ATF argued were illegal machineguns.[10] It is therefore perfectly reasonable to

---

[10] That federal government has since changed its position via a May 16, 2025, settlement agreement, *see* https://www.justice.gov/opa/pr/department-justice-announces-settlement-litigation-between-federal-government-and-rare-breed, after the Northern District of Texas entered a final ruling that "FRTs do not fire multiple rounds with a single function of the trigger and, thus, do not qualify as machineguns." *Nat'l Ass'n for Gun Rts., Inc. v. Garland*, 741 F. Supp. 3d 568, 604 (N.D. Tex. 2024). RBT was an organizational plaintiff of that lawsuit.

interpret the Arbitration Clause as requiring confidential arbitration concerning the "merchandise" the settling Defendants were obligated to deliver to RBT, while reserving jurisdiction to this Court for other categories of disputes contemplated by the Settlement Agreement and Consent Judgment.

Accordingly, the Court Continuing Jurisdiction and Enforcement Clause and the Consent Judgment prevent the Arbitration Clause from encompassing claims like RBT's that invoke the Court's continuing enforcement authority—authority that the parties intended as evidence by the language of both the Court Continuing Jurisdiction and Enforcement Clause and the Consent Judgment.

## III. The Arbitration Clause does not encompass RBT's claims against Atrius Defendants because it is too narrow to cover intentional torts.

An arbitration clause must be enforced according to its plain language; if it is narrowly drafted, it cannot be extended to intentional tort claims unless those claims arise from the contract itself. *BREA 3-2 LLC v. Hagshama Fla. 8 Sarasota, LLC*, 327 So. 3d 926, 934-35 (Fla. Dist. Ct. App. 2021) (describing a clause limited to "*any dispute* under this Agreement" as narrow and inapplicable to usury claims (emphasis added)); *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 637-38 (Fla. 1999) (rejecting arbitration for tort claims under clause limited to claims "arising out of or relating to" the contract); *Fla. Dep't of Ins. v. World Re, Inc.*, 615 So. 2d 267, 269-70 (Fla. Dist. Ct. App. 1993) ("*World Re*") (holding that a clause restricting

arbitration to disputes "arising from the interpretation of the contract" does not encompass independent tort claims).

Florida courts construe arbitration clauses that refer only to disputes "arising out of" or "under" the agreement as narrow in scope. *See BREA*, 327 So. 3d at 935; *World Re*, 615 So. 2d at 269-70. Such clauses are not interpreted to cover independent tort claims unless those claims require interpretation of or are inextricably intertwined with the contract's terms. *See id.* Thus, intentional tort claims that arise from duties imposed by law—not from the agreement itself—are not subject to arbitration under a clause limited to disputes "arising out of" or "under" the agreement. *See id*. To be considered broad, an arbitration clause must include both "arising under or relating to" the agreement. *Seifert*, 750 So. 2d at 637.

Here, the Arbitration Clause states that "[a]ny dispute regarding this Agreement will be resolved through confidential private arbitration before a mutually agreeable arbitrator." (Compl. Ex. A ¶ 15.) That language is analogous to the narrow clauses in *BREA* and *World Re*, each of which was held insufficient to encompass tort claims that did not arise from the contract itself. *See BREA*, 327 So. 3d at 934-35; *World Re*, 615 So. 2d at 269-70. The Arbitration Clause here is missing one of the two types of phrases required by the Florida Supreme Court in *Seifert* to be considered broad. *Seifert*, 750 So. 2d at 637.

"[T]he determination of whether a particular claim must be submitted to arbitration necessarily depends on the existence of some nexus between the dispute and the contract containing the arbitration clause." *Id.* at 638. A claim does not have a "contractual nexus" "simply because the dispute would not have arisen absent the existence of a contract between the parties." *Seifert*, 750 So.2d at 639. "'[T]hat a dispute could not have arisen but for the agreement does not mean that the dispute necessarily 'relates to' that agreement.'" *In re Bateman*, 585 B.R. 618, 627 (Bankr. M.D. Fla. 2018), *aff'd*, No. 8:14-BK-5369-RCT, 2019 WL 4644385 (M.D. Fla. Sept. 24, 2019) (quoting *Votzke v. Wells Fargo Bank, N.A.*, No. 8:14–cv–2200–T–27AEP (M.D. Fla. Dec. 16, 2014)).

At present, RBT includes only an intentional tort claim against Atrius Defendants. It arises from Atrius Defendants' role in concealing ongoing infringement through shell entities, covert payments, misleading marketing, and enabling McKnight and Rios's misrepresentations to RBT. (Compl. ¶¶ 56–65, 114–116.) Included are allegations of misconduct rooted in independent legal duties. *See World Re*, 615 So. 2d at 270 (claims based on duties imposed by law do not fall within arbitration clauses). At most, some portion of the claim would remain non-arbitrable even if another is deemed otherwise.

Because the Arbitration Clause is limited to "disputes regarding this Agreement"—language that is as narrow as the clauses in *BREA* and *World Re*—it

cannot be construed to encompass RBT's independent tort claims. *See BREA*, 327 So. 3d at 934–35 (clause covering disputes "under this Agreement" found too narrow to encompass non-contractual usury claim); *World Re*, 615 So. 2d at 269–70 (arbitration clause "arising from the interpretation of the contract" did not reach tort claims). Accordingly, Atrius Defendants cannot compel arbitration of RBT's claim against them for aiding and abetting fraud because it is an intentional tort that falls outside the scope of the Arbitration Clause.

## CONCLUSION

For the reasons stated above, RBT respectfully requests that the Court deny Atrius Defendants' motion to compel arbitration and stay.

Dated: August 8, 2025

Respectfully submitted,

**DHILLON LAW GROUP, INC.**

By: */s/ Josiah Contarino*
    Josiah Contarino (Admitted PHV)
    Jacob William Roth (Bar No. 1036551)
    Anthony J. Fusaro, Jr. (Admitted PHV)
    1601 Forum Place, Suite 403
    West Palm Beach. FL, 33401
    415-433-1700
    jcontarino@dhillonlaw.com
    jroth@dhillonlaw.com
    afusaro@dhillonlaw.com

**WOOD HERRON & EVANS LLP**

By: */s/ Glenn D. Bellamy*
    Glenn D. Bellamy (Admitted PHV)
    600 Vine Street, Suite 2800

Cincinnati. Ohio 45202
gbellamy@whe-law.com

*Attorneys for Plaintiff*
*Rare Breed Triggers, Inc.*

**Certificate of Word Count**

Pursuant to Northern District of Florida Rule 7.1(F), I hereby certify that the foregoing Brief, including body, headings, quotations, and footnotes, and excluding those portions exempt by Local Rule 7.1(F), contains 7085 words as measured by Microsoft Office for Word.

*/s/ Josiah Contarino*
Josiah Contarino

**Certificate of Service**

I HEREBY CERTIFY that on **August 8, 2025**, I filed the foregoing with the Clerk of the Court via CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Josiah Contarino*
Josiah Contarino
