UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

| | |
|---|---|
| RARE BREED TRIGGERS, INC., a Texas corporation,<br><br>*Plaintiff*,<br><br>v.<br><br>BIG DADDY ENTERPRISES, INC., *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-00181-RH-MAF<br><br><br><br><br>Judge Robert L. Hinkle<br>Magistrate Judge Martin A. Fitzpatrick |

**PLAINTIFF'S OPPOSITION TO THE MOTION FOR LEAVE FOR ATTORNEY ADAM V. FLOYD TO BE ADMITTED *PRO HAC VICE***

Plaintiff Rare Breed Triggers, Inc. ("RBT") respectfully opposes the motion for Adam V. Floyd to be admitted *pro hac vice* on behalf of Defendants Atrius Development Group Corp., Malcolm Brown, and Lea Andreoli ("Atrius Defendants"), because Floyd is an essential witness for RBT and his testimony will be sufficiently adverse to Defendants. As recently as 2024, Floyd represented to RBT in a recorded conversation that he was *personally* getting "into the FRT business," possibly with Defendants Rios and McKnight because "they already have a lot of connections in the area" and "it would be easier" for Floyd.

To get around a preliminary injunction from the Eastern District of New York that would prevent Floyd from getting into the FRT business, Floyd proposed to RBT President Lawrence DeMonico that he could purchase a license from RBT

to sell FRTs via payment not to RBT directly but through a charitable contribution to a litigation fund. During his 2024 conversation with DeMonico, Floyd revealed that he did not trust his former client, Defendant McKnight, but that he would consider partnering with McKnight because he was skilled at setting up websites.

On August 8, 2025, counsel for Atrius Defendants sent an email to RBT's counsel asking if RBT objects to Floyd's *pro hac vice* admission. RBT's counsel responded:

> Plaintiff does object to Adam Floyd's pro hac vice admission. We have a recorded meeting where Mr. Floyd is making admissions adverse to Defendants and relevant to the facts of this case. These are recited in the declaration supporting the motion for a TRO/PI, and also referenced in the Complaint. In this regard, we attempted to serve Mr. Floyd with a third-party subpoena. While the process server made four attempts, Mr. Floyd "refused to attend."

On August 9, 2025, counsel for Atrius Defendants filed the motion for leave for attorney Adam V. Floyd to be admitted *pro hac vice*. (ECF No. 71.) This opposition follows.

## RELEVANT STATEMENT OF FACTS

In late 2021 and early 2022, RBT filed two complaints for patent infringement (1:21-cv-00149-RH-HTC and 1:22-cv-61-RH-HTC (the "Related Matters")). (ECF No. 3-5, Declaration of Lawrence DeMonico ("DeMonico Dec.") ¶ 2.) Floyd represented Defendants Big Daddy Enterprises, Inc., Big Daddy Unlimited, Inc., Wide Open Enterprises, LLC, We Got Ammo, Inc., Blackstock,

2

Inc., Anthony McKnight, Sherrie McKnight, Douglas Rios at the time a settlement for both Related Matters was negotiated, which resulted in the Court entering a permanent injunction on October 19, 2022. (*Id.* ¶¶ 3, 98.) As an attorney for one of the parties, Floyd is bound by the injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

On November 27, 2023, Floyd contacted RBT's counsel regarding RBT's willingness to have Defendants Anthony McKnight ("McKnight"), Douglas Rios ("Rios"), and Floyd *personally* obtain FRTs seized by the ATF and "sell them." (*Id.* ¶ 101.) Floyd approached RBT's counsel because any sale of FRTs would depend on a license from RBT.

While aware of the then-active preliminary injunction from the Eastern District of New York that prohibited Plaintiff RBT from selling, or acting in concert to sell, FRTs, Floyd said they "would of course be willing to share the profit" with Plaintiff RBT. (*Id.*) RBT's counsel responded to Floyd that the preliminary injunction prevented RBT from "even consider[ing] or discuss[ing] any type of arrangement like what [Floyd] propose[d]." (*Id.*)

Determined to undertake this scheme, on January 8, 2024, Floyd left RBT President DeMonico a voice mail to meet in person regarding a business proposition. (*Id.* ¶ 98.) Although Floyd did not specify in his voicemail or text messages thereafter the reason for the meeting, Floyd broached the subject quickly

3

when the two men met in person on January 12, 2024, at an Austin, Texas, coffee shop. (*Id.*)

Specifically, Floyd sought to pay RBT for a license to the '223 Patent so Floyd "personally" could "get[] into the FRT business," possibly with Defendants Rios and McKnight because "they already have a lot of connections in the area" and "it would be easier" for Floyd. (*Id.* ¶ 100, Ex. 4 at 8:40–9:32, 11:13–11:53.[1])[2] Floyd suggested the license payment be made through a charitable contribution to a litigation fund to try to get around the E.D.N.Y. injunction that prevented RBT, DeMonico, and others from engaging in any FRT sales. (*Id.* ¶ 100, Ex. 4 at 8:40–9:32.) Floyd also advised that he could issue cease and desist letters vis-à-vis the '223 Patent if RBT was willing to license to him. (*Id.* ¶ 100, Ex. 4 at 26:06–26:24.)

Nevertheless, to try to pressure DeMonico, Floyd claimed that the '223 Patent was not "very strong," and suggested that RBT's patent counsel had not been "forthcoming" on the patent's strength. (*Id.* ¶ 100, Ex. 4 at 11:13–11:53.)

---

[1] The audio recording of this meeting was filed with the Court on July 1, 2025. (*See* ECF No. 7.) Because the docket text says the USB drive storing the audio recording is being stored in the "Clerk's Office shelf in Tallahassee," RBT will endeavor to send another copy of the audio recording to the Gainesville courthouse. RBT will also send a copy of the audio recording to Defendants' counsel.

[2] During the January 12 meeting, Floyd said he wanted a license to sell FRTs for himself. In a later filing submitted to the Texas Bar, Floyd represented that he was seeking a license to sell FRTs for Defendant Rios. (*Id.* ¶ 99.)

4

Floyd revealed that he had been communicating with Defendant Rios in advance of his meeting with DeMonico (*id.* ¶ 100, Ex. 4 at 31:00–31:20), and that Rios is the owner of Defendant Performance Triggers (*id.* ¶ 100, Ex. 4 at 29:11–29:36.) Floyd also informed DeMonico that Defendant McKnight still owed Floyd $150,000 for his work on the Related Matters, that neither Floyd nor Rios trusted McKnight, and that Floyd did not know how Defendant McKnight was still in business. (*Id.* ¶ 100, Ex. 4 at 26:27–27:29; 31:14–55.) Still, Floyd was willing to include McKnight in the FRT venture because Floyd believes McKnight is skilled at setting up websites; but Floyd was clear that Floyd would be "in charge of the money." (*Id.* ¶ 100, Ex. 4 at 31:14–55.) Floyd made clear that his proposition was not a "concept" and that, instead, he was ready to "play ball." (*Id.* ¶ 100, Ex. 4 at 32:03–32:11.)

## ARGUMENT

"Admission *pro hac vice* 'is not a right but a privilege, the granting of which rest[s] in the sound discretion of the presiding judge.'" *United States v. Gutierrez,* No. 94 Cr. 565(LAK), 1994 WL 593773, at *2 (S.D.N.Y. Oct. 28, 1994) (alteration in original) (quoting *Thomas v. Cassidy,* 249 F.2d 91, 92 (4th Cir. 1957)); *see also Leis v. Flynt,* 439 U.S. 438, 441–42 (1979); *In re Rappaport,* 558 F.2d 87, 89 (2d Cir. 1977); *Panzardi–Alvarez v. United States*, 879 F.2d 975 (1st Cir. 1989); *Thoma v. A.H. Robins Co.*, 100 F.R.D. 344, 347–49 (D.N.J. 1983).

Although *pro hac vice* motions are routinely granted, it is not a *pro forma* exercise, and such applications are rejected when appropriate. *Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03-CIV-3120 (KMW) (THK), 2003 WL 22339357, at *3 (S.D.N.Y. Oct. 14, 2003); *Macdraw, Inc. v. The CIT Group Equip. Fin., Inc.,* 994 F. Supp. 447, 455 (S.D.N.Y. 1997) (revoking *pro hac vice* admissions of attorneys who engaged in conduct which was undignified, disrespectful and degrading to the court); *Erbacci,* 923 F. Supp. at 486 (denying *pro hac vice* admission where an attorney twice submitted defective applications, and in doing so engaged in motion practice without being admitted to practice in the court); *Gutierrez,* 1994 WL 593773, at *2-3 (denying *pro hac vice* admission where attorney failed to file motions that were in his client's interest, ignored scheduling orders, and was late for court appearances).

A justified basis for disqualifying an attorney is also sufficient cause to deny that attorney's *pro hac vice* admission. *See Religious Tech. Ctr. v. F.A.C.T.Net, Inc.*, 945 F. Supp. 1470, 1473 (D. Colo. 1996) (noting that opposition to a *pro hac vice* motion "amounts to a motion to disqualify). This makes sense because it would waste judicial resources to grant an attorney's *pro hac vice* application only for that attorney to be disqualified via a later motion.

An attorney is appropriately disqualified if (1) he is a required witness and (2) his testimony is sufficiently adverse to the factual assertions of his client. *See*

6

*Allstate Ins. Co. v. English*, 588 So.2d 294, 295 (Fla. 2d DCA 1991) (stating the attorney must be an essential witness to the proceeding); *AlliedSignal Recovery Trust v. AlliedSignal, Inc.,* 934 So.2d 675, 679 (Fla. 2d DCA 2006) (explaining that an attorney's testimony is grounds for disqualification if it will be "be sufficiently adverse to the factual assertions or account of events offered on behalf of the client").

Here, Floyd is an essential witness for RBT and his testimony will be sufficiently adverse to Defendants. In a recorded conversation in January 2024, Floyd admitted to RBT President DeMonico that he was *personally* getting into the FRT business. Floyd set up a meeting with DeMonico at which Floyd pressured DeMonico to grant Floyd a license to sell FRTs. RBT holds the exclusive license to the '223 patent, and Floyd wanted a license to sell FRTs covered by it.

This meeting with DeMonico was the second time Floyd personally sought a license to sell FRTs. A couple months earlier Floyd asked RBT's counsel about obtaining a license to sell FRTs. RBT's counsel rebuffed the idea, reminding Floyd that a preliminary injunction from the Eastern District of New York prevented RBT from even discussing the issue.

Nevertheless, Floyd reiterated the request in his conversation with DeMonico. Floyd had an idea to circumvent the E.D.N.Y. preliminary injunction: instead of paying RBT directly, he would make a charitable contribution to a legal

7

defense fund.³ During his conversation with DeMonico, Floyd made several admissions that are relevant here:

- He revealed his distrust of Defendant McKnight's credibility. RBT has fraud claims levied against McKnight. Only Floyd can testify to the reasons for his distrust, and it is relevant to whether Atrius Defendants should have placed trust in McKnight in aiding and abetting his fraudulent conduct, as alleged in the Complaint. At a minimum, it is easy to envision a scenario where Atrius Defendants and McKnight become adverse in this litigation and Floyd encounters a conflict.

- He sought a license to the '223 Patent, the validity of which Defendants have questioned in this litigation despite being enjoined from doing so. His request for a license undermines those invalidity claims here, which Atrius Defendants joined in raising.⁴ Only Floyd

---

³ Of course, even if a license was granted to Floyd, he would still be barred by this Court's Permanent Injunction in the Related Matters from making or selling devices that would infringe the '223 Patent. *See* Fed. R. Civ. P. 65(d)(2) (stating that Rule 65 injunctions bind not just the parties but also their "attorneys"). If Floyd devised a way to surreptitiously end-run the E.D.N.Y. injunction, how would he approach this Court to seek relief from *its* Permanent Injunction?

⁴ Because Rule 65 binds Floyd to the Permanent Injunction in the Related Matters, he is barred from "contending in this action or any other proceeding that the claims of the '223 Patent are invalid, unenforceable or not infringed." (Compl., Ex. B at 6 ¶ 4.) Nevertheless, Floyd submitted a declaration in this litigation stating, in his

8

can provide his reasoning for seeking the license.

- He also committed to sending out cease and desist letters regarding the '223 Patent if RBT would license it to him. This similarly undercuts Atrius Defendants' claims of invalidity. Only Floyd can provide his rationale for agreeing to send cease and desist letters if he questions the '223 Patent's strength.

- He admitted that Defendant Rios was the owner of Defendant Performance Triggers. As the record in this litigation has already revealed, Performance Triggers went through great lengths to bury its ownership details.

- He admitted that Defendant McKnight still owed him hundreds of thousands of dollars. This information has bearing on preliminary injunctive relief.

---

"professional opinion, Blakely '723 invalidates the '223 patent." (ECF No. 62-11.) Time will tell whether Floyd put his former clients—including Defendants McKnight and Rios—at risk of another violation of the Settlement Agreement by submitting this declaration on their behalf. (*See* Compl., Ex. A ¶ 2 ("Defendants admit that the Wide Open WOT Trigger and Powered By Graves ALAMO-15 trigger infringe the '223 Patent, affirm the validity and enforceability of the '223 Patent, and agree not to challenge the same in any forum and waive defenses to enforceability against the '223 Patent. Defendants agree to not assist any other individual or entity in challenging the validity, enforceability, or scope of the '223 Patent in any forum."), ¶ 22 ("This Agreement is binding upon, inures to the benefit of, and delegates all duties of the Parties, their officers, agents, directors, affiliates, legal representatives, employees, successors, heirs and assigns.")).

- He showed a willingness on his own behalf and on behalf of McKnight and Rios to circumvent a federal injunction—namely, the preliminary injunction from the Eastern District of New York. The Permanent Injunction issued by this Court has relevance in this matter. Only Floyd can testify about his strategy to avoid the E.D.N.Y. injunction. Atrius Defendants' aiding and abetting fraud concerning the sale of the Atrius FRT would necessarily implicate violations of this Court's Permanent Injunction.

- He expressed his belief that McKnight was skilled at building websites. An essential part of RBT's theory in this case is that McKnight has been covertly operating websites to sell FRTs undetected. RBT believes McKnight assisted or controlled Atrius Defendants' website. Only Floyd can provide why he believes McKnight to be skilled at building and operating websites.

Floyd is a fact witness. Indeed, RBT issued a third-party subpoena to Floyd but despite four attempts by the process server to serve it, Floyd evaded service. If Floyd is admitted as counsel in this matter, obtaining factual information and documents from Floyd will be no easier. And the discovery could very well indicate that Floyd may be more involved in the underlying merits than what we know already, which would be further reason that he would need to testify as a

witness, and could even implicate him as a party.

Floyd's participation in the underlying facts of this matter—including discussions as a business partner with Defendant Rios about their planned FRT business that may or may not have depended on a license from RBT—disqualify Floyd from participating in this matter as counsel for any of Defendants, including Atrius Defendants.

## CONCLUSION

Based on the above, Plaintiff respectfully requests that the Court deny the motion for Adam V. Floyd to be admitted *pro hac vice*.

Dated: August 9, 2025

                                    **DHILLON LAW GROUP INC.**

                                    By: */s/ Josiah Contarino*
                                          Josiah Contarino (admitted PHV)
                                          Jacob William Roth (Bar No. 1036551)
                                          Anthony J. Fusaro, Jr. (admitted (PHV)
                                          Dhillon Law Group, Inc.
                                          1601 Forum Place, Suite 403
                                          West Palm Beach. FL, 33401
                                          415-433-1700
                                          jcontarino@dhillonlaw.com
                                          jroth@dhillonlaw.com
                                          afusaro@dhillonlaw.com

                                    **WOOD HERRON & EVANS LLP**

                                    By: */s/ Glenn D. Bellamy*
                                          Glenn D. Bellamy (admitted PHV)
                                          Wood Herron & Evans LLP
                                          600 Vine Street, Suite 2800

Cincinnati, Ohio 45202
gbellamy@whe-law.com

*Attorneys for Plaintiff*

## LOCAL RULE 7.1(F) CERTIFICATION

Undersigned counsel for Plaintiff RBT certifies that this memorandum complies with Local Rule 7.1(F) because it contains 2480 words, excluding those portions exempted by the rule.

>  */s/ Josiah Contarino*
>  Josiah Contarino

## CERTIFICATE OF SERVICE

I certify that on **August 9, 2025**, I filed the foregoing with the Clerk of the Court via CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

>  */s/ Josiah Contarino*
>  Josiah Contarino

4905-6175-8041, v. 1