# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

|  |  |
|---|---|
| RARE BREED TRIGGERS, INC., a Texas corporation, | |
| *Plaintiff*, | Case No. 1:25-cv-00181-RH-MAF |
| v. | |
| BIG DADDY ENTERPRISES, INC., *et al.*, | |
| *Defendants*. | Judge Robert L. Hinkle<br>Magistrate Judge Martin A. Fitzpatrick |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT EMERGENCY MOTION TO QUASH 31 THIRD-PARTY SUBPOENAS AND FOR SANCTIONS

Defendants seek the extraordinary relief of sanctioning Plaintiff Rare Breed Triggers, Inc.'s ("RBT") counsel for complying with this Court's Scheduling Order and pursuing discovery authorized by that Order. On July 10, 2025, the Court held a scheduling conference and authorized limited early discovery in connection with RBT's anticipated motion for a preliminary injunction. (*See* ECF No. 29.) In accordance with that directive, RBT issued targeted third-party subpoenas requesting documents relevant to Defendants' ongoing manufacture, marketing, and sale of Forced Reset Triggers ("FRTs") in violation of a Settlement Agreement and Permanent Injunction. The subpoenas were served on or after July 29, 2025.

On July 28, 2025, RBT sent copies of the subpoenas to counsel for the only Defendants who had appeared in the case—Atrius Triggers, Malcolm Brown, and Lea Andreoli. The following day, RBT mailed copies of the subpoenas via overnight mail to other Defendants, who had not yet entered an appearance and included entities that had either been evading service or had failed to appear at the Court's July 10, 2025, scheduling conference, despite being ordered to do so.[1]

Defendants now move to quash the subpoenas and to sanction RBT's counsel. Their arguments fail on both procedural and substantive grounds. First, Defendants lack standing to challenge subpoenas issued to third parties, which do not implicate any personal right or privilege of Defendants. Second, Defendants cannot move to quash a subpoena to a non-party based on relevancy, and even if they could, the subpoenas seek documents relevant to RBT's claims for breach of contract, fraud, and aiding and abetting fraud. Third, RBT provided proper notice of the subpoenas under Rule 45(a)(4), including timely service on counsel for appearing parties and simultaneous service on non-appearing Defendants. And

---

[1] Defendants continue to argue in their motion that they were denied due process by claiming that the Court entered the scheduling order before Defendants were served, despite being corrected by Plaintiff (ECF No. 51) back on July 26, 2025, that principal Defendants *had been served* before the scheduling conference, and also served with advanced notice of the scheduling hearing during which the Court entered the scheduling order. The Court later disabused Defendants of their "frivolous[] assert[ion] [that] the schedule was improperly set without their participation" when it denied Defendants' motion to set aside the scheduling order. (ECF No. 59.)

fourth, the subpoenas do not require in-person appearances and permit compliance by email or mail, rendering Rule 45(c)'s 100-mile limitation inapplicable.

Despite these obvious infirmities in their arguments, Defendants nevertheless seek sanctions under Rule 45(d)(1), including revoking RBT's counsel's "privileges of appearing *pro hac vice* before this Court." As detailed below, RBT respectfully requests that the Court deny Defendants' motion in its entirety.

## RELEVANT FACTUAL BACKGROUND

Plaintiff Rare Breed Triggers Inc. ("RBT") commenced this action to enforce its Settlement Agreement with Defendants Big Daddy Enterprises, Inc., Big Daddy Unlimited, Inc., Wide Open Enterprises, We Got Ammo, Blackstock, Anthony McKnight, Sherrie McKnight, and Douglas Rios (collectively, the "Settling Defendants"); to hold the Settling Defendants liable for fraud; and to hold Defendants Performance Triggers Inc., Atrius Development Group Corp. ("Atrius"), Delta 7 LLC, C&C Holdings Group LLC, Christopher Rios, Malcolm Brown, Lea Andreoli, and Andrew Myers (collectively, the "Non-Settling Defendants") liable for aiding and abetting the fraud of the Settling Defendants. (ECF No. 1, Complaint ("Compl."), ¶¶ 1-15.)[2]

---

[2] Defendants—many of which admitted to infringing RBT's patent rights in the earlier infringement matters before this Court—reference an Eastern District of New York case that alleged RBT's sale of FRTs was fraudulent because RBT did

In short, RBT alleges that, despite agreeing to the Settlement Agreement's requirement that they cease the production and sale of Forced Reset Triggers ("FRTs")—including those that infringed on RBT's patent—the Settling Defendants continued to manufacture, market, and sell FRTs, and that the Non-Settling Defendants knowingly facilitated or concealed those efforts. (*Id.*)

Pursuant to the Court's scheduling order authorizing early discovery in connection with the preliminary injunction hearing (*see* ECF No. 29, Initial Scheduling Order), RBT prepared targeted subpoenas requesting documents from individuals and entities believed to have knowledge relating to Defendants' continued manufacture, marketing, and sale of FRTs.

Some subpoenas were directed to individuals and entities believed to have operated or controlled online domains that advertised or sold FRTs. (*See* Declaration of Josiah Contarino ("Contarino Decl.") ¶ 6, Exs. B, C.) Others were addressed to third parties RBT believes were involved in the production,

---

not speculate on how the ATF might view FRTs at some unknown future date. (ECF No. 57 at 5 n.2.) As Defendants continually do in this matter, they omit that the Eastern District of New York case was *dismissed with prejudice*. It should also be noted that one federal district court judge issued a final order last summer that equated the ATF's weaponization of the government against RBT regarding FRTs to a "tyrannical executive," lamenting that it was "emblematic of a devastating problem that increasingly rears its head in federal courts: rampant evasion of the democratic process." *Nat'l Ass'n for Gun Rts., Inc. v. Garland*, 741 F. Supp. 3d 568, 617 (N.D. Tex. 2024). This tends to undercut Defendants' characterization of RBT and its officers. (*See* ECF No. 57 at 5 n.2.)

marketing, sale, or purchase of FRTs in violation of the Settlement Agreement. (*See id.*, Exs. D–J.) And two subpoenas were directed to attorneys based on their direct involvement in Defendants' FRT-related business activity—conduct falling outside the scope of their legal representation. (*See id.*, Exs. K, L.) One was issued to Adam Floyd, former counsel for the Settling Defendants, based on his personal participation in a proposed business venture involving the sale of FRTs with Defendants. (*See* Compl. ¶¶ 79, 96-101; Contarino Decl. ¶ 6, Ex. L.) The other was directed to Steve Kalishman, who served as the registered agent for Defendant Performance Triggers, an entity whose publicly available corporate filings appear intentionally designed to conceal corporate ownership and control. (*See* Compl. ¶¶ 66-71; Contarino Decl. ¶ 6, Ex. K.)

In the instruction section of each subpoena, RBT directed the recipients to identify and withhold any documents believed to be privileged and produce a corresponding privilege log. (*See, e.g.*, Contarino Decl. ¶ 6, Ex. F, Omar Zumot Subpoena, at pp. 6-7, "Instructions" ¶¶ 9-11.) Additionally, each subpoena includes the text of Rule 45(d)(2)(A), which explains that "[a] person commanded to produce documents [or] electronically stored information . . . need not appear in person at the place of production . . . unless also commanded to appear for a deposition, hearing, or trial." (*See id.*, Omar Zumot Subpoena Cover Sheet, at p. 3.) None of the subpoenas command the attendance of the recipient. (*See id.*)

On July 28, 2025, RBT served notice and copies of the subpoenas via email on counsel for the only Defendants who had appeared in the case—Atrius Triggers, Malcolm Brown, and Lea Andreoli. (*See* Contarino Decl. ¶ 3, Ex. A, Email from Josiah Contarino to David Reiner (July 28, 2025).) The following day, RBT mailed via overnight delivery notice and copies of the subpoenas to other Defendants who had not yet entered an appearance and remained active entities, the same day the subpoenas were being served. (*See id.* ¶¶ 4-5.)

On August 5, 2025, Defendants filed a motion to quash RBT's subpoenas. (*See* ECF No. 57, Defendants' Joint Emergency Motion to Quash 31 Third-Party Subpoenas, Motion for Sanctions and Memorandum in Support ("Defs. Br.").) Their motion asserts that the subpoenas should be quashed because: (1) they seek irrelevant information, (2) RBT failed to provide proper notice, and (3) the subpoenas violated Rule 45's 100-mile limitation.[3] This opposition follows.

---

[3] Defendants also include in their motion a summary of what they believe is the history of FRTs. (ECF No. 57 at 4–5.) In that summary, Defendants reference a patent that predates the '223 patent—the patent central to the earlier infringement cases between many of the parties here and before this Court. Defendants then challenge the validity of the '223 patent. *Id.* at 5 (asserting that "Defendants were going to use the '723 Patent to invalidate the '223 Patent"); *accord id.* at 6 (contending that the "'233 Patent was likely not valid or infringed"); *id.* at 12 (referencing a manufacturer of gun parts that RBT sued "on its invalid '223 patent"). The Consent Judgment and Permanent Injunction in 1:21-cv-00149-RH-HTC bars Defendants "from contending in [that] action or any other proceeding that the claims of the '223 Patent are invalid, unenforceable or not infringed." (Compl., Ex. B at 6, ¶ 4.) Defendants, and the attorneys who represented them at

**ARGUMENT**

I.    **Defendants' Motion should be denied because Defendants lack standing to quash the subpoenas; Defendants cannot challenge the subpoenas on relevancy grounds and, even if they could, the subpoenas are relevant; RBT provided Defendants with proper notice; and the 100-mile limitation does not apply to subpoenas seeking only documents and ESI.**

Federal Rule of Civil Procedure ("FRCP") 45 governs the issuance, service, and enforcement of subpoenas in federal litigation. A party may move to quash a subpoena under Rule 45(d)(3) only in limited circumstances—for example, where the subpoena requires disclosure of privileged information, imposes an undue burden, or violates the rule's geographical limits. Fed. R. Civ. P. 45(d)(3).

Importantly, parties lack standing to challenge subpoenas directed to non-parties unless they can demonstrate that the subpoenas implicate a personal right or privilege. *See Vivian v. Beahm*, No. 2:11-CV-150-FTM-SPC, 2012 WL 2602661, at *1 (M.D. Fla. July 5, 2012); *Bender v. Tropic Star Seafood, Inc.*, No. 4:07CV438-SPM/WCS, 2008 WL 2824450, at *3 (N.D. Fla. July 21, 2008). Even if a party can establish standing, relevance alone is not a proper basis to move to quash a subpoena to a non-party. *See Bender*, 2008 WL 2824450, at *3.

---

the time of the Permanent Injunction and thus are bound by it under Rule 65, would do well to refrain from challenging the '223 Patent's validity here.

Additionally, Rule 45's 100-mile geographic limit does not apply to subpoenas that allow compliance via email or mail rather than requiring personal appearance. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-MD-2885, 2021 WL 6128233, at *2 (N.D. Fla. Dec. 28, 2021) ("*In re 3M Combat Arms Earplug*").

Applying these standards, Defendants' motion to quash is procedurally improper and substantively meritless. Defendants lack standing to challenge subpoenas served on third parties because the subpoenas do not seek materials implicating Defendants' own rights or privileges. *See Vivian*, 2012 WL 2602661, at *1; *Bender*, 2008 WL 2824450, at *3. Defendants' arguments regarding relevance are similarly misplaced, as Rule 45 does not permit a motion to quash a subpoena directed to a non-party on that basis. *See Bender*, 2008 WL 2824450, at *3. And, in any event, the subpoenas at issue here seek highly relevant, nonprivileged information that goes directly to RBT's claims for breach of contract, fraud, and aiding and abetting fraud.

RBT has also satisfied its notice obligations under Rule 45(a)(4) by timely serving notice on appearing Defendants' counsel the day before it served the subpoenas, and mailing notice to other Defendants who had not appeared in the action and remained active entities simultaneous with service of the subpoenas. *See* Fed. R. Civ. P. 5(b)(1); Fed. R. Civ. P. 45(a)(4). Moreover, in addition to RBT's

compliance with Rule 45 and the case law interpreting, this entire exercise—Defendants' filing the motion to quash, this opposition, and the court hearing the motion before the return date of the subpoenas—is proof positive that Defendants received notice that satisfies the intent of Rule 45.

Finally, because the subpoenas permit compliance by email or postal mail, and do not require the appearance of any non-parties, the 100-mile limitation in Rule 45(c) is inapplicable. For each of these reasons, Defendants' motion to quash RBT's subpoenas should be denied.

> **A.    Defendants lack standing to quash the subpoenas because the subpoenas are not directed to them and the documents requested do not concern their personal rights or privileges.**

It is well established that "[i]n the Eleventh Circuit, the general rule is that a party lacks standing to challenge subpoenas served on another, unless that party alleges a personal right or privilege with respect to the materials subpoenaed." *Vivian*, 2012 WL 2602661, at *1 (internal quotations and citations omitted); *see also Bender*, 2008 WL 2824450, at *3.

Here, Defendants lack standing to quash the subpoenas because the subpoenas were not directed to them and the documents requested by the subpoenas do not implicate their personal rights or privileges. *See Vivian*, 2012 WL 2602661, at *1; *Bender*, 2008 WL 2824450, at *3. Indeed, much of Defendants' motion argues that the subpoenas are "irrelevant" precisely because

they do not request information regarding Defendants. (*See* Defs. Br. at 9-13.)

While RBT strongly disputes this characterization, Defendants' position

underscores that the subpoenaed documents do not implicate a personal right or

privilege held by Defendants. *See Vivian*, 2012 WL 2602661, at *1; *Bender*, 2008

WL 2824450, at *3. Instead, many of the subpoenas seek information about

Defendants' potential relationship with third parties who are known to have sold

FRTs. Information regarding Settling Defendants covert work with these third

parties—similar to their work with the Non-Settling Defendants—will go toward

proving Settling Defendants' breach of their promise not to "produce or sell Forced

Rest Triggers or parts that can be used as part of Forced Reset Triggers." (Compl.,

Ex. A ¶ 11).

Further, notwithstanding Defendants' conclusory assertion to the contrary,

the subpoenas directed to attorneys Adam Floyd and Steve Kalishman should not

be quashed because they request documents that do not implicate Defendants'

rights or privileges. (*See* Defs. Br. at 13; *see also* Contarino Decl. ¶ 6, Exs. K, L.)

Defendants' motion fails to identify any specific requests in the Floyd or

Kalishman subpoenas that seek privileged documents and could plausibly support

their standing to move to quash. (*See id.*) Even if they had made such an argument,

the Floyd and Kalishman subpoenas clearly target non-privileged documents.

For Floyd, the subpoena requests factual documents and communications related to his personal participation in proposed licensing arrangements involving Forced Reset Triggers, his January 12, 2024, meeting with RBT's representative, and his direct knowledge of the ownership and operations of Performance Triggers and related entities. (*See* Compl. ¶¶ 79, 96-101; Contarino Decl. ¶ 6, Ex. L.) These requests focus on Floyd's conduct as a business participant and fact witness—not as legal counsel—and thus fall outside the scope of both the attorney-client privilege and the work product doctrine. (*See id.*)

For Kalishman, the subpoena seeks documents concerning his role as registered agent for Performance Triggers and related corporate activities, including filings with the Florida Department of State, knowledge of business relationships and domain registration, and communications with key individuals. (*See* Compl. ¶¶ 66-71; Contarino Decl. ¶ 6, Ex. K.) These requests concern corporate administration, not legal representation, and do not involve privileged legal advice or litigation strategy. (*See id.*)

Further, both subpoenas expressly state that the recipient may withhold any document they believe to be privileged, provided that such documents are identified on a privilege log. (*See* Contarino Decl. ¶ 6, Exs. K, L, "Instructions" ¶¶ 9-11.) If any request could arguably reach privileged material, it is the subpoenaed party—not Defendants—who must raise that objection and assert privilege on a

document-by-document basis. The possibility that a request might incidentally encompass privileged content does not invalidate the subpoena or confer standing on Defendants to quash it. Each request is specifically directed at factual, non-privileged information, and any incidental overlap with privileged material is manageable through the standard logging process. (*See id.*) Defendants' attempt to quash the subpoenas based on potential privilege concerns—without demonstrating that the requests actually seek privileged material or that compliance would impair their ability to assert privilege—falls well short of the showing required to justify standing.[4]

Because Defendants cannot show that the subpoenas seek documents implicating a personal right or privilege of their own, and because any potential privilege concerns are appropriately addressed by the subpoena recipients themselves through standard privilege logging procedures, Defendants' motion to quash is procedurally improper and should be denied on standing grounds alone.

---

[4] While the issue is premature at this stage, it bears noting that many of the potentially privileged communications identified in the subpoenas may ultimately fall within the crime-fraud exception. *See Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334–35 (11th Cir. 2018). RBT has alleged that certain Defendants violated a Permanent Injunction and Settlement Agreement through ongoing fraudulent conduct, and the materials sought from Floyd and Kalishman may bear directly on whether legal services were used to facilitate that misconduct. But even setting that aside, Defendants have failed to show that the subpoenas implicate any privilege in the first place—and thus have no standing to quash them.

**B.    Defendants cannot challenge the subpoenas on the grounds that they are not relevant.**

FRCP 45(d)(3) provides that a district court must quash or modify a subpoena that fails to allow reasonable time to comply, requires compliance beyond the geographical limits of FRCP 45(c), demands disclosure of privileged or protected information without an applicable exception or waiver, or imposes an undue burden. Fed. R. Civ. P. 45(d)(3). It also states that a district court may quash or modify a subpoena to protect a person subject to or affected by it, including where the subpoena seeks disclosure of trade secrets, confidential research, development, or commercial information, or an unretained expert's opinion unrelated to specific occurrences in dispute and not requested by a party. *See id.*

But FRCP 45(d)(3) *does not* permit a party to move to quash a subpoena issued to a non-party solely on the ground that it seeks irrelevant information. *See Bender*, 2008 WL 2824450, at *2–3. The *Bender* court explained that, in this context, "relevance has nothing to do with the privilege or privacy interests of a party." *Id.*

Instead, the proper remedy for a party in this situation is to move for a protective order under FRCP 26(c) on the grounds that relief is necessary to protect it from "annoyance, embarrassment, oppression, or undue burden or expense." *See*

13

Fed. R. Civ. P. 26(c); *Bender*, 2008 WL 2824450, at *3.[5] But even under Rule

26(c), the mere fact that a subpoena seeks irrelevant documents from a non-party is

insufficient to justify relief. *See Bender*, 2008 WL 2824450, at *3 ("A party is not

subjected to 'annoyance, embarrassment, oppression or undue burden or expense'

when the opposing party uses a Rule 45 subpoena to gather irrelevant documents

from a non-party"). Thus, neither Rule 45(d)(3) nor Rule 26(c) permit a party to

challenge a subpoena to a non-party solely on the ground that it seeks irrelevant

information.

Accordingly, even if Defendants had standing to quash the subpoenas—

which they do not—they could not do so on the grounds that the subpoenas seek

irrelevant documents. *See* Fed. R. Civ. P. 45(d)(3); *Bender*, 2008 WL 2824450, at

*3 (explaining that the "relevance [of document requests to a non-party] has

nothing to do with the privilege or privacy interests of a party"). And more to the

heart of the issue, the subpoenas *do* seek relevant information, as explained next.

### C. Even if Defendants could challenge relevancy, the subpoenas seek documents that are relevant to RBT's claims.

"'The scope of discovery through a subpoena is the same as that applicable

to Rule 34 and the other discovery rules, including Rule 26.'" *Fla. State Conf. of*

---

[5] Because Defendants cannot show that the third-party subpoenas were served to
annoy, embarrass, oppress, or unduly burden Defendants, Defendants' request for a
protective order will also fail.

*Branches and Youth Units of NAACP v. Lee*, 568 F. Supp. 3d 1301, 1304 (S.D. Fla. 2021) (quoting Fed. R. Civ. P. 45 Advisory Committee Note) ("*Lee*"). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Setting aside the threshold issues addressed above—namely, that Defendants' lack of standing to quash the subpoenas and that they are unable to do so on relevancy grounds—RBT's subpoenas seek documents that are plainly relevant to its claims in this litigation. The subpoenas target factual material that goes to the essence of RBT's allegations: specifically, whether Defendants and their associates continued to manufacture, market, or sell FRTs in violation of the Settlement Agreement and Permanent Injunction.

Defendants write that this is "a breach of contract case related to a Settlement Agreement, and does not contain any claims of patent infringement." ECF No. 57 at 2. But of course infringement of RBT's FRT-related patent rights by persons or entities working with Settling Defendants would necessary mean— or at least *be relevant to*—breach of Settling Defendants' promise "to no longer produce or sell Forced Reset Triggers or parts that can be used as part of Forced Reset Triggers," where Forced Reset Triggers were defined as "any fire control group where movement of the action causes the trigger member to be forced to the

fully reset position, including those described as 'hard reset' or 'positive displacement.'" (Compl., Ex. A ¶¶ 2, 11.) This is hardly "gamesmanship" or "blatant misuse of judicial process," as Defendants protest. Instead, it's ordinary and targeted discovery.

First, the subpoenas directed to Domains by Proxy and Tucows Inc.—entities that have registered, hosted, redirected, or otherwise controlled websites used by or believed to have been used by Defendant Myers to advertise or sell FRTs—are directly relevant. (*See* Contarino Decl. ¶ 6, Exs. B, C.) These subpoenas seek documents showing the identity of the individuals behind the online storefronts RBT alleges were used by Defendants to continue selling FRTs after the injunction. (*See id.*) Such materials are highly probative of RBT's claims for breach of contract, fraud, and aiding and abetting fraud. (*See* Compl. ¶¶ 2, 4-5, 8, 10-11, 45(c), 48, 51, 55, 63-64, 72-74, 78, 84-95, 99, 105-107, 117, 121-122, 126, 128, 134, 140-144, 147, 153-161, 164.)

Next, the subpoenas to Mid-Tier Defense, Got Your 6 Tactical, Omar Zumot, David Gormley, Madison Crawford, Michael Goldberg, and Rene Neubacher seek documents concerning the manufacture, sale, and marketing of FRTs. (*See* Contarino Decl. ¶ 6, Exs. D-J.) These requests seek information central to RBT's allegations that these individuals and entities helped Defendants continue their FRT business post-settlement, in violation of the injunction and Settlement

Agreement. (*See id.*) The documents sought will support RBT's claims that these third parties acted in concert with Defendants to conceal continued sales and circumvent the terms of the Settlement Agreement. (*See* Compl. ¶¶ 2, 4, 8, 50-53, 56-57, 66, 80, 89, 103, 108, 110, 113, 116, 128, 134, 143.)

Indeed, Defendants either did not review or ignore the allegations of the Complaint. Defendants claim that the subpoena directed to Mid-Tier Defense seeks irrelevant information because it seeks information concerning the Super Safety AR-15-D2. (ECF No. 57 at 12.) Yet the Complaint references verbatim the "Super Safety AR-15 Trigger" (Compl. ¶ 7), and the declaration supporting the TRO even includes a photo of the Super Safety AR-15 on mid-tierdefense.com, which was *linked* to Defendant Myers' BearArmsOutfitters.com website (ECF No. 3-5, Declaration of Lawrence DeMonico ("DeMonico Dec.") ¶ 94.)

The declaration notes extensively that Omar Zumot provided many of the text messages that form the basis of RBT's claims. (DeMonico Dec. ¶¶ 22, 24, 25, 26, 58, 59, 84.) Michael Goldberg is alleged to have been the intermediary that sold FRTs for cash in parking lots. (*Id.* ¶¶ 51, 56, 61.) And Rene Neubacher was working with Defendants to develop an FRT at the same time as, or very close to, when Defendants were preliminarily enjoined from doing so. (*Id.* ¶ 22.)

And Defendants' complaint about the term "FRT" being irrelevant because "FRT's [sic] have been around long before RB[T]" (ECF No. 57 at 12) is

outlandish given that the subpoenas define FRTs and closely tie that definition to how FRTs are defined in the Settlement Agreement.

Another oddity in Defendants' motion is the continued refrain that RBT is seeking evidence for its "other patent litigations." (*E.g.*, *id.* at 14.) Of course, RBT can issue subpoenas in those other patent litigations; it need not do it here. Instead, the subpoenas issued in this case seek information that will support RBT's claims that these third parties acted in concert with Defendants to conceal continued sales and circumvent the terms of the Settlement Agreement.

Finally, the subpoenas to Adam Floyd and Steve Kalishman likewise seek documents relevant to RBT's core claims. (*See* Contarino Decl. ¶ 6, Exs. K, L.) Floyd is alleged to have personally participated in business discussions regarding the continued sale of FRTs, including a proposed licensing venture on behalf of himself, personally, and Defendant Douglas Rios. (*See* Compl. ¶¶ 96–101.) Indeed, Floyd set up a meeting with RBT President DeMonico after being rejected by RBT's counsel who told Floyd that, due to the EDNY preliminary injunction, RBT could not "even consider or discuss any type of arrangement like what you propose." (ECF No. 3-5, DeMonico Dec. ¶ 101.)[6]

---

[6] *See also id.* ("The January 12, 2024, conversation [set up by Floyd with DeMonico] would have been a few months after Performance Triggers started selling Atrius Select Fire FRT, and a few months before Bear Arms Outfitters started selling the 3-position WOT. The January 2024 communications came after Floyd had emailed counsel, Glenn Bellamy, in November 2023 looking to take the

Kalishman served as the registered agent for Performance Triggers and is believed to have facilitated corporate filings and transactions intended to obscure the ownership and operation of entities continuing to sell FRTs in violation of the Settlement Agreement. (*See id.* ¶¶ 66–71.) Both subpoenas target factual information—not legal advice—regarding these individuals' roles in furthering or concealing Defendants' ongoing FRT business, and are thus squarely relevant to RBT's claims for breach of contract, fraud, and aiding and abetting fraud. (*See* Contarino Decl. ¶ 6, Exs. K, L.)

In short, the subpoenas seek nonprivileged documents that are directly relevant to RBT's claims. Defendants' suggestion that RBT is seeking discovery for the purpose of bringing future patent infringement suits is nothing more than unsupported conjecture. (*See* Defs. Br. at 9-10.) These subpoenas fall well within the scope of permissible discovery under Rule 26(b)(1) and Rule 45.

Accordingly, even if Defendants had standing to quash the subpoenas (which they do not), and even if they were permitted to challenge them on

---

"temperature on Doug [Rios], Tony [McKnight], and [Floyd] [him]self obtaining" FRTs seized by the ATF and "selling them." Floyd implicated the preliminary injunction from the Eastern District of New York when highlighting that "Rare Breed and its officers" would not be allowed to sell those FRTs because of the EDNY ruling. Floyd further stated that the parties would of course be willing to share the profits with RBT. Plaintiff's counsel responded that, due to the EDNY preliminary injunction, Plaintiff could not "even consider or discuss any type of arrangement like what you propose.").

relevance grounds (which they are not), their motion would still fail because the

subpoenas seek plainly relevant documents, impose no undue burden on

Defendants, and do not justify relief under Rule 26(c).

> **D.    RBT provided Defendants with proper notice of the subpoenas by emailing counsel for those Defendants who had appeared the day before service, and mailing notice to other non-appearing Defendants.**

FRCP 45(a)(4) requires that each party be served with prior notice and a

copy of any subpoena that requests the production of documents or electronically

stored information ("ESI"). *See* Fed. R. Civ. P. 45(a)(4).

For parties who have appeared, this notice may be served on their counsel

pursuant to Rule 5(b)(1), including by email where counsel has consented to

electronic service. *See* Fed. R. Civ. P. 5(b)(1); *see also Bradley v. Lorillard

Tobacco Corp.*, No. 8:13-CV-227-T-30AEP, 2014 WL 12628519, at *3 (M.D. Fla.

June 25, 2014).

For parties who have not yet appeared, courts have held that notice of a

subpoena may be served directly by mail, and that the "prior notice" requirement

under Rule 45(a)(4) is satisfied when notice is served *simultaneous* with service of

the subpoena. *See Rainey v. Taylor*, No. 18-24802-MC, 2019 WL 1922000, at *2

(S.D. Fla. Apr. 30, 2019); *TracFone Wireless, Inc. v. SCS Supply Chain LLC*, 330

F.R.D. 613, 616 (S.D. Fla. 2019) (holding that a subpoena may be served via

FedEx because it is "reasonably calculated to ensure receipt of the subpoena by the

witness"); *Fla. Media, Inc. v. World Publications, LLC*, 236 F.R.D. 693, 694-95

(M.D. Fla. 2006) (holding that service of notice simultaneous with service of the

subpoena ensures the party receives notice "well in advance of the production

date") (quoting *Butler v. Biocore Med. Techs., Inc.*, 348 F.3d 1163, 1173 (10th Cir.

2003)).

Here, RBT satisfied the notice requirement of Rule 45(a)(4). On July 28,

2025, RBT served counsel for the Defendants who had appeared—Atrius Triggers,

Malcolm Brown, and Lea Andreoli—with notice of and copies of the subpoenas

via email, consistent with Rule 5(b)(1). *See Bradley*, 2014 WL 12628519, at *3;

(*see* Contarino Decl. ¶ 3). For other Defendants who had not yet entered an

appearance and remained active entities, RBT mailed notice and copies of the

subpoenas on July 29, 2025, simultaneous with service of the subpoenas

themselves, via FedEx Overnight, ensuring these non-appearing or evasive

Defendants had notice "well in advance of the production date." (*See* Contarino

Decl. ¶¶ 4-5.)

Accordingly, RBT properly served notice of the subpoenas on Atrius

Triggers, Brown, and Andreoli by notifying their counsel the day before service.

*See Bradley*, 2014 WL 12628519, at *3; (*see* Contarino Decl. ¶ 3). It likewise

complied with Rule 45(a)(4) as to non-appearing Defendants by mailing notice

simultaneous with service of the subpoenas. *See Rainey*, 2019 WL 1922000, at *2;

*TracFone Wireless*, 330 F.R.D. at 616; *Fla. Media*, 236 F.R.D. at 694-95 (holding that service of notice simultaneous with service of the subpoena ensures the party receives notice "well in advance of the production date") (quoting *Butler*, 348 F.3d at 1173); (Contarino Decl. ¶¶ 4-5).

Because RBT provided timely and proper notice to all Defendants—whether through their counsel or via simultaneous service by overnight mail—there is no basis for Defendants to challenge the subpoenas under Rule 45(a)(4). Moreover, in addition to RBT's compliance with Rule 45 and the case law interpreting, this entire exercise—Defendants' filing the motion to quash, this opposition, and the court hearing the motion before the return date of the subpoenas—is proof positive that Defendants received notice that satisfies the intent of Rule 45.

### E.  The 100-mile limitation in FRCP 45(c)(2)(A) does not apply here because the subpoenas permit compliance by email or mail.

As courts have recognized, a subpoena that requests documents and permits compliance by email or mail does not violate FRCP 45(c)(1)(A)'s 100-mile geographical restriction, which applies to in-person appearances. *See In re 3M Combat Arms Earplug*, 2021 WL 6128233, at *2; *see also Trahan v. Sandoz Inc.*, No. 3:13-CV-350-J-34MCR, 2014 WL 12628614, at *3 (M.D. Fla. July 23, 2014) (refusing to quash a subpoena on the grounds that it violated the 100-mile geographical restriction because the subpoenaed non-party was not required to

appear); *Trigeant Ltd. v. Petroleos De Venezuela, S.A.*, No. 08-80584-CIV, 2009 WL 10668731, at *3-4 (S.D. Fla. May 5, 2009) (same).

Indeed, FRCP 45(d)(2)(A) makes clear that a person commanded to produce documents or electronically stored information "need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial." Fed. R. Civ. P. 45(d)(2)(A). Thus, when a subpoena allows production by remote means, such as email or mail, the geographic limits of Rule 45(c) are not implicated. *See In re 3M Combat Arms Earplug*, 2021 WL 6128233, at *2; *Trahan*, 2014 WL 12628614, at *3; *Trigeant*, 2009 WL 10668731, at *3-4.

Here, none of RBT's subpoenas require in-person appearance. (*See, e.g.*, Contarino Decl. ¶ 6, Ex. F, Omar Zumot Subpoena.) Each subpoena permits compliance by producing documents or electronically stored information via email or mail. (*See id.*) Therefore, Defendants' reliance on Rule 45(c)(2)(A)'s 100-mile limitation is misplaced. (*See* Defs. Br. at 8-9.) That provision applies only when a subpoena compels a non-party's physical presence at a deposition, hearing, or trial. *See In re 3M Combat Arms Earplug*, 2021 WL 6128233, at *2; *Trahan*, 2014 WL 12628614, at *3; *Trigeant*, 2009 WL 10668731, at *3-4. Because RBT's

subpoenas allow remote production, Rule 45(c)'s geographic restriction does not apply.[7]

## II.  Defendants' Request for Sanctions Against RBT's Counsel Should be Denied.

FRCP 45(d)(1) provides that the court may issue sanctions where a party or attorney fails to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

Given that Defendants lack standing to quash the subpoenas and fail to raise a single valid reason for doing so, it follows that their request for sanctions is baseless and should be denied. (*See* Defs. Br. at 13-14.)

## CONCLUSION

For the reasons stated above, RBT respectfully requests that the Court deny Defendants' motion to quash the subpoenas and for sanction in full.

---

[7] Defendants label this motion as one to quash and sanction, but in their prayer for relief they also request a stay. (ECF No. 57 at 14.) Of course, Defendants failed to include any standard required for a stay or otherwise argue that a stay is appropriate. Defendants' request for a stay should therefore be denied out of hand. Nevertheless, if the Court is inclined to consider a stay, RBT addresses the argument in its opposition to Atrius Defendants' motion for a protective order. (*See* ECF No. 77.)

Dated: August 11, 2025    Respectfully submitted,

          **DHILLON LAW GROUP, INC.**

          By: *<u>/s/ Josiah Contarino</u>*
             Josiah Contarino (Admitted PHV)
             Jacob William Roth (Bar No. 1036551)
             Anthony J. Fusaro, Jr. (Admitted PHV)
             1601 Forum Place, Suite 403
             West Palm Beach. FL, 33401
             415-433-1700
             jcontarino@dhillonlaw.com
             jroth@dhillonlaw.com
             afusaro@dhillonlaw.com

             Glenn D. Bellamy
             **WOOD HERRON & EVANS LLP**
             600 Vine Street, Suite 2800
             Cincinnati. Ohio 45202
             gbellamy@whe-law.com

             *Attorneys for Plaintiff*
             *Rare Breed Triggers, Inc.*

## Certificate of Word Count

Pursuant to Northern District of Florida Rule 7.1(F), I hereby certify that the foregoing Brief, including body, headings, quotations, and footnotes, and excluding those portions exempt by Local Rule 7.1(F), contains 5631 words as measured by Microsoft Office for Word.

<i>/s/ Josiah Contarino</i><br>Josiah Contarino

## Certificate of Service

I HEREBY CERTIFY that on **August 11, 2025**, I filed the foregoing with the Clerk of the Court via CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<i>/s/ Josiah Contarino</i><br>Josiah Contarino

4916-1217-4171, v. 4