## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

RARE BREED TRIGGERS, INC.,

      Plaintiff,

v.                              CASE NO. 1:25cv181-RH-MAF

BIG DADDY ENTERPRISES, INC. et al.,

      Defendants.

_____/


## <u>ORDER STAYING PROCEEDINGS</u>


This is the next chapter in a long-running dispute about forced reset triggers—devices that allow ordinary guns to fire about as rapidly as machineguns. The legality of the devices is unsettled but is not at issue here. Instead, the plaintiff—the holder of an exclusive license to a patent for such a device—asserts breach-of-contract and fraud claims against others in the industry. The defendants have moved to compel arbitration of those claims.

The motion turns on the proper construction of three documents. The first is a settlement agreement entered into several years ago resolving two patent infringement actions in this court—an agreement that includes an arbitration clause. The second and third are consent injunctions entered contemporaneously

with the settlement agreement—consent injunctions that do not mention arbitration but instead reserve exclusive jurisdiction in this court "for the purpose of compliance with" the injunctions.

This order concludes these and other contradictory provisions in the documents leave unclear the intended scope of the arbitration clause. A party can be compelled to arbitrate only the claims the party has agreed to arbitrate—only claims within the scope of an arbitration agreement. But when the agreement is unclear on this—when the agreement could as faithfully be construed to apply or not to apply to a given claim—the tiebreaker is the principle favoring arbitration. This order concludes the claims in this action must be arbitrated and thus stays further proceedings here. The order withholds issuance of an order compelling arbitration pending resolution of a separate jurisdictional issue.

## I. The prior actions

The plaintiff Rare Breed Triggers, Inc. ("Rare Breed") alleges it holds an exclusive license to U.S. Patent No. 10,514,223 ("the '223 patent"). In a prior action in this court, Case No. 1:21-cv-149, Rare Breed's predecessor in interest, Rare Breed Triggers, LLC, and the patent's owner, ABC IP, LLC ("ABC"), asserted infringement claims against seven defendants: Big Daddy Enterprises, Inc.; Big Daddy Unlimited Inc.; Wide Open Enterprises, LLC; We Got Ammo, Inc.; Anthony McKnight; Sherrie McKnight; and Douglas Rios. In another prior

action in this court, Case No. 1:22-cv-61, Rare Breed Triggers, LLC and ABC
asserted infringement claims against two of the same defendants—Big Daddy
Unlimited Inc. and Big Daddy Enterprises, Inc.—and another defendant,
Blackstock Inc. This was a total of eight defendants in the two cases.

The parties agreed to settle the cases. They entered into an agreement
entitled "Confidential Settlement Agreement," sometimes referred to in this order
as the settlement agreement or simply as the agreement. The parties in each case
signed and submitted for entry by the court a document entitled "Consent
Judgment and Permanent Injunction," sometimes referred to in this order as the
consent injunctions. The consent injunction in each case was signed by the court
and entered on the docket as an injunction precisely in the form agreed to by the
parties.

The consent injunctions and settlement agreement were a package deal; in
practical effect, they were entered simultaneously. The consent injunctions were
Federal Rule of Civil Procedure 58 final judgments resolving all claims among all
parties in those actions. The plaintiffs have initiated contempt proceedings there,
and the defendants have moved to compel arbitration. This order does not address
the proper treatment of the contempt claim and arbitration motions in those actions,
which present issues beyond those presented here. This order addresses only this
new action.

## II.  This action

Rare Breed filed this new action against the eight defendants in the earlier actions and eight new defendants: Performance Triggers Inc., Atrius Development Group Corp.; Delta 7 LLC; C&C Holdings Group LLC; Christopher Rios; Malcolm Brown; Lea Andreoli; and Andrew Myers. ABC is not a plaintiff.

The complaint asserts three claims against the eight defendants from the earlier actions: breach of the settlement agreement (count 1), breach of the attendant covenant of good faith and fair dealing (count 2), and fraud (count 3). The complaint asserts a single claim against the new defendants: aiding and abetting the fraud (count 4).

The defendants can be roughly divided into two sets, sometimes referred to in this order as the Big Daddy defendants and the Atrius defendants. The Big Daddy defendants are the eight defendants involved in the earlier actions plus Performance Triggers and Christopher Rios. The Atrius defendants are Atrius, Mr. Brown, and Ms. Andreoli. This leaves out C&C, Delta 7, and Mr. Myers, who have not yet appeared in the action, might not have been served, and are not yet included in either set of defendants as referred to in this order.

The Big Daddy defendants and Atrius defendants have filed separate motions to compel arbitration and stay proceedings. The motions are fully briefed, have been orally argued, and are ripe for a decision. Or would be ripe, if Atrius had

not belatedly raised a subject-matter-jurisdiction issue that must be resolved before an order can be entered compelling arbitration. *See Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013) ("[I]f a complaint's factual allegations do not assure the court it has subject matter jurisdiction, then the court is without power to do anything in the case."); *see also Badgerow v. Walters*, 596 U.S. 1, 8–9 (2022) (explaining the Federal Arbitration Act does not itself support federal jurisdiction and a court must have an independent jurisdictional basis).

### III.  The settlement agreement and consent injunctions

In both the settlement agreement and the consent injunctions, the parties agreed, among other things, that the '223 patent was valid, that ABC owned the patent, and that the defendants had sold two specific models of trigger—the Wide Open trigger or "WOT" and the Powered by Graves Alamo-15 trigger—that infringed the patent.

The settlement agreement said that, as compensation, the defendants would return their existing inventory of "merchandise"—a term used to describe the infringing devices—to the plaintiffs.[1] The consent injunctions did not include this provision. Instead, the consent injunctions said the parties had "entered into a separate Confidential Settlement Agreement in which they have agreed to terms of

---

[1] Case No. 1:25-cv-181, Settlement Agreement, ECF No. 1-1 at 3 ¶ 4.

compensation for the infringement."[2] This was a reference to the settlement

agreement's return-of-merchandise provision. There was no substantive difference,

but handling the issue this way avoided disclosing on the public record the

existence and transfer of devices whose legality was unsettled.

To this point, then, the settlement agreement and consent injunctions were

substantively identical. But there was an important substantive difference. In the

consent injunctions, the parties agreed that the two specific trigger models—the

WOT and Alamo-15—infringed the '223 patent.[3] The defendants were enjoined

from manufacturing or selling those triggers.[4] But the settlement agreement was

not limited to those models. Instead, it prohibited the defendants from

manufacturing or selling any kind of forced reset trigger as defined more broadly

in the agreement.[5]

---

[2] Consent Injunction in Case No. 1:22-cv-69, ECF No. 49 at 4 ¶ 21; Consent Injunction in Case No. 1:21-cv-149, ECF No. 194 at 4 ¶ 21.

[3] *See* Consent Injunction in Case No. 1:22-cv-69, ECF No. 49 at 4 ¶¶ 18–19; Consent Injunction in Case No. 1:21-cv-149, ECF No. 194 at 4 ¶¶ 18–19.

[4] Consent Injunction in Case No. 1:22-cv-69, ECF No. 49 at 5–6 ¶ 1 (the numbering of paragraphs restarts within the consent judgment); Consent Injunction in Case No. 1:21-cv-149, ECF No. 194 at 5–6 ¶ 1 (same).

[5] *See* Case No. 1:25-cv-181, Settlement Agreement, ECF No. 1-1 at 3 ¶ 3 (defining "Forced Reset Trigger" more broadly) & 5 ¶ 11 (prohibition).

## IV.  The arbitration clause and the need for context

The settlement agreement includes an arbitration clause: "Any dispute regarding this Agreement will be resolved through confidential private arbitration before a mutually agreeable arbitrator."[6] In the absence of conflicting provisions, this would settle the arbitrability issue. The motions to compel arbitration would be granted. *See, e.g.*, *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 183 (2019) (requiring courts to "enforce arbitration agreements according to their terms").

But other provisions of the settlement agreement and consent injunctions cloud the issue. *See, e.g.*, *Lubin v. Starbucks Corp.*, 122 F.4th 1314, 1320 (11th Cir. 2024) (noting that an arbitration agreement may be rendered ambiguous by inconsistent provisions). Arbitration need not be an all-or-nothing proposition. Parties can agree to arbitrate all disputes, but they also can agree to arbitrate some disputes while carving out other areas or issues for litigation. *See, e.g.*, *Klay v. All Defendants*, 389 F.3d 1191, 1201–02 (11th Cir. 2004); *Am. Express Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936 (11th Cir. 1997).

The question whether an arbitration clause is subject to a carve-out is governed by the same general principles as any garden-variety issue of contract construction, with this adjustment: when the otherwise-proper construction does not yield an answer, a presumption favors arbitrability. *See, e.g.*, *Granite Rock Co.*

---

[6] *Id.* at 5 ¶ 15.

*v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010) (directing courts to apply the "presumption of arbitrability" when "a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand"); *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1147 (11th Cir. 2015) ("When federal courts interpret arbitration agreements, state contract law governs and directs the courts' analyses of whether the parties committed an issue to arbitration.").

The starting point for construing a contract is the contract's plain language. *See Hurt v. Leatherby Ins. Co.*, 380 So. 2d 432, 433 (Fla. 1980); *see also Equity Lifestyle Props., Inc. v. Fla. Mowing and Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009) (applying Florida law). But when the language is ambiguous or there are conflicting provisions, context is important. *See Atl. Candy Co. v. Yowie N. Am., Inc.*, 400 So. 3d 850, 854 (Fla. 5th DCA 2025). The goal is to discern the parties' intention as reflected in the language they agreed to. *See Am. Home Assurance Co. v. Larkin Gen. Hosp., Ltd.*, 593 So. 2d 195, 197 (Fla. 1992); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012) (noting that "context includes the purpose of the text" but that "the purpose must be derived from the text, not from extrinsic sources such as . . . an assumption about the legal drafter's desires").

Arbitration clauses, like all contract provisions, thus must be construed based on their plain language, with due consideration of any conflicting provisions,

and, at least when the plain language does not settle the issue, in context. *See Lamonaco v. Experian Info. Sys., Inc.*, 141 F.4th 1343, 1348–49 (11th Cir. 2025) ("Arbitration is a matter of contract."). The most critical considerations here are the language of the arbitration clause and the other, conflicting provisions of the settlement agreement and consent injunctions.

This order addresses the other provisions one-by-one and then construes the settlement agreement and consent injunctions as a whole.

## V. The settlement agreement's other clauses

The settlement agreement includes several provisions that, at least at first blush, might be thought to bear on the scope of the arbitration clause.

### A. Entire agreement

Like many contracts, the settlement agreement includes a merger clause: "This Agreement replaces and supersedes any written or oral understanding between the parties with respect to settlement of the Civil Actions."[7] But this plainly does not replace or supersede the consent injunctions, which were signed by the same parties, substantially contemporaneously with the settlement agreement, and were plainly intended to be effective. Indeed, the settlement agreement refers to the injunctions, and the injunctions refer to the settlement

---

[7] Case No. 1:25-cv-181, Settlement Agreement, ECF No. 1-1 at 5 ¶ 14.

agreement.[8] And submitting agreed consent injunctions for entry by the court, but intending them to be immediately superseded, would have constituted fraud on the court. Neither side asserts that happened or denies the validity and effectiveness of the consent injunctions.

This matters because, as addressed below, the consent injunctions include provisions that might bear on arbitrability.

### B. *Injunctive relief*

The settlement agreement includes an injunctive-relief provision:

> The Parties acknowledge that a breach of, or misrepresentation in, any provision of this Agreement by any of the Parties would result in irreparable injury and that it would be difficult or impossible to establish the full monetary value of such damage or recovery. Therefore, in the event of a breach of this Agreement by any Party, liquidated damages in the amount of $1,000,000 will become immediately jointly and severally due and payable to the Damaged Party. If a breach by any or all of the Defendants includes the manufacture or sale of any trigger unit or trigger part prohibited by this Agreement, Defendants will also pay ABC additional liquidated damages of $1,000 per part. In addition to these liquidated damages, Plaintiffs will also be entitled to *injunctive relief* and to recover its costs, including reasonable attorneys' fees, in enforcing this Agreement.[9]

---

[8] *See* Case No. 1:25-cv-181, Settlement Agreement, ECF No. 1-1 at 3 ¶ 1; *see also* Consent Injunction in Case No. 1:22-cv-69, ECF No. 49 at 4 ¶ 21; Consent Injunction in Case No. 1:21-cv-149, ECF No. 194 at 4 ¶ 21.

[9] Case No. 1:25-cv-181, Settlement Agreement, ECF No. 1-1 at 5 ¶ 16 (emphasis added).

If injunctive relief could be awarded only by a court, this provision would suggest injunctive relief was a carve-out from the arbitration clause. *See, e.g.*, *Makarewicz*, 122 F.3d at 940–41. But arbitrators can provide injunctive relief, too. *See, e.g.*, Com. Arb. R. & Mediation Proc. R-38(a) (Am. Arb. Ass'n 2022) (stating an arbitrator may "take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods."). This clause says little about arbitrability.

### C. *Enforcement provisions*

The settlement agreement includes two clauses referring to enforcement of the agreement. The first is, in part, a forum-selection clause: "The Parties agree to jurisdiction and venue of the Northern District of Florida."[10] But the clause continues: "and the Parties agree to *continuing jurisdiction of this Court for enforcement of the Agreement*."[11]

The forum-selection part of this clause says little about arbitrability. Even when parties agree to arbitrate all disputes, one party or the other may properly go to court to compel arbitration, to enforce or for relief from an arbitral award, or to

---

[10] Case No. 1:25-cv-181, Settlement Agreement, ECF No. 1-1 at 6 ¶ 23.

[11] *Id.* (emphasis ddded)

address the narrow subjects on which judicial oversight of an arbitral proceeding

may be appropriate. And parties may waive arbitration, again resulting in

litigation. So a forum-selection clause is not inconsistent with, and ordinarily does

not narrow, an arbitration agreement. *See, e.g.*, *Emergency Recovery Inc. v. Conifer*

*Revenue Cycle Sols., LLC*, No. 24-cv-22426, 2025 WL 71974, at *6 (S.D. Fla. Jan.

10, 2025) (collecting many cases). A forum-selection clause can be especially

important when, as here, some of the parties are from distant locations.

But the clause's reference to "enforcement of the Agreement" in "this

Court" cannot be so easily explained. The defendants say this means only

enforcement of the arbitration clause. Perhaps so. And perhaps the reference

merely recognizes the court's ability to enforce the agreement by enforcing an

arbitral award or upon waiver of the right to arbitrate. But the reference to

"continuing jurisdiction" seems more consistent with the court's previously

established jurisdiction over the merits. Had the parties intended all disputes to be

arbitrated, this clause could have said so, perhaps ending with something like this:

"This paragraph does not alter the obligation to arbitrate all disputes regarding this

Agreement." The defendants chalk this up to poor drafting, but parties are bound

by the agreements they enter, poorly drafted or not.

Another clause, too, refers to enforcement of the agreement. After providing

that the settlement terms are "strictly confidential" and will not be disclosed

beyond the parties, the clause continues: "The Parties are not restricted from disclosure should legal enforcement of this Agreement or its terms become necessary."[12] The term "legal enforcement" seems more apt for litigation than for arbitration, and more importantly, one would not expect the confidentiality requirement to be completely abrogated—for disclosure to be allowed without any restriction—just because of private, confidential arbitration. This clause, at least standing alone, seems inconsistent with the notion that *all* disputes regarding the agreement will be arbitrated.

## VI.  The consent injunction's provisions

Each injunction says twice that "upon violation of the injunction, Plaintiffs should [or in one clause, 'shall'] be entitled to remedies consistent with" the consent injunction—consistent, that is, with an injunction that mentions arbitration not at all.[13] But the injunction mentions the settlement agreement, and the settlement agreement includes the arbitration clause, even though that clause is not mentioned in the injunction. The analysis here is similar to the analysis of the settlement agreement's enforcement clauses. If not flatly inconsistent, the

---

[12] *Id.* at 6 ¶ 24.

[13] Consent Injunction in Case No. 1:22-cv-61, ECF No. 49 at 5 ¶ 23 & 7 ¶ 6; Consent Injunction in Case No. 1:21-cv-149, ECF No. 194 at 5 ¶ 23 & 7 ¶ 6.

injunction's provision and the arbitration clause are at least in tension with one another.

Each injunction provides for dismissal of the action with prejudice but continues: "[T]his *Court* shall retain jurisdiction to enforce the terms and provisions of" the consent judgment.[14] The analysis is again similar. But the suggestion that the arbitration clause has no carve-out becomes more strained when an injunction with no arbitration clause says the "court" retains jurisdiction to enforce the injunction's terms. The tension here comes closer to an outright inconsistency.

Each injunction says issue preclusion, claim preclusion, res judicata, and collateral estoppel will apply "in future *litigation* or Patent Office proceedings related to the '223 Patent."[15] Underscoring the point, the clause says it "explicitly intends" those preclusion doctrines "to extend to the issues of infringement, validity, and enforceability regarding any claim of the '223 Patent, whether raised in a *court proceeding*, Patent Office proceeding, reexamination, inter partes review

---

[14] Consent Injunction in Case No. 1:22-cv-61, ECF No. 49 at 5 ¶ 25 (emphasis added); Consent Injunction in Case No. 1:21-cv-149, ECF No. 194 at 5 ¶ 25 (emphasis added).

[15] Consent Injunction in Case No. 1:22-cv-61, ECF No. 49 at 6–7 ¶ 5 (emphasis addd); Consent Injunction in Case No. 1:21-cv-149, ECF No. 194 at 6–7 ¶ 5 (emphasis added).

or other dispute."[16] The suggestion that the arbitration clause has no carve-out is hard to reconcile with these references to "litigation" and "court proceedings." And without a carve-out, there would rarely be an occasion to apply these preclusion doctrines in litigation or in court. If not flatly inconsistent, these provisions are again at least in tension.

Finally, each injunction says: "This Court retains exclusive jurisdiction of this action for the purpose of compliance with" the injunction.[17] This seems squarely at odds with the defense theory that the court's jurisdiction to enforce the injunction means enforcement of an arbitration award. But this also seems squarely at odds with Rare Breed's concession that the arbitration clause is valid and applies to at least *something*. One reading—to be addressed in the underlying actions—is that contempt proceedings like those now pending in those actions need not be arbitrated. That reading would not help Rare Breed in this new action.

## VII. Analysis: dealing with the inconsistencies

There is no reasonable way to completely reconcile all these provisions.

---

[16] Consent Injunction in Case No. 1:22-cv-61, ECF No. 49 at 6–7 ¶ 5 (emphasis added); Consent Injunction in Case No. 1:21-cv-149, ECF No. 194 at 6–7 ¶ 5 (emphasis added).

[17] Consent Injunction in Case No. 1:22-cv-61, ECF No. 49 at 7 ¶ 9; Consent Injunction in Case No. 1:21-cv-149, ECF No. 194 at 7 ¶ 9.

The arbitration clause is broad and unequivocal: any dispute "regarding" the settlement agreement must be arbitrated. The settlement agreement covers all the substantive elements the consent injunctions cover, so any substantive dispute regarding the settlement agreement is also a dispute regarding the injunctions. Under the plain language of the arbitration clause, at least when viewed in isolation, Rare Breed's claims in this action against the other parties to the settlement agreement are all subject to arbitration.

But on the other side are clauses in tension with, and sometimes flatly contradicting, the plain terms of the arbitration clause. These clauses suggest *something* is carved out. But the clauses do not say what that something is. To identify a carve-out, a court would have to rewrite, not just construe, the parties' agreement. That of course is not a court's role. *Everhart v. Drake Mgmt., Inc.*, 627 F.2d 686, 690 (5th Cir. 1980) ("We may not rewrite a contract.") (applying Florida law).

Rare Breed says the arbitration clause applies only to any claim for enforcement of the settlement agreement's compensation provision—the provision requiring the defendants to deliver their inventory of infringing triggers to the plaintiffs. This is, in effect, an assertion that everything else is carved out. But neither the arbitration clause nor the other provisions addressed in sections V and VI above include any language supporting this reading. Nor is there any apparent

reason the parties would choose to arbitrate compensation issues but not other

issues. Why would one wish to arbitrate the issue of whether a device in inventory

when the agreement was entered into was infringing—and thus had to be turned

over as part of the required compensation—but not arbitrate the identical issue of

whether that same device was infringing and thus could not properly be

manufactured or sold after entry into the agreement?

Rare Breed says the reason is privacy—that the parties wished to keep the

agreed compensation private and so left this out of the consent injunctions. As

support for this assertion, Rare Breed relies on the consent injunctions' statement

that the parties "have entered into a separate Confidential Settlement Agreement in

which they have agreed to terms of compensation for the infringement."[18] But

before the plaintiffs signed the settlement agreement and the consent injunctions

were entered, the defendants say they had already delivered the inventory as

agreed, making it less likely arbitration of that issue would be needed. More

importantly, nothing in the settlement agreement or consent injunctions suggested

the arbitration clause should apply differently to the compensation provisions, on

the one hand, and anything else, on the other hand. At least insofar as shown by the

---

[18] Consent Injunction in Case No. 1:22-cv-61, ECF No. 49 at 4 ¶ 21; Consent Injunction in Case No. 1:21-cv-149, ECF No. 194 at 4 ¶ 21.

record, Rare Breed's attempt to carve out everything other than compensation is an after-the-fact effort to avoid arbitration of other issues.

A more plausible carve-out might be injunctive relief—perhaps preliminary, perhaps both preliminary and permanent. But this, too, does not withstand analysis.

First, neither the settlement agreement nor the consent injunctions have any hint of a carve-out limited to *preliminary* injunctive relief. The Florida Arbitration Code provides for provisional judicial remedies before an arbitrator is appointed and authorized to act, but the settlement agreement and injunctions do not explicitly refer to that provision.[19] Prompt appointment of an arbitrator would render this less important, and in any event, a carve-out limited to preliminary injunctive relief would not allow Rare Breed to proceed with the full-blown litigation it is attempting to pursue.

Second, neither the settlement agreement nor the consent injunctions have an explicit carve-out for *permanent* injunctive relief, and any such carve-out would render the arbitration clause almost meaningless. With compensation completed before the documents were fully executed—or in any event likely to be completely promptly—injunctive relief was almost certain to be the primary issue in any arbitration or litigation. And even if there were also other issues—liquidated damages, for example—the factual and legal issues in any dispute would likely be

_____

[19] *See* Fla. Stat. § 682.031(1).

identical, or nearly so. It would make little sense to have separate arbitral and court proceedings to address identical factual or legal issues.

This litigation illustrates the point. If the arbitration clause was held to have a carve-out for injunctive relief, the current dispute might have to be litigated on the issue of injunctive relief but arbitrated on liquidated damages, even though both would turn on the same factual and legal issues. Parties can of course choose to put in place such a system, rational or not. *See, e.g.*, *KPMG LLP v. Cocchi*, 565 U.S 18, 26 (2011) ("[W]hen a complaint contains both arbitrable and nonarbitrable claims, the Act requires courts to 'compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.' ") (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985)). Here, though, nothing in the settlement agreement, consent injunctions, or overall circumstances suggest the parties intended such an inefficient approach.

The bottom line is this. To find a carve-out, the court would have to rewrite the parties' agreement. And in rewriting the agreement, the court would have to adopt a carve-out making little sense. On balance, the best construction of the arbitration clause—alone, in light of the remainder of the settlement agreement and consent injunctions, and in the overall circumstances—accords with the plain meaning of the arbitration clause when viewed in isolation. All disputes

"regarding" the settlement agreement must be arbitrated. This leaves contempt proceedings as a possible carve-out.

## VIII.  Fraud

Rare Breed's breach-of-contract and implied-covenant claims, counts 1 and 2, are plainly claims "regarding" the settlement agreement.

So is the fraud claim, count 3. Entering a contract with the present intention not to perform can constitute fraud. Rare Breed's theory is that the defendants who entered into the settlement agreement intended from the outset not to comply and thus committed fraud. This is a claim regarding the settlement agreement.

## IX.  The new defendants

The new defendants—those who are not parties to the settlement agreement—have not agreed to arbitrate claims by or against them. But when a party to a contract with an arbitration clause asserts a claim against a nonparty that is dependent on the contract, the nonparty may invoke the arbitration clause. *See, e.g.*, *Paquin v. Campbell*, 378 So. 3d 686, 690 (Fla. 5th DCA 2024) ("In the arbitration context, equitable estoppel provides that '[a] party [to a lawsuit] may not rely on a contract to establish his claims while avoiding his obligation under the contract to arbitrate such claims.' ") (quoting *BDO Seidman, LLP v. Bee*, 970 So. 2d 869, 875 (Fla. 4th DCA 2007)).

That principle is fully applicable here. Rare Breed's theory is that the new defendants aided and abetted the original defendants' fraud—aided and abetted the original defendants' fraudulent continuation of their infringement of the '223 patent in violation of the settlement agreement.

The aiding-and-abetting claim against the new defendants, like the fraud claim against the original defendants, must be arbitrated.

## X.  Conclusion

In sum, the settlement agreement's arbitration clause applies to this litigation. But an order compelling arbitration cannot be entered unless the court's jurisdiction is established. The litigation as current framed will not go forward, either because the court lacks jurisdiction or because the claims must be arbitrated.

Accordingly,

IT IS ORDERED:

All proceedings other than those related to diversity jurisdiction are stayed pending a ruling on that issue.

SO ORDERED on August 21, 2025.

s/Robert L. Hinkle
United States District Judge