# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

**RARE BREED TRIGGERS, et al.**
**Plaintiffs.**

   **-vs-**                         CASE NO. 1:25cv181-RH-MAF

**BIG DADDY ENTERPRISES, et al.**
**Defendants.**

---

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12 AND EMERGENCY MOTION FOR PROTECTIVE ORDER

---

Defendants Atrius Development Group Corp., Malcolm Brown, and Lea Andreoli (collectively the "Moving Defendants") hereby file this Motion to Dismiss Pursuant to Rule 12 and Emergency Motion for Protective Order.  First, Moving Defendants will show that Defendant Atrius Development Group Corp. ("Atrius") is a citizen of Texas, and that as such this court lacks subject matter jurisdiction over the entire case.  Second, because Defendants Malcolm Brown and Lea Andreoli[1] have no contacts with Florida, this Court cannot exercise personal jurisdiction over them.  Third, Moving Defendants' limited participation in this litigation does not

---

[1] Lea Andreoli is the maiden name of Malcolm Brown's wife, who is now Lea Brown.  To avoid confusion, her maiden name is used throughout this motion.

constitute waiver of their jurisdictional objections. Fourth, Moving Defendants are required parties under Rule 19, and the action cannot proceed in equity and good conscience in their absence. Finally, to the extent any discovery has been produced in this action, opposing counsel should be ordered to return or destroy such materials, as they were obtained in a case over which this Court lacks jurisdiction. To the extent the Court disagrees, Defendants alternatively move for a protective order to be set in place to protect the confidential information of the Defendants.

## I.    FACTUAL BACKGROUND

1. Defendants have set forth the factual background of this case in its Motion to Quash Subpoenas (ECF No. 57 at 3–7) and in its Emergency Motion to Vacate Orders (ECF No. 58 at 2–6) which Defendants incorporate by reference.

2. Plaintiff filed this action on July 1, 2025, invoking this Court's jurisdiction under 28 U.S.C. § 1332(a)(1) based on alleged diversity of citizenship. ECF No. 1 at ¶ 18.

3. Specifically, Plaintiff, a Texas corporation, alleges that Defendant Atrius Development Group Corp. is a citizen of Idaho. *Id.* The citizenship of the remaining Defendants is not in controversy at this time.

4. Plaintiff further submits that it has personal jurisdiction over Defendant Malcolm Brown under Florida Statute § 48.193(1)(a)(2), (6)(b), and (2), because he allegedly directed the design and sale of infringing triggers through Florida-based

infrastructure, knowingly assisted the Settling Defendants in evading the Settlement Agreement, and worked in concert with them to continue sales in violation of the Permanent Injunction. *Id.* at ¶ 17.

5. As to Defendant Lea Andreoli, Rare Breed alleges—entirely on "information and belief"—that she helped conceal proceeds from infringing sales that purportedly caused injury in Florida, and that she knowingly participated in efforts to facilitate the Settling Defendants' ongoing breach of the Settlement Agreement. *Id.*

6. As set forth below, these jurisdictional allegations are defective. First, Atrius is in fact a citizen of Texas, not Idaho, thereby destroying diversity jurisdiction. Second, Rare Breed has failed to establish personal jurisdiction over either Brown or Andreoli, as the Complaint contains no facts demonstrating that either has the requisite minimum contacts with Florida. And neither of them do in fact have the required minimum contacts with Florida.

## II.    LEGAL STANDARD

### a.  Rule 12(b)(1)

7.  A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction, and motions under Rule 12(b)(1) can be a facial or factual attack.  *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).  A facial attack challenges subject matter jurisdiction based on allegations in the complaint, and the court accepts the allegations as true—the court employs standards similar to a 12(b)(6) attack for failure to state a claim. *Id.*; *see also Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021).  On the other hand, in a factual attack, extrinsic evidence may be considered, and so long as the jurisdictional issues are not "inextricably intertwined with the merits," courts are free to weigh evidence. *Kennedy*, 998 F.3d at 1230, 1232.

### b.  Rule 12(b)(2)

8.  Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute *and* (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).   Thus, satisfying Florida's long-arm statute does not

automatically satisfy due process requirements. *Id.* To determine if due process is satisfied, a court considers whether the defendant's contacts with the forum state are related to the plaintiff's cause of action, whether the defendant purposefully availed himself of the privilege of conducting activities within the forum state, and whether exercising personal jurisdiction comports with traditional notions of fair play and substantial justice. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). The "constitutional touchstone" is whether the defendant has sufficient minimum contacts with the forum state "such that he should reasonably anticipate being hauled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

9. "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *Mazer*, 556 F.3d at 1274. But if "a defendant challenges personal jurisdiction in a Rule 12(b)(2) motion to dismiss," Federal Rule of Civil Procedure 12(i) affords the district court "discretion on how to proceed." *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1364 (11th Cir. 2021). When faced with a 12(b)(2) motion to dismiss, courts are presented with two options: (1) hold an evidentiary hearing before trial to make factual findings about personal jurisdiction under a preponderance of the evidence standard or (2) decide the motion to dismiss under a *prima facie* standard. *Id.* at 1364-65; Fed. R. Civ. P.

12(i); *see generally N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1333 (11th Cir. 2025) (describing available procedures to evaluate challenges to personal jurisdiction).

10. If the Court opts not to hold an evidentiary hearing, the defendant challenging jurisdiction may submit affidavit evidence in support of its position at the pleading stage. *Id.* (quoting *Mazer*, 556 F.3d at 1274). And in that case, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

### c. *Rule 26(c)*

11. Federal Rule of Civil Procedure 26(c) provides that a court "for good cause shown ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed. R. Civ. P. 26. "While Rule 26(c) articulates a single standard for ruling on a protective order motion, that of 'good cause,' the federal courts have superimposed a somewhat more demanding balancing of interests approach under the Rule." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) (citations omitted). In evaluating whether a party has satisfied the burden of "good cause," "a court should balance the non-moving party's interest in obtaining discovery and preparing for trial against the moving party's proffer of harm that

would result from the [discovery]." *Barrata v. Homeland Housewares, LLC*, 242 F.R.D. 641, 642 (S.D. Fla. 2007) (citing *Farnsworth*, 758 F.2d at 1547). "Generally, a party moving for a protective order must make a specific demonstration of facts in support of the request, as well as of the harm that will result without a protective order." *Fargeon v. Am. Nat'l Prop. & Cas. Co.*, No. 08-60037-CIV, 2008 U.S. Dist. LEXIS 129152, 2008 WL 11332027, at *4 (S.D. Fla. July 8, 2008) (citing *Dunford v. Rolly Marine Service, Co.*, 233 F.R.D. 635, 636 (S.D. Fla. 2005)).

### III.    MOTION TO DISMISS

#### a. *Because there is not complete diversity between the parties, this matter must be dismissed*

12. "Jurisdiction to resolve cases on the merits requires *both* authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 577 (1999). "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States* v. *Cotton,* 535 U.S. 625, 630 (2002). And courts have a continuing obligation to assess subject matter jurisdiction. *See Belleri v. United States*, No. 10-81527-CIV, 2013 U.S. Dist. LEXIS 194703, at *1, *3 (S.D. Fla. Aug. 26, 2013). Here, Plaintiff has invoked diversity jurisdiction under 28 U.S.C § 1332, which requires "complete diversity," meaning that no plaintiff may share a state of citizenship with any

7

defendant. *Petty v. Wyeth*, No. 3:04-cv-82-MCR, 2004 U.S. Dist. LEXIS 28725, at
*1, *6 (N.D. Fla. Apr. 28, 2004).

13. At the outset, Plaintiff incorrectly alleges that Defendant Atrius Development
Group Corp. ("Atrius") is a citizen of Idaho.  ECF No. 1 at ¶ 18.  Although Atrius
was originally incorporated in Idaho, it became inactive on or about February 11,
2023. *See* Affidavit of Malcolm Brown, Ex. 1 and Certificate of Existence in Idaho,
Ex. 1A.  Defendant Brown re-established Atrius Development Group Corp. as
Montana corporation on January 24, 2023.  Certificate Ex. 1B.  Subsequently
converted the same from a ***Montana*** corporation to a ***Texas*** corporation on June 20,
2025. *See* Certificate of Conversion of a Foreign Entity Converting to a Texas Filing
Entity, Ex. 1C.  Because both Plaintiff and Defendant Atrius are citizens of Texas,
complete diversity has been destroyed. *Petty,* 2004 U.S. Dist. LEXIS 28725, at *6.

14. Moreover, as explained more fully below, Atrius is an indispensable party;
without its presence this Court cannot proceed, and the **entire case** must be
dismissed for lack of subject matter jurisdiction. *Thermoset Corp. v. Bldg. Materials
Corp. of Am.*, 849 F.3d 1313, 1319 (11th Cir. 2017); *see also Muhammed v. Corp.
Serv. Co.*, No. No. 3:25cv229, 2025 U.S. Dist. LEXIS 85776, at *1 (N.D. Fla. Apr.
7, 2025) (citing Fed. R. Civ. P. 12(h)(3) and holding that if a federal court determines
at any time that it lacks subject-matter jurisdiction, then the court must dismiss the
case).

### b. *Malcolm Brown and Lea Andreoli do not have the requisite minimum contacts for personal jurisdiction*

15. To establish minimum contacts, a defendant's contacts with the forum state must (1) be related or have given rise to the plaintiffs cause of action, (2) involve some act by which the defendant purposefully availed itself of the privilege of conducting activities within the state, and (3) be such that the defendant could reasonably anticipate being hauled into court in the forum state. *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993). Plaintiffs cannot satisfy this standard with respect to Defendants Brown and Andreoli. As is set out in detail below, neither Brown nor Andreoli resides in Florida, maintains offices or property here, have any bank accounts here, or has purposefully directed activities toward the state or availed themselves of its laws. *See* Ex. 1; *see also* Affidavit of Lea Andreoli, Ex. 3. In addition, Plaintiffs' allegations are made largely "upon information and belief," which cannot substitute for jurisdictional facts sufficient to establish personal jurisdiction.

16. First, Defendant Brown is a resident of Lake Forest, California. *See* Ex. 1 at ¶ 2. He does not own or lease property in Florida, maintain a mailing address, telephone listing, office, or bank account in the state, and has no employees, agents, or representatives located there. *Id.* at ¶ 2–5. He has not advertised or marketed specifically to Florida residents, entered into contracts in Florida, or traveled to Florida for business purposes related to this case. *Id.* at ¶ 6–7. His only contact with

Florida was a personal visit to a friend approximately a year ago. *Id.* at ¶ 8. He has not purposefully availed himself of conducting activities in Florida, has not invoked the protections of Florida law, and does not have sufficient continuous or systematic contacts with the state that would support either general or specific jurisdiction. *Id.* at ¶ 9–11.

17. Plaintiff's jurisdictional allegations directed at Defendant Brown are pled in part upon information and belief, and by extension are insufficient to establish jurisdictional facts. *See Damian v. Meftah*, No. 19-25273-CIV-MARTINEZ, 2021 U.S. Dist. LEXIS 247489, at *1, *11 (M.D. Fla. Dec. 28, 2021) (stating that allegations based on information and belief are not a substitute for establishing jurisdictional facts). Specifically, Plaintiff asserts that Brown (1) directed the design and sale of infringing triggers through Florida-based infrastructure, (2) assisted the Settling Defendants in evading the Settlement Agreement, and (3) worked in concert with them to continue sales in violation of the Permanent Injunction. ECF No. 1 at ¶ 17. Yet the Complaint fails to identify what this "Florida-based infrastructure" actually is, how Brown allegedly used it, or—critically—where his conduct took place. *Id.* ¶¶ 56–65. The factual assertions directed at Brown largely involve his role in designing and marketing a three-position FRT, all of which are alleged to have occurred through Atrius, a corporate entity not based in Florida. *Id.* ¶ 26. Such vague and conclusory allegations fall far short of showing that Brown personally

established constitutionally sufficient contacts with Florida. *See Damian v. Meftah*, No. 19-25273-CIV-MARTINEZ, 2021 U.S. Dist. LEXIS 247489, at *1, *11 (M.D. Fla. Dec. 28, 2021) (stating that allegations based on information and belief are not a substitute for establishing jurisdictional facts). And indeed, any such allegations that Brown acted through any "Florida-based infrastructure" are verifiably false. Atrius has never had an office, facility, or employees in the state of Florida. Ex. 1 at ¶ 14. Nor has it ever been headquarter or conducted targeted business activities at Florida residents. *Id; see Kelly v. Philip Morris Int'l Inc.,* No. 24-cv-60437-WPD**,** 2024 U.S. Dist. 224627, at *1, *5–6 (S.D. Fla. Aug. 19, 2024) (holding Plaintiff did not carry his burden to demonstrate personal jurisdiction over Defendant where Defendant submitted declaration stating it had no offices or employees in Florida and had not marketed or advertised its products in Florida).

18. Plaintiffs' allegations as set out in paragraphs 56 through 65 of the Complaint further evidence the absence of well-pled jurisdictional facts as to Malcolm Brown. For instance, Plaintiff asserts "upon information and belief" that (1) Defendant Atrius fulfilled approximately 9.000 consumer orders of allegedly infringing FRTs; and (2) that Defendant Brown collaborated with Defendants McKnight and Rios to further develop and finalize a three-position FRT past the execution of the Settlement Agreement and Permanent Injunction. Although "'information and belief' pleading can sometimes survive a motion to dismiss, a plaintiff must allege specific facts

sufficient to support a claim." *United Am. Corp. v. Bitmain, Inc.*, 530 F. Supp. 3d 1241, 1275 n.21 (S.D. Fla. 2021). Indeed, Plaintiff's jurisdictional allegations are largely conclusory and lack factual support. While Brown worked as an engineer for Strike Industries in 2021, he was retained by BDU to assist in developing a forced reset trigger with a three-position selector. Ex. 1 at ¶ 15. All of his work was performed remotely from California as an independent contractor, and he never traveled to Florida in connection with the project. *Id.* The assignment was limited to engineering design work with the goal of creating a patentable design that BDU might license. *Id.* The design Brown developed—called the "assisted reset trigger"—is mechanically distinguishable from Rare Breed's '223 patent insofar as in Brown's design the trigger is reset only partially. *Id.* at ¶ 17. And only a limited number of units were ever sold and Mr. Brown did not advertise or market specifically to Florida, nor conduct targeted business activities directed at Florida residents.. *Id.* at ¶ 18. Subsequently, while at Atrius, he developed a "Super Selektor" safety selector, which is not a trigger and has never been accused of infringing the '223 patent. These facts confirm that Brown's professional activities were conducted entirely outside Florida and do not establish purposeful availment or minimum contacts with the forum. "Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to

meet the *Twombly* standard." *Hilbrich v. Sandbox Grp.*, No. 20-20130, 2021 U.S. Dist. LEXIS 97477, *10 (S.D. Fla. Mar. 5, 2021). To reiterate, the Complaint is silent as to where this alleged 'collaboration' occurred, and nowhere does it allege that any of Mr. Brown's activities were directed toward Florida. Rather, Brown has made clear that he has not advertised or otherwise directed business activities at this forum. *See* Ex. 1 at ¶¶ 6,14,18. Absent factual allegations tying Mr. Brown's conduct to Florida itself—as opposed to generalized assertions of coordination with others—the Complaint fails to establish the minimum contacts required by due process.

19. As to Defendant Andreoli, Plaintiff's jurisdictional allegations rest entirely on assertions made "upon information and belief," rather than on specific jurisdictional facts. ECF No. 1 at ¶ 17. Specifically, Plaintiff alleges "upon information and belief" that Defendant Andreoli helped conceal proceeds from infringing sales that "caused injury in Florida" and participated in efforts to facilitate or disguise the Settling Defendants' ongoing breach of the Settlement Agreement. *Id.*

20. Even if taken as true (which would be improper), these allegations do not satisfy any prong of the minimum contacts test. First, Plaintiff does not allege that Andreoli's supposed conduct—concealing proceeds—was related to or carried out in Florida; rather, it asserts only in conclusory fashion that the concealment "caused

injury in Florida," without identifying how or why. Second, nothing in the Complaint suggests that Andreoli purposefully availed herself of the privilege of conducting activities in Florida. Andreoli is a California resident who has never lived in Florida, never owned or leased property in Florida, never maintained an address, telephone number, office, or bank account in Florida, and has never conducted business, entered contracts, or even set foot in the state. Ex. 3 at ¶ 3–10. Far from being involved in any business activities, Andreoli is a former registered nurse and now a stay-at-home mother, and has never held any role in her husband Malcolm Brown's engineering work or Atrius's operations. *Id.* at ¶ 13. The sole connection alleged— two payments deposited into her personal bank account years ago—was entirely incidental, explained by the fact that her husband had not yet opened a business account and used her existing account for convenience. *Id.* at ¶ 15. She had no knowledge of or participation in those transactions and never interacted with BDU, McKnight, or Rios. Such incidental, one-off deposits are plainly insufficient to establish purposeful availment or continuous and systematic contacts with Florida. All considered, it is clear that Defendant could not have anticipated being hauled into court in Florida. As the Supreme Court has made clear, jurisdiction cannot rest on "the plaintiff's contacts with the forum state" or on "the defendant's contacts with persons who reside there," but only on "the defendant's own affiliation with the State." *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014). Plaintiff's threadbare

assertions, pled solely "upon information and belief," fall far short of establishing minimum contacts under *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993).

21. Because Plaintiff has failed to allege facts showing that either Mr. Brown or Ms. Andreoli purposefully directed any conduct toward Florida or have any other contacts with the same, the Complaint does not satisfy the constitutional requirements for specific jurisdiction. Allegations of generalized collaboration, pled solely on information and belief and without any Florida nexus, are insufficient under *Walden v. Fiore*, 571 U.S. 277 (2014), and Eleventh Circuit precedent. Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(2), the claims against Mr. Brown and Ms. Andreoli should be dismissed for lack of personal jurisdiction. Because Defendants Brown and Andreoli have established that they lack the requisite minimum contacts necessary to establish personal jurisdiction, they need not address whether this Court's jurisdiction is appropriate under the Florida long-arm statute, as both are required for the assertion of personal jurisdiction.

### c. *Defendants Brown and Andreoli have not waived personal jurisdiction by way of their limited participation in this lawsuit.*

22. Moving Defendants' limited participation in this case does not constitute waiver of their Rule 12(b)(2) defense. Courts distinguish between minimal litigation activity necessary to preserve rights and the type of "substantial participation" that

results in waiver.  As *Dawson v. Bruce Teleky, Inc.* explains, waiver occurs only where a defendant engages in extensive discovery or trial participation while sitting on its personal jurisdiction defense.  *See Dawson v. Bruce Teleky, Inc*., No. 6:18-cv-1908-ORL37LRH, 2019 U.S. Dist. LEXIS 239806, at *1, *6 (M.D. Fla. Nov. 18, 2019) (citing case law wherein defendants waived personal jurisdiction by moving to dismiss after several months of discovery).  Here, Moving Defendants have filed only five closely related motions—the Motion to Stay, the Rule 60 Motion, Motion for Protection, Motion to Quash, and the Motion to Disqualify—and have not engaged in discovery, entered protective orders, or otherwise substantially participated in litigation.  At base, these motions are seeking protection from discovery, as the Court should stay the case in favor of arbitration.  Such limited filings are a far cry from the "lengthy discovery" or "trial activity" that courts require before finding waiver of personal jurisdiction.  *Id.*  In fact, Defendants' litigation activity here closely parallels that in *Dawson*, albeit on a much shorter timeline.  *Id.* at *6.  There, Defendants participated in "some" discovery, filed two motions to compel and attended a telephonic hearing regarding the same, and participated in a case management conference.  *Id.*  The *Dawson* court held that "this conduct falls short of the substantial participation necessary to waive personal jurisdiction." *Id.*

23. Nor does the timing of Moving Defendants' Rule 12(b)(2) challenge support waiver.  In *Dawson*, the court emphasized that even an eight-month delay in raising

16

personal jurisdiction did not amount to waiver where the defendants' participation in litigation was limited. *Id.* (citing *Salinero v. Johnson & Johnson, Inc.*, No. 18-CIV-23643-RAR, 2019 U.S. Dist. LEXIS 96155, 2019 WL 2410076, at *2 (S.D. Fla. June 7, 2019). Having promptly raised personal jurisdiction in their filings and refrained from discovery or merits litigation, Moving Defendants have preserved their right to challenge personal jurisdiction. Defendants' limited motion practice does not remotely approach the "extensive participation" threshold that triggers waiver.

d. ***Moving Defendants are indispensable parties and thus cannot be severed from the instant litigation.***

24. Rule 21 vests district courts with authority to dismiss a ***dispensable*** party whose presence spoils statutory diversity jurisdiction. *Newman-Green, Inc. v Alfonzo-Larrain,* 490 U.S. 826, 832-33, 109 S. Ct. 2218, 104 L.Ed.2d 893 (1989); *Ingram v CSX Transportation, Inc.,* 146 F.3d 858 (11th Cir. 1998). If the non-diverse party is indispensable, then the Court **must dismiss the entire case** for lack of subject matter jurisdiction. *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1319 (11th Cir. 2017).

25. The Eleventh Circuit utilizes a two-pronged test in determining whether a party is indispensable. *Id.* First, the Court must determine whether the Moving Defendants are required parties under Rule 19(a)(1). *Id.* If the Moving Defendants

are required parties, then the court must ask whether "in equity and good conscience, the action should proceed" without them under subsection (b). *Id.*

26. Under Rule 19, a "required party" is one which must be joined if "in that person's absence, the court cannot accord complete relief among existing parties" or that party claims an interest relating to the subject of the action and is "so situated that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

27. Atrius, Brown, and Andreoli are each required parties under Rule 19(a)(1) because Plaintiff's claims cannot be adjudicated in their absence without impairing their interests or creating a substantial risk of inconsistent obligations. Plaintiff's Complaint expressly asserts that these Defendants were central participants in the alleged scheme to design, market, and conceal the sale of the so-called Atrius FRT and to facilitate the Settling Defendants' alleged breach of the Settlement Agreement and violation of the Permanent Injunction. ECF No. 1 at ¶¶ 17, 26, 56–65, 114–116. Those allegations place Atrius, Brown, and Andreoli at the heart of the controversy, such that any disposition of this action without them would necessarily impede their ability to protect their own interests in defending against allegations of fraud, concealment, and breach, while at the same time exposing the existing parties to

multiple or inconsistent obligations. Indeed, Plaintiff's theory of liability hinges on alleged concerted conduct among the Settling Defendants and these Moving Defendants; proceeding without them would risk inconsistent determinations as to liability for the very same conduct. *See Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999) (holding that a party is a necessary party when the absent party "emerges as an active participant" in the allegations made in the complaint that are "critical to the disposition of the important issues in the litigation"). Accordingly, Atrius, Brown, and Andreoli fall squarely within Rule 19(a)(1) and must be joined as required parties.

28. Having shown that Moving Defendants are required parties, the court must determine whether "in equity and good conscience, the action should proceed" without them under subsection (b). *Thermoset Corp.*, 849 F.3d at 1319. Subsection (b) instructs courts to consider four factors to make this determination: (1) the extent to which a judgment rendered in Moving Defendants' absence might prejudice Moving Defendants or the other parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in [Moving Defendants'] absence would be adequate; and (4) whether [Rare Breed] would have an adequate remedy if the entire case were dismissed. *Id.* (citing Fed. R. Civ. P. 19(b)(1)-(4)).

29. Each of the Rule 19(b) factors weighs against proceeding.  First, a judgment rendered without Atrius, Brown, and Andreoli would directly prejudice them, as the Complaint accuses them of being central participants in the very scheme at issue—designing the Atrius FRT, concealing proceeds, and facilitating breaches of the Settlement Agreement.  ECF No. 1 at ¶¶ 17, 26, 56–65, 114–116.  Adjudicating liability for that conduct in their absence would deprive them of the ability to defend themselves while simultaneously risking inconsistent findings against the existing defendants.  *See Laker Airways*, 182 F.3d at 849 (holding that the necessary party would be prejudiced by not being able to participate in a proceeding which would, at the very least, comment upon its conduct); *see also City Nat'l Bank of Fla. v. La. Apple, LLC*, No. 24-cv-23285-ALTMAN, 2024 U.S. Dist. LEXIS 167180, at *1, *9 (M.D. Fla. Sept. 17, 2024) (citing case law stating that the first 19(b) factor is the primary factor and nearly dispositive in determining whether a party is indispensable).  Second, this prejudice cannot be cured through protective provisions or tailored relief, because Plaintiff seeks broad injunctive and monetary relief directed at the conduct of all alleged participants; shaping such relief without Moving Defendants would be both impractical and incomplete.  Third, any judgment rendered without Moving Defendants would be inadequate because it would not resolve the full scope of the controversy alleged by Plaintiff.  *See Cuhaci v. Echemendia*, No. 20-cv-23950-BLOOM, U.S. Dist. LEXIS 205729, at *1, *18 (S.D.

Fla. Oct. 25, 2021) (holding that under the second and third factors, the public interest in avoiding piecemeal and inefficient litigation is strong where a state court action could adjudicate the entire controversy). The Complaint accuses all Defendants—including Atrius, Brown, and Andreoli—of acting in concert to design, market, and conceal infringing products.[2] If the Court were to proceed without Moving Defendants, it would necessarily adjudicate only part of that alleged scheme, leaving unresolved the liability of those absent parties. That would create the very real prospect of parallel or subsequent proceedings, either in arbitration or another forum, in which Atrius, Brown, and Andreoli would be forced to relitigate issues already decided against the remaining defendants. Such piecemeal litigation risks inconsistent determinations as to whether the conduct was wrongful and, if so, who is responsible, thereby undermining the adequacy of any judgment rendered here. Fourth, Plaintiff would have an adequate remedy if this case were dismissed, as it could pursue its claims against all relevant parties in a forum where jurisdiction and joinder are proper. For example, Rare Breed could assert these claims in state court, which would avoid the jurisdictional limitations of this Court while allowing the entire dispute to be resolved in one action. *Id.* (stating that Plaintiff could obtain complete relief in state court). Thus, dismissal here does not deprive Plaintiff of a

---

[2] Moving Defendants have accepted Plaintiffs factual allegations, as it must for purposes of this motion. In reality, Ms. Anderoli has no relevance to the subject matter of this case.

remedy; it merely ensures that its claims are adjudicated in a forum that can exercise jurisdiction over all necessary parties.  Because Moving Defendants are required parties and the action cannot, in equity and good conscience, proceed in their absence, dismissal is mandatory under Rule 19(b).

## IV.    MOTION FOR PROTECTIVE ORDER

### a.  *Good cause exists to protect Defendants from premature subpoenas*

30. Rule 26(c) permits the Court, "for good cause shown," to enter an order limiting discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  Here, good cause exists for a protective order: (1) ordering Plaintiff to return or destroy all documents received by way of its Rule 45 subpoenas while the instant Motion is pending; and (2) limiting Plaintiff's use of any documents produced by way of subpoena to the instant litigation.  Plaintiff has already issued a series of Rule 45 subpoenas seeking expansive categories of sensitive information, including Defendants' bank records, shipping and customer data, and internal communications.  Subpoenas are a discovery device and are governed by the same relevance and proportionality limits as other discovery under Rule 26.  *Am. Fed. of State, County and Mun. Employees (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 476 (S.D. Fla. 2011) ("Federal courts . . . have treated the scope of discovery under a subpoena [a]s the same as the

scope of discovery under Rule 26."). The sweeping subpoenas here intrude upon the Defendants' most sensitive commercial affairs. Enforcement of these subpoenas would lay bare Defendants' most sensitive financial, operational, and customer information to an adversary already shown to disregard this Court's protective orders—all before the issue of subject matter jurisdiction is adjudicated.

### b. Discovery is improper while jurisdiction is unresolved

31. Plaintiff's numerous Rule 45 subpoenas are particularly inappropriate as this Court has not yet determined whether it has subject matter jurisdiction or personal jurisdiction over the Moving Defendants. As the Eleventh Circuit has emphasized, if jurisdiction is lacking, "the court is without power to do anything in the case." *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013). Requiring third–parties to comply with Plaintiff's broad subpoenas while the instant Motion is pending imposes exactly the sort of undue burden Rule 26(c) is designed to prevent. *See also Wyatt v. Kaplan*, 686 F.2d 276, 283–84 (5th Cir. 1982) (affirming protective order staying depositions pending jurisdictional ruling because discovery "would serve no purpose" if the court lacked jurisdiction).

### c. Restricting access to Defendants' information from Mr. Bellamy

32. Pending before the Court is Defendants' Motion to Disqualify Glenn Bellamy as counsel, who previously violated this Court's patent prosecution bar filing multiple patent applications in the field of forced reset triggers, and further took

efforts to conceal his conduct pertaining to the same.  ECF No. 62.  The alleged misconduct may very well lead this Court to find that Bellamy breached not only the prosecution bar but also several rules of ethics pertaining to discovery-related abuses.  Given this track record, the risk of abuse from Plaintiff's expansive subpoenas is not hypothetical.  Allowing Bellamy and his team access to Defendants' banking, shipping, and customer data—while jurisdiction is contested—would expose Defendants to the very type of prejudice and misuse Rule 26(c) is designed to guard against.  Where counsel has already demonstrated disregard for court-imposed limits, the balance of interests weighs heavily in favor of the issuance of a protective order.  This threat is made more real by Plaintiffs refusal to treat Defendants' highly confidential information as such or to limit disclosure from Mr. Bellamy or Rare Breed.

### d.  *No risk of prejudice to Plaintiff*

33. On one side of the scale, Plaintiff suffers no meaningful prejudice from a short delay in subpoena-related discovery pending resolution of the jurisdictional issues asserted herein.  Plaintiffs have an outside law firm which is separate from Mr. Bellamy and his firm and are capable of handling discovery for  short period of time.  Defendants have already filed a motion to quash and a motion to disqualify; discovery can resume in accordance with this Court's rulings on those issues with no prejudice to Plaintiff's ability to pursue its claims if the case proceeds.  On the

other side, Defendants face potentially irreparable harm from the compelled disclosure of sensitive business data—including banking, shipping, and customer information—to counsel with a demonstrated history of discovery-related abuse. In addition, requiring dozens of third parties to respond to Plaintiff's sweeping subpoenas would needlessly burden those parties when any such discovery will be rendered meaningless if the Court lacks jurisdiction to adjudicate this case.  The balance of interests therefore compels entry of a protective order.

### *e.  Plaintiff must return or destroy the documents that were produced.*

34. Even apart from the impropriety of enforcing Plaintiff's subpoenas while jurisdiction remains unresolved, any documents already produced must be returned or destroyed.  It is settled law that discovery devices, including Rule 45 subpoenas, are subject to the same limits as Rule 26 and cannot survive if the Court lacks jurisdiction.  *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013) ("[I]f a complaint's factual allegations do not assure the court it has subject matter jurisdiction, then the court is without power to do anything in the case.").  A federal court that lacks jurisdiction cannot compel or enforce discovery; any materials obtained in that posture are therefore improperly in the plaintiff's possession.  Accordingly, if this case is dismissed for lack of jurisdiction, Plaintiff should be required not only to return or destroy all documents already obtained, but also to notify any third parties served with subpoenas that compliance is no longer required.

Without such notice, third parties may continue producing confidential materials in response to subpoenas that are *void ab initio*, compounding the prejudice of Plaintiff's improper possession.

### f. Rule 26(c) authorizes restricting use of discovery to the present case

35. Courts have recognized that Rule 26(c) authorizes protective orders restricting the use of discovery to the case in which it was produced, precisely to prevent sensitive information from being misused in other proceedings. In *AIG Centennial Ins. Co. v. O'Neill*, the Southern District of Florida held that the trade-secret and confidential underwriting information produced in discovery was subject to a protective order limiting its use to that litigation alone, recognizing that any broader use would give opposing counsel an unfair advantage in unrelated disputes. *AIG Centennial Ins. Co. v. O'Neill*, No. 09-60551-CIV-ZLOCH-ROSENBAUM, 2010 U.S. Dist. LEXIS 114148, at *1, *24 (S.D. Fla. Oct. 18, 2010). No lesser protection is warranted here. Plaintiff's subpoenas seek Defendants' most sensitive business information—banking records, shipping data, and customer lists—that, if shared or used outside this case, would irreparably harm Defendants. To balance the parties' competing interests, this Court should limit any discovery produced thus far to use solely in this litigation.

36. While the Court has criticized Defendants for "chos[ing] not to participate in the scheduling conference," ECH No. 59 at 3. Respectfully, Defendants believe the

Court has overlooked the reality of the situation.  The Court acknowledges that *earliest* service for a portion of Defendants occurred on July 7–10, 2025. [3]  ECF Nos. 39 (Atrius 7/7 at 1338 PT), 45 (Mr. Brown served at 7/10 1136 PT) 46 (Ms. Brown fka Andreoli 7/10 at 1137 PT).  The hearing was held on July 10, 2025 at 2:00 p.m. ET.  Thus, neither Mr. Brown or his wife received notice of the hearing until after the hearing was conducted.  Atrius had three days' notice to vet and secure an affordable attorney, as it may not appear *pro se*.  The remaining 9 defendants were served July 30, 2025 or later.

37. While the exact contours of the Due Process Clause are subject to debate, it is clear that a minimum, notice and an opportunity to heard must be afforded every party subject to the Court's resultant order.  *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, at 313.  An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.  *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278.

38. The fundamental requisite of due process of law is the opportunity to be heard at a meaningful time and in a meaningful manner.  Due process requires only the

---

[3] Admittedly, the registered agents for the *defunct* companies Blackstock, Inc., BDE, BDU, and Performance Triggers, Inc., were served on July 7 and 8, 2025. ECF No. 21–23.

"opportunity to be heard ... at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965) (quotation marks omitted); *see also Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914) ("The fundamental requisite of due process of law is the opportunity to be heard."). *In re Gaime*, 17 F.4th 1349, 1354 (11th Cir. 2021).

39. The Court overlooks, or at least does not address, that 11 of the Defendants did not receive notice of the hearing until it was completed, and four of the five that were notified were defunct companies. Thus, the only viable Defendant that received notice was Atrius—and even then, it only had three days to find an attorney.

40. The Court had also ordered that all parties were to confer prior to the scheduling conference in good faith to reach agreement as to scheduling. ECF No. 9 at ¶ 5. Plaintiffs made no attempt to confer with Atrius or any of the defunct Defendants in direct violation of the Court's order.

41. While Defendants may move the Court under Rule 16(d) or Rule 54 to modify the scheduling order, this puts the onerous on Defendants and might require a showing of good cause. Thus, the Defendants are in a worse position than they would have otherwise been in had they received notice of the hearing, conferred with opposing counsel, and had meaningfully participated in the hearing.

42. While the Court states it does not believe there is reason to modify the scheduling order, Defendants were denied the opportunity to present reasons. First,

the scheduling order allowed discovery to move forward without a protective order in place. Second, discovery is moving forward without a ruling on Defendants' motion to disqualify Mr. Bellamy from having access to their confidential information and being disqualified from the case. Additionally, the schedule should have prioritized a hearing or decision on gateway issues such as jurisdiction (subject matter and personal) and mandatory arbitration. Parties are subject to spending resources on motions and discovery that be for naught, should this Court lack jurisdiction to hear this case or decides the case should be arbitrated.

## PRAYER

WHEREFORE, Defendants Atrius Development Group Corp., Malcolm Brown, and Lea Andreoli respectfully pray that this Court:

1. Dismiss the instant action in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2) for lack of subject-matter jurisdiction and lack of personal jurisdiction;

2. Grant Defendants' Motion for Protective Order pursuant to Rules 26(c) and:

   (a) order that, while the current Motion is pending, Plaintiff promptly notify all subpoena recipients that they need not comply;

   (b) order, while the current Motion is pending, Plaintiff to return or destroy all documents or information already obtained through its

subpoenas, and to certify that no copies have been retained, used, or disclosed;

(c) order, while the current Motion is pending, all documents containing Defendants' confidential information will not be disclosed to Mr. Bellamy nor Rare Breed, being limited to outside counsel (other than Mr. Bellamy); and

(d) limit any discovery obtained via Plaintiff's Rule 45 subpoenas to use solely in the instant litigation and not in any other lawsuit, investigation or proceeding; and

3. Award such other and further relief as the Court deems just and proper.

## CERTIFICATE OF CONFERRAL

I certify that Mr. Floyd conferred with counsel for Plaintiff regarding the relief requested in this Motion via emails dated August 19–20, 2025, on which I was copied and counsel for Plaintiff advised it would oppose the motion but refused to provide any basis for doing so when explicitly asked.

## CERTIFICATE OF WORD COUNT

Undersigned counsel for Defendants certifies per L.R.7.1.(F) that this motion and memorandum contains 6,856 words.

August 27, 2025                    Respectfully submitted,


                                   **REINER & REINER, P.A.**
                                   *Counsel for Atrius Development Group Corp.,*
                                   *Malcolm Brown, and Lea Andreoli*
                                   9100 South Dadeland Boulevard, Suite 901
                                   Miami, Florida   33156-7815
                                   Tel: (305) 670-8282; Fax: (305) 670-8989
                                   *dpr@reinerslaw.com;eservice@reinerslaw.com*


                                   By:_____
                                   **DAVID P. REINER, II**; FBN 416400

## <u>CERTIFICATE OF SERVICE</u>

*I HEREBY CERTIFY that on **August 27, 2025**, I filed the foregoing with the Clerk of the Court via CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.*

By:_____

**DAVID P. REINER, II**; FBN 416400