## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**RARE BREED TRIGGERS, et al.**
**Plaintiffs.**

  **-vs-**                        CASE NO. 1:25cv181-RH-MAF

**BIG DADDY ENTERPRISES, et al.**
**Defendants.**

---

### Defendants' Motion For Reconsideration of Order Denying Defendants' Motion For Protective Order (ECF 106-1) and Alternative Request For Certification

---

Defendants Atrius Development Group Corp., Malcolm Brown, Lea Andreoli, Big Daddy Enterprises, Inc., Big Daddy Unlimited, Inc., BlackStock, Inc., Wide Open Enterprises, LLC, We Got Ammo, Inc., Performance Triggers, Inc., Sherrie McKnight, Anthony McKnight, Douglas Rios, Christopher Rios, (collectively the "Defendants") hereby file this Motion for Reconsideration of Defendants' Motion for Protective Order (ECF 106-1)[1]. Specifically, Defendants seek reconsideration of this Court's Order ECF 107, and prior related orders (including ECF 59, 97), to the

---

[1] Originally filed as ECF 100 and subsequently corrected.

extent they denied protection against discovery. Alternatively, Defendants request certification under 28 U.S.C. § 1292(b) for interlocutory appeal of the Court's Order.

Here, Defendants respectfully assert that proceeding to merits discovery, while jurisdiction and arbitrability remained undecided constituted a violation of Defendant's due process rights. This is especially true where Defendants did not receive proper notice prior to the hearing, with the exception of the defunct corporate defendants. Moreover, no protective order is in place to guard Defendants' highly private, confidential, and trade secret information.

In its September 8, 2025 Order ECF No. 107, the Court appeared to reach the conclusion that Rare Breed's broad, sweeping Rule 45 subpoenas designating an email address as the place of compliance were not facially invalid for failure for comply with the Rule's geographical limitation. Nor were the subpoenas held to be invalid in light of Rare Breed's evidently intentional failure to provide defense counsel with adequate notice prior to their issuance to dozens of third parties. Thus, and only to the extent the Court determines that reconsideration of its Order is inappropriate, Defendants seek certification of the controlling questions of law set forth herein. In support, Defendants state:

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Relevant background facts were recited in ECF 112-1 and Defendants' motions regarding protection against discovery (ECF 54, 57, 58, 62, 78, 106-1) which are incorporated herein by reference.

## II.    GROUNDS FOR RECONSIDERATION

### A.    <u>Legal Standard</u>

Defendants request this Court reconsider its September 8, 2025 Order (the "Order") denying Defendants' Motion for Protective Order because reconsideration is necessary to correct clear errors and manifest injustice. Courts have recognized that "the need to correct clear error or manifest injustice" is one of three grounds justifying reconsideration. *Florida College of Osteopathic Medicine, Inc. v. Dean Witter Reynolds, Inc.*, 12 F.Supp.2d 1306, 1308 (M.D. Fla. 1998). "This ordinarily requires a showing of clear and obvious error where the interests of justice demand correction." *McGuire v. Ryland Grp., Inc.*, 497 F. Supp. 2d 1356, 1358 (M.D. Fla. 2007) (citation omitted)

### B.    <u>Denial of Protection was Clear Error</u>

The Court denied Defendant's Emergency Motion for Protective Order on the ground that nonparties had produced documents "without objection." However, Defendants repeatedly moved for protection against discovery (ECF 54, 57, 58, 62, 78, 100), citing ongoing disputes over jurisdiction, arbitration, and confidentiality.

Shortly after appearing, Defendants moved to stay the case and with it discovery. ECF 49, 55. A few days later, Rare Breed notified Defendants that it intended to serve 31 third-party subpoenas, each about a dozen pages in length. Before Defendants had an opportunity to draft objections and requests of their own, they discovered that RB had already started serving the subpoenas *the morning after* notifying Defendants at 8 pm the night before. Defendants immediately filed an emergency motion to quash the subpoenas. ECF 57. Defendants noted in that motion that they were denied due process. Now that the Court has held Atrius–Idaho was the intended defendant, none of the defendants (other than defunct companies) were served.

The Court ordered an abbreviated briefing schedule and a hearing on the emergency motions. ECF 59. The Court stated, "remarkably, the defendants chose not to attend." Implicitly, Court seemed to hold that the parties received notice indirectly–through receipt of a complaint against their defunct companies. However, Rule 4 requires personal service on each defendant, and even actual notice does not suffice. *Lucas v. Desilva Auto Servs*., No. 1:16-cv-790, 2017 U.S. Dist. LEXIS 7102, at *1, *5–6 (S.D. Ohio Jan. 18, 2017) (service on corporation operating at the same address does not also constitute service on individual owning business); *Melchor-Garcia v. Dong Ying Corp.,* No.12-22217-civ-lenard, 2012 U.S. Dist. LEXIS 177377, at *1, *2–3 (S.D. Fla. Dec. 14, 2012) ("Just because a defendant is aware

of the complaint does not relief a plaintiff of the burden of effectuating proper service on the defendant."); *Brown v. CoreCivic, Inc*., No. 4:18-cv-2044, 2018 U.S. Dist. LEXIS 192207, at *1 (N.D. Ohio Nov. 9, 2018) (service on company does not count as service on owners); *Lennon v. McClory*,  3 F. Supp. 2d 1461, 1463 (D.D.C. 1998) (both the officer and the corporation must be served in accordance with Rule 4).

It is undisputed that Malcolm Brown and Lea Andreoli were not served until July 10, 2025. ECF No 45–46.  The registered agent for Blackstock, Inc., was served on July 7, 2025, and Defendants BDE, BDU, and Performance Triggers (all of which are dissolved entities) were served the next day on July 8, 2025. ECF Nos. 20, 21–23.  Defendants Tony McKnight, Sherri McKnight, Douglas Rios, Christopher Rios, Wide Open Enterprises, and We Got Ammo were not served until July 30, 2025.  It follows logically, then, that at least six Defendants were denied due process in that the Court refused to vacate or alter the scheduling order despite the fact that these Defendants were served ***after*** the scheduling conference had taken place.  And still others had a mere 48 hours to find and retain counsel to represent them.  By the transitive property, several Defendants—having no notice of the lawsuit to begin with—were further denied due process in that the scheduling order allowing discovery to open was set at the unilateral discretion of Rare Breed.  *In re Gaime*, 17 F.4th 1349, 1354 (11th Cir. 2021) (standing for the proposition that a fundamental requisite of due process of law is the opportunity to be heard at a meaningful time

and in a meaningful manner). The Court then refused to vacate or alter the scheduling order to allow the Defendants an adequate opportunity to be heard or otherwise give their input as to the discovery.

Defendants filed an emergency motion to disqualify Bellamy and explained why he should not have access to discovery. ECF 62. The Court denied the motion *sua sponte* because Defendant had failed to confer with opposing counsel. Defendants re-urged the motion. ECF 78. Ultimately, the Court ruled the motion was moot, despite the fact that Bellmay still access to Defendants' confidential information.

Because RB continued taking discovery, Defendants filed an emergency motion for protection. ECF 100 (8.27.25). Defendants' emergency motion noted, among other things, that "Plaintiff's numerous Rule 45 subpoenas are particularly inappropriate as this Court has not yet determined whether it has subject matter jurisdiction or personal jurisdiction over the Moving Defendants. *Id.* at ¶ 31. At that time, Defendants noted that where jurisdiction is lacking, the Court is "without power to do anything in the case" and that requiring third parties to comply with Plaintiff's broad subpoenas while that motion was pending imposes the sort of undue burden Rule 26(c) is designed to prevent. *Id.* Nonetheless, the Court permitted discovery to continue for weeks before ultimately issuing a stay on or about September 8, 2025. In that time, Rare Breed obtained countless documents that were

either irrelevant or improperly pertained to the merits of the case while the jurisdictional issues set forth herein were undecided.

A hearing on Defendant's emergency motion was held on August 13, 2025, where the Court found the need to further consider its ruling.

As it stands, Plaintiff has received: personal bank records for Lea Andreoli for the last 4 years (*See* Lea Andreoli Bank Records, Ex. 1); bank records for Performance Triggers for the last 4 years (*See* Performance Triggers Bank Records, Ex. 2); Fed Ex records for every package sent of received by Defendants for the last 3 years (*See* Fed Ex Records, Ex. 3); and highly confidential documents pertaining to trigger designs (*See* Trade Secret Trigger Designs, Ex. 4)[2]. Plaintiffs have taken the position that the information may be distributed freely and publicly. Indeed, DeMonico included some of the production attached to his declaration. ECF 103-2.

Defendants have done everything they can to implore the Court to protect this highly sensitive, highly private, and trade secret information from public disclosure, disclosure to RB, and disclosure to Bellamy. This is especially unfair for Brown and Andreoli who are not subject to personal jurisdiction in this forum. Yet, their personal banking records and all Fed Ex package records for the past 3 to 4 years are

---

[2] Pursuant to Local Rule 5.5(B), the Exhibits referred herein are being filed under seal as they contain confidential information pursuant to Florida Statute 119.

now publicly available.  Discovery should not have been allowed on defendants not subject to the Court's jurisdiction, especially without a protective order in place.

It is true that Courts maintain discretion in regulating discovery. *See Patterson v. U.S. Postal Serv.*, 901 F.2d 927, 929 (11th Cir. 1990). Notwithstanding this, "courts have routinely stayed discovery into the underlying **merits** of the case when a motion to compel arbitration has been filed in good faith." *Johnson v. Whaleco, Inc.*, No. 5:23-CV-403-GAP-PRL, 2023 U.S. Dist. LEXIS 178500, 2023 WL 6292691, at *1 (M.D. Fla. Sept. 27, 2023) (emphasis added); *Antwi v. United States*, 349 F.Supp.2d 663, 669 (S.D.N.Y. 2004) ("The obligation that courts must resolve threshold questions of jurisdiction. . . before proceeding to consider the merits of a claim at any stage of a proceeding is 'inflexible and without exception'."). And even when discovery is authorized, it is an abuse of discretion for a court to refuse adequate protection of confidential documents, particularly those pertaining to financial information or trade secret information.

This is perhaps best evidenced by the Eighth Circuit's holding in *In Re Remington Arms. Co*., 952 F.2d 1029 (8th Cir. 1991).  In that case, John Hartman sued Remington as the result of an incident in which Hartman's Remington Model 700 rifle allegedly discharged while Hartman was unloading the gun.  *Id.* at 1030. In Hartman's requests for production, he sought information about Remington's "New Bolt Action Rifle" (NBAR) program.  Remington objected to the request for

NBAR documents, contending that they are confidential, highly proprietary trade secrets. *Id.* During a telephonic conference with the district court, Hartman's counsel raised the issue of the discoverability of the NBAR documents. *Id.* Remington argued that a protective order could not guard against unauthorized disclosure of NBAR documents and that it should not be required to produce them for discovery. *Id.* at 1031.

The district court then instructed Remington to produce the NBAR documents, and to "make up a protective order." *Id.* When Remington asked for an opportunity to brief the issue before the court entered an order directing Remington to produce said NBAR documents, the district court judge instructed Remington to "go ahead and produce them." *Id. at* 1031. Remington then filed a motion for a protective order that discovery into the NBAR documents was inappropriate, arguing that disclosure of NBAR documents not be ordered because, among other things, they are trade secrets and Remington would suffer irreparable harm if the documents were disclosed. *Id.* Remington also requested that the court review the NBAR documents *in camera* to determine whether they are in fact trade secrets. *Id.* The district court denied Remington's motion for a protective order and directed Remington to produce NBAR documents without *in camera* review. *Id.*

The Eighth Circuit overturned that decision, noting that the district court effectively ordered the production of documents following a brief teleconference

9

without affording Remington the opportunity to demonstrate that the documents contain trade secrets and that disclosure would be harmful. *In re Remington Arms Co*., 952 F.2d at 1033. On remand, the district court was instructed to afford Remington the opportunity to show that the disputed documents contained trade secrets.[3] The Eight Circuit further remarked that discovery should be denied unless Hartman established the relevance of the trade secrets to his case. *Id.*

Perhaps most relevant to the case at hand, the appellate court held that "If Hartman makes these showings [that the NBAR documents are relevant], **it is incumbent upon the district court to utilize its authority to issue an appropriate protective order to safeguard the rights of the parties**." *Id.* (citing *Seattle Times v. Rhinehart*, 467 U.S. 20, 34, 81 L. Ed. 2d 17, 104 S. Ct. 2199 (1984) (emphasis added). The Eighth Circuit proceeded to enumerate a list of considerations relevant to drafting a protective order for the discovery of trade secrets:

First, use of the discovered information should be limited to the particular lawsuit in which it has been shown to be both relevant and necessary to the prosecution of the case. Second, the protective order should limit the persons who are given access to the trade secrets. Third, the protective order should limit, or prohibit entirely, the reproduction of all confidential documents. Fourth, the protective order may require a bond to protect against the risk of injury from the disclosure of the trade secrets.

---

[3] The district was also instructed that it "probably should, given the highly charged relationship that has developed between the parties" examine the documents *in camera* in deciding this threshold question. *In re Remington Arms Co.,* 952 F.2d at 1033.

Finally, the protective order may designate an attorney to serve as a custodian for all
confidential documents.

*In re Remington Arms Co*., 952 F.2d at 1033 (internal citations omitted).[4]  *Remington*

therefore stands for the proposition that where a Defendant's highly sensitive and

trade secret information is at stake, a district court ***must*** utilize its authority to issue

an appropriate protective order to safeguard the same.[5]  The tenets of *Remington* set

forth above comport with Florida law, which states that when ordering the disclosure

of a trade secret, courts must "take protective measures that the interests of the holder

of the privilege, the interests of the parties, and the furtherance of justice requires."

Fla. Stat. § 90.506.

All considered, Defendants respectfully assert that the Court abused its

discretion by holding a scheduling hearing without Defendants receiving prior notice

as required by Rule 4.  This error was compounded by the Court's subsequent refusal

to enter a protective order or stay discovery pending a determination on the gateway

---

[4] The Eight Circuit further expressed concern about the effectiveness of a protective
order in that case, as Remington had contended that Hartman's counsel violated the
express terms of protective orders in past cases involving Remington. *In re
Remington Arms Co*., 952 F.2d at 1033.

[5] Defendants note that their Emergency Motion for Protective Order contemplates
the five considerations promulgated by the *Remington* court. That is, Defendants
requested that their confidential information be limited to use in this litigation alone,
and further adamantly objected to Glenn Bellamy's participation in this case where
he had previously violated the terms of a protective order involving these same
Defendants.

issues of arbitration and jurisdiction. In the interest of correcting the clear errors set forth above, and to prevent the manifest injustice that would result from the continued unprotected divulgence of Defendant's highly private, confidential, and trade secret information, Defendants respectfully urge the Court to grant this Motion for Reconsideration.

## III.    REQUEST FOR CERTIFICATION UNDER § 1292(b)

An interlocutory appeal is warranted.  Section 1292(b) allows certification of orders involving controlling questions of law with substantial ground for difference of opinion where immediate appeal may materially advance termination of the litigation.  28 U.S.C. § 1292(b); *see also McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1257 (11th Cir. 2004).  As set forth in detail below, each criterion is readily satisfied in this case. The matters warranting resolution on appeal are as follows:

1.    Due Process: Whether it was proper for the Court to hold a scheduling conference, establish a scheduling order, and set merits discovery into motion notwithstanding proper service over all Defendants.

2.    Discovery/Protective Relief: Whether merits discovery may proceed— and confidential documents compelled—while jurisdiction and arbitrability remain undecided presents a controlling procedural question.

3.    Rule 45 geographical limitation: By denying Defendants' Motion to Quash and allowing Plaintiff to retain documents produced by non-parties, the Court

effectively ruled that Rare Breed's subpoenas were not facially invalid. This is despite the fact that the foregoing subpoenas designated an email as the place of compliance. Thus, it is necessary to determine, upon appellate review, whether a Rule 45 subpoena that designates an email address as the place of compliance is facially invalid because it violates the Rule's 100-mile geographical limitation.

4.    Rule 45 prior notice requirement: In the same spirit, the Eleventh Circuit must decide whether a subpoena sent to opposing counsel less than 24 hours before it is issued complies with the prior notice requirement of Rule 45.

Resolution of these controlling questions of law now will avoid wasteful discovery and materially advance the termination of this litigation.

A.    The Order involves a controlling question of law

The first requirement under section 1292(b) is that the appeal sought involves a "controlling question of law." As the Eleventh Circuit explained in *McFarlin*, section 1292(b) was "intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *McFarlin*, 381 F.3d at 1259. Expanding on this requirement, the Eleventh Circuit noted that resolution of the controlling question of law should have wider applicability beyond

the bounds of the case at hand, and answering it now would bring efficiencies to the

litigation:

> The legal question must be stated at a high enough level of abstraction
> to lift the question out of the details of the evidence or facts of a
> particular case and give it general relevance to other cases in the same
> area of law. And the answer to that question must substantially reduce
> the amount of litigation left in the case.

*Id.*; *see also Figueroa v. Wells Fargo Bank N.A.*, 382 B.R. 814, 824 (S.D. Fla. 2007)

("An issue is characterized as a controlling question of law if it deals with a question

of 'pure' law, or matters that can be decided quickly and cleanly without having to

study the record.") (citing *McFarlin*, 381 F.3d at 1258, 1260-62).

In this case, the questions of which Moving Defendants seek immediate

review meet all of the criteria of a controlling question of law. The first question is

whether it was proper for the Court to hold a scheduling conference, establish a

scheduling order, and set discovery into motion prior to the date that most

Defendants had been served. The second question presented is whether discovery

may proceed—and confidential documents compelled—while jurisdiction and

arbitrability remain undecided presents a controlling procedural question. The third

question is whether Rare Breed's Rule 45 subpoenas run afoul of the Rule's 100-

mile geographical limitation. And the fourth is whether Rare Breed's act of

submitting its defective third-party subpoenas to defense counsel less than 24 hours

before they were issued constitutes prior notice under Rule 45. An appeal of these four issues would not involve the Court of Appeals in "the details of the evidence or facts of a particular case," but instead could be decided "quickly and cleanly" without reference to any factual disputes. *See McFarlin*, 381 F.3d at 1258.

Furthermore, appellate resolution of the questions presented by the Order would certainly have "general relevance to other cases in the same area of law." Insofar as the first issue presented for appeal, courts must often confront due process considerations when deciding whether to conduct a scheduling conference and establish a docket control order prior to service upon all Defendants. *Howell v. BMW Germany*, No. 19-00347, 2020 U.S. Dist. LEXIS 96160, at *2 (D. Haw. May 7, 2020) (differentiating between status conference and scheduling conference where not all parties had been served); *Tyau v. Jaddou,* No. 23-00332 DKW, 2024 U.S. Dist. LEXIS 59506, at *7 (D. Haw. Feb. 27, 2024) ("To date, the lack of service has interfered with the Court's ability to manage its docket as the Court continued the Rule 16 Scheduling Conference three times."). Accordingly, the first issue is generally relevant to not only other cases in the same area of law, but virtually all cases involving multiple Defendants, given that a scheduling conference is often one of the first actions taken in any federal case.

Proceeding to the second issue, Rare Breed's broad—and defective—Rule 45 subpoenas sought information that went to the merits of its breach of contract

claims.[6]  It is undisputed that this discovery was ongoing (and very well may still be ongoing) while Defendants' Motion to Compel Arbitration and Corrected Motion to Dismiss were pending before the bench.  Indeed, this issue is far from novel, and courts have wrestled with the notion that merits discovery is inappropriate where threshold issues of personal jurisdiction are pending.  *See Victoria's Secret Stores Brand Mgmt. v. Bob's Stores*, LLC, No. 2:13-cv-1261, 2014 U.S. Dist. LEXIS 34503, at *6 (S.D. Ohio Mar. 17, 2014) ("Staying merits discovery is consistent with the Court's pronouncement above that discovery must not 'undermine the due process considerations that personal jurisdiction is designed to protect.'") (internal citations omitted); *see also Chudasama v. Maza Motor Corp*., 123 F.3d 1353, 1367 (11th Cir. 1997) (standing for the proposition that a district court abuses its discretion when it does not decide a likely meritorious motion to dismiss challenging the legal sufficiency of a claim ***before*** discovery begins).

Other courts have also addressed whether merits discovery is appropriate pending resolution of a motion to compel arbitration.  *See Falcon v. TelevisaUnivision Digit., Inc*. No.  8:23-cv-2340-TPB-JSS, 2024 U.S. Dist. LEXIS 26326, at *4 (M.D. Fla. Feb. 15, 2024) (staying discovery pending resolution of

---

[6] Rare Breed's defective Rule 45 subpoenas sought bank records, shipping records, and confidential trigger designs all of the purpose of attempting to show that Defendants were "circumventing" the Settlement Agreement.

Defendant's motion to compel arbitration); *Bufkin v. Scottrade, Inc.*, 812 F. App'x 838, 842 (11th Cir. 2020) (finding that magistrate judge did not err in staying discovery after taking "preliminary peek" at motions to compel arbitration and dismiss and determining "that they were likely meritorious and dispositive of the case"); *Shireman v. Tracker Marine, LLC*, No. 3:18-cv-740-J-34MCR, 2018 U.S. Dist. LEXIS 249383, 2018 WL 11482799, at *2 (M.D. Fla. Nov. 30, 2018) (permitting discovery to proceed in a case that may be subject to arbitration could "frustrate one of the purposes underlying arbitration, namely, the inexpensive and expedient resolution of disputes and the easing of court congestion") (quoting *Geopolymer Sinkhole Specialist, Inc. v. Uretek Worldwide Oy*, No. 8:15-cv-01690-CEH-JSS, 2016 U.S. Dist. LEXIS 12945, 2016 WL 4769747, at *1 (M.D. Fla. Feb. 3, 2016)).  Thus, time and again, courts are asked to decide whether parties are permitted to delve into merits discovery before the court has even determined its own power to hear the case.  That question is not unique to this litigation.  It arises with frequency, it consumes judicial resources, and it risks manifest injustice if jurisdiction is later found wanting.  It follows that the first issue presented for interlocutory appeal therefore reaches beyond this case and deserves prompt and authoritative resolution by the Eleventh Circuit.

Insofar as the third issue—whether a Rule 45 subpoena that designates an email address as the place of compliance is violative of the Rule's geographical

limitation—resolution of this question would apply to countless other cases across the nation. With the rise of electronic communication and the routine use of email for transmitting documents, courts are increasingly called upon to determine how Rule 45's geographical limitations apply in the digital age. *See, e.g., Hernandez v. Kolkman*, 347 F.R.D. 551, 557 (D. Utah 2024); *but compare Haniff v. Clear Blue Ins. Co.*, No. 6:23-cv-1065-JSS-EJK, 2024 U.S. Dist. LEXIS 201712, at *3 (M.D. Fla. Oct. 29, 2024) ("Moreover, Defendant has not provided the Court with authority for the proposition that the production of documents can be made to an email address to avoid application of the 100-mile geographical limit rule.").

Some judges take the approach that electronic production negates the concerns behind the 100-mile limitation in Rule 45. *Black v. Boomsourcing, LLC*, No. 2:22-mc-696, 2023 U.S. Dist. LEXIS 13108, at *6 (D. Utah Jan. 24, 2023). Others hold the opposite, remarking that ignoring the geographic limitations of Rule 45 runs contrary to the text of the rule, contrary to the Advisory Committee Notes, and purports to "somehow move[] a trial to the physical location of the testifying person." *Broumand v. Joseph*, 522 F. Supp. 3d 8, 10 (S.D.N.Y. Feb. 27, 2021). Given the split in authority across districts, it is clear that resolution of the geographical limitation question would generally apply to other cases in the same area of law.

Building on the foregoing, the fourth issue addresses the prior notice requirement of Rule 45. A cursory search reveals dozens of cases addressing the same, many of which arise in federal district courts in this circuit. *Dongguan Saienchuangke Tech Co., Ltd. v. Individuals*, No. 24-CV-60865-MD/AOV, 2024 U.S. Dist. LEXIS 242490, *6 (S.D. Fla. Dec. 5, 2024); *Smith v. Ga. Energy USA, LLC*, No. CV208-020, 2013 U.S. Dist. LEXIS 204850, *1 (S.D. Ga. Oct. 30, 2013); *Charlemagne v. Alibayof*, No. 20-cv-62043-SMITH, 2021 U.S. Dist. LEXIS 258627, at *1 (S.D. Fla. Nov. 11, 2021). This in mind, there is little doubt that other cases in the same area of law would benefit from appellate resolution of the fourth issue.

B.    There is substantial ground for difference of opinion.

The second requirement under section 1292(b) is that there be substantial ground for difference of opinion regarding the question presented for review. The Eleventh Circuit has framed this requirement as whether "there is substantial dispute about the correctness of any of the pure law premises the district court actually applied in its reasoning leading to the order sought to be appealed." *McFarlin*, 381 F.3d at 1259. In *Figueroa v. Wells Fargo Bank N.A.*, the Southern District of Florida stated that the party seeking review "must show that at least two courts interpret the relevant legal principle differently," and that "[i]f there is no controlling authority, the district court may consider authority from other circuits." *Figueroa*, 382 B.R. at

824; *see also Aurelius Capital Master, Ltd. v. Tousa Inc.*, No. 08-61317-CIV, 2009 WL 6453077, at *15 (S.D. Fla. Feb. 6, 2009) (substantial ground for difference of opinion present when "at least two courts interpret the relevant legal principle differently"). In this case, a substantial ground for difference of opinion exists because there is no controlling authority for the questions upon which Moving Defendants seek review.

Turning first to the issue of due process, there is substantial grounds for difference in opinion in deciding whether it is proper to set a hold a scheduling conference, establish a docket control order, and set discovery into motion all while several Defendants to an action had not been served. The undersigned is unable to locate any caselaw lending credence to the notion that is proper to conduct a scheduling conference less than 30 days after a complaint is filed and before all Defendants have been served or appeared through counsel. However, this Court's own Order subject of this Motion is evidence that reasonable minds may disagree. ECF No. 107. Of the few courts that do address the due process considerations of the first issue, most opt to continue the Rule 16 Scheduling Conference until after the defendants had been served. *See, e.g., N. Face Apparel Corp. v. 4USEDtrailers.com,* No:18-61329-CIV, 2018 U.S. Dist. LEXIS 238684, at *4 (S.D. Fla. June 18, 2018) (entering scheduling order stating that Plaintiff is ordered to serve and file returns of service on *all* Defendants promptly and at least 14 days prior

to the Planning and Scheduling Conference) (emphasis added); *Howell v. BMW Germany*, No. 19-00347, 2020 U.S. Dist. LEXIS 96160, at  *2 (D. Haw. May 7, 2020) (choosing to hold a status conference instead of a Rule 16 scheduling conference where Defendants had not been served, even where counsel for one defendant had made a limited appearance); *see also Carter v. Jackson*, No. 1:23-cv-01775-KES-SAB, 2024 U.S. Dist. LEXIS 92782, at *12 (E.D. Cal. May 23, 2024) ("Judicial economy precludes holding a scheduling conference while seven of eight Defendants have not been served or have not appeared."); *see Liamas v. Velocity Ready Mix LLC*, No. 22-cv-02605-KAS, 2024 U.S. Dist. LEXIS 237420, at *1 (May 1, 2024) (D. Colo. May 1, 2024) (vacating originally set scheduling conference because the defendants had not been served); *Burst v. M/V Xing Xi Hai*, No. 20-374-JWD-SDJ, 2022 U.S. Dist. LEXIS 117438, at *4 (M.D. La. July 5, 2022) (noting that  expedited discovery is not the norm, particularly where most parties remain unserved and none have appeared).  Because due process is inextricably intertwined with proper service, the Eleventh Circuit could well find that Defendants' due process rights were violated when the Court conducted the scheduling conference, set discovery into motion, and declined to vacate or otherwise modify the scheduling order after Defendants had appeared through counsel.  *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (holding Constitutional due process requires that service of process provide notice reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.)

Proceeding to the second issue, Courts have arrived at different approaches when deciding whether merits discovery may proceed while the court's jurisdiction remains undecided. Some answer in the affirmative, endorsing the view that allowing merits discovery to move forward even while jurisdictional motions are pending is consistent with the spirit of judicial economy. *See, e.g., Bridgestone Americas, Inc. v. IBM*, No. 3:13-cv-1196, 2016 U.S. Dist. LEXIS 205368, at *15 (M.D. Tenn. July 6, 2016); *Charvat v. NMP, LLC*, No. 2:09-CV-209, 2009 U.S. Dist. LEXIS 96083, at *2 (S.D. Ohio Sept. 30, 2009).

But many, if not most, other courts take the approach that proceeding to merits discovery undermines due process considerations that personal jurisdiction is designed to protect. *See Victoria's Secret Stores Brand Mgmt.*, 2014 U.S. Dist. LEXIS 34503, at *6. The Southern District of Florida has noted that "courts have routinely stayed discovery into the underlying merits of the case when a motion to compel arbitration has been filed in good faith." *Lacroix v. Lejeune Auto Wholesale, Inc.*, 2020 U.S. Dist. LEXIS 189772, 2020 WL 6059765, at *3 (S.D. Fla. Oct. 14, 2020) (Torres, J.) (quoting *Morat v. Cingular Wireless LLC*, 2008 U.S. Dist. LEXIS 127474, 2008 WL 11336388, at *2 (M.D. Fla. Feb. 14, 2008) (Klindt, J.)); *see also Fiorentino v. Unipersonale*, No. 23-cv-21089-ALTMAN, 2023 U.S. Dist. LEXIS

240209, at *3 (S.D. Fla. Nov. 23, 2023) ("[I]f the case is still before us after we resolve those jurisdictional issues, we'll enter a scheduling order setting a timeline for merits discovery."); *Intertec Contracting Turner Steiner Int'l, S.A.,* No. 98 CIV. 9116 (CSH), 2001 U.S. Dist. LEXIS 9950, at *7 (S.D.N.Y. July 18, 2001) (stating that the general practice of district courts is to impose a stay of discovery while a motion to compel arbitration is pending).  And this approach appears to be endorsed by courts sitting in the Third Circuit. *Skalde v. Lemieux Grp., L.P.*, No. 3:20-cv-2039, 2021 U.S. Dist. LEXIS 86539, at *6 (M.D. Penn. May 6, 2021) ("While many of these cases arise exclusively in the context of a motion to dismiss, the United States Court of Appeals for the Third Circuit has also suggested that broad merits discovery should be stayed pending the resolution of any motion to compel arbitration.") (citations omitted).

Moreover, other courts have concluded that a stay of discovery is appropriate while jurisdiction and arbitrability remain unresolved, reasoning that these threshold issues should be decided before the parties incur the expense of merits discovery. *See Alexander v. Take-Two Interactive Software, Inc.*, No. 3:18-CV-966-SMY-MAB, 2019 U.S. Dist. LEXIS 84516, at *3 (S.D. Ill. May 20, 2019) (citing cases approving merits discovery stay in the context of qualified immunity).  And at least one court has held that discovery should be limited to the issue of jurisdiction while a motion to dismiss for lack of personal jurisdiction is pending, citing concerns that permitting

merits-based discovery would unduly burden the defendant. *See Orchid Biosciences, Inc. v. St. Louis University,* 198 F.R.D. 670, 675 (S.D. Cal. 2001).

For the aforementioned reasons, an appellate court may very well find there is substantial ground for disagreement as to whether discovery should have proceeded, while arbitrability and jurisdiction were undecided. Courts are increasingly treating the issue as one of procedure, effectively reasoning that that any inquiry beyond the jurisdiction of the court to hear the case would unduly burden the Defendant, while at the same time driving up costs for all parties involved. Further, an appellate court may determine that a protective order was appropriate so as to preserve Defendants' due process considerations pending the resolution of these threshold issues. *In re Remington Arms. Co*., 952 F.2d 1029. Accordingly, there is substantial grounds for difference of opinion with respect to the first issue.

Nestled within this Court's Order denying Defendant's Emergency Motion for Protective Order lies an implicit holding that the Rule 45 subpoenas of which Defendants complain are not facially—and fatally—defective. Put succinctly, Defendants have pointed out that Rare Breed's myriad Rule 45 subpoenas request production at an email address in an apparent attempt to override Rule 45's 100-mile geographical limitation.

District courts are split as to whether a Rule 45 subpoena that requests document production via email runs afoul of Rule 45's geographical limitation. Indeed, some courts take the position that electronic production negates the concerns behind the 100-mile limitation in Rule 45. *Curtis v. Progressive N. Ins. Co.*, No. CIV-17-1076, 2018 U.S. Dist. LEXIS 100047, at *5-6 (W.D. Okla. June 13, 2018) (unpublished) (finding no violation of the 100-mile limitation where the subpoena requested electronic production); *Frick v. Henry Indus., Inc.*, No. 13-2490, 2016 U.S. Dist. LEXIS 164562, at *9 (D. Kan. Nov. 29, 2016) (unpublished) ("[C]ourts in this district have repeatedly acknowledged that where a subpoena does not require attendance of any witnesses, but only production of documents, there is no violation of the 100-mile limitation of Rule 45."); *Premier Election Sols., Inc. v. Systest Labs Inc.*, No. 09-cv-1822, 2009 U.S. Dist. LEXIS 94193, at *8-9 (D. Colo. Sept. 22, 2009) (collecting cases in support of holding that Rule 45's 100-mile limitation is inapplicable where the subpoena does not require physical attendance).

But several others take the convincing approach that Rule 45 lacks any explicit exception to the rule with respect to email:

> Rule 45 contemplates the voluntary production of documents via email outside of the "100-mile rule" where the parties agree to such a compromise. *See* Fed. R. Civ. P. 45(c)(2), Advisory Committee Notes, 2013 Amendment. "Under the current rule, parties often agree that production, particularly of electronically stored information, be transmitted by electronic means . . . and nothing in these amendments limits the ability of parties to make such arrangements." *Id.* But

> while Rule 45 leaves room for ***voluntary*** compromise around the 100-mile rule, it lacks any explicit exception to the rule with respect to email. Given the ubiquity of email in modern communication, to create an exception under which documents that can be produced via email are not subject to the rule's geographical limitations would entirely swallow the "100-mile rule" set forth within Rule 45.

*Dou v. Carillon Tower/Chi.LP*, No. 18-CV-7865, 2020 U.S. Dist. LEXIS 166585, at *5 (N.D. Ill. Sept. 11, 2020) (emphasis added); *see also Highground Holdings, LLC v. MMR Constructors, Inc*., No. 22-148-BAJ-RLB, 2022 U.S. Dist. LEXIS 176897, at *10 (M.D. La. Sept. 29, 2022) (rejecting idea that Rule 45 allows production by mail or email anywhere).  Having established that district courts are divided as to the geographical limitation issue set forth above, it is clear that there are substantial grounds for difference of opinion such that appellate resolution thereof would apply generally to other cases in the same area of law.

Reaching now the final issue, courts are sharply divided as to whether third party subpoenas sent to defense counsel within 24 hours of their issuance comply with the prior notice requirement of Rule 45.  Some courts read the rule less strictly, refusing to quash subpoenas where the opposing party has received notice of the subpoena in time to raise objections *and* has not been prejudiced by the violation. *See, e.g.*, *Bofi Federal Bank v. Erhart*, 2016 WL 1644726, at *5 (S.D. Cal. Apr. 26, 2016) (service of notice of subpoena concurrently with service of the subpoena "fulfills the purpose of Rule 45(a)(4) to notify all parties of the subpoena"); *Francis*

26

*v. US Airways, Inc*., 2015 WL 12778642, at *2 (S.D. Fla. Sept. 30, 2015) (declining to grant motion to quash based on defendants' failure to comply with Rule 45(a)(4) where plaintiff "ultimately received" the subpoenas and "was able to timely submit his objections to Defendants and this Court").

Nonetheless, many courts tilt in the opposite direction, stating that same day notice is insufficient under the Rules  *See, e.g., Fox Industries, Inc. v. Gurovich*, No. 03-CV-5166, 2006 U.S. Dist. LEXIS 73035, 2006 WL 2882580, *11 (E.D.N.Y. Oct. 6, 2006); *Usov v. Lazar*, No. 13-civ-818, 2014 U.S. Dist. LEXIS 122735, at *36 (E.D.N.Y. Aug. 22, 2014) ("By his own admission, Plaintiff provided copies of the subpoenas the same day as they were mailed to the non-party recipients, effectively giving MLI's counsel little to no notice."); *Cootes Drive LLC v. Internet Law Library*, Inc., No. 01-CV-9877, 2002 U.S. Dist. LEXIS 4529, 2002 WL 424647, *2 (S.D.N.Y. Mar. 19, 2002) (holding that the requirement that prior notice must be given "has important underpinnings of fairness and efficiency."). I n light of the aforementioned caselaw, it is clear that there is substantial ground for difference of opinion as to whether it is sufficient to provide opposing counsel less than 12 hours notice of a Rule 45 subpoena, particularly where said subpoena requires compliance less than 30 days upon receipt.

C.    <u>An immediate appeal would materially advance the ultimate termination of litigation</u>

The final requirement that the controlling question of law "may materially advance the ultimate termination of the litigation" is a straightforward one.  This inquiry simply requires an examination of whether the resolution of the controlling legal question "would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin v. Conseco Services, LLC*, 381 F.3d at 1259.  If the appeal "could shorten the time, effort and expense of the litigation," the appeal would materially advance the ultimate termination of the litigation. *Id.*

Appellate review of whether merits discovery may proceed while arbitrability remains undecided would materially advance this litigation because it would determine whether Plaintiff may retain, copy, and rely on the documents it obtained during that interim period. If the Eleventh Circuit agrees that compelling production before resolution of arbitrability was improper, those materials should be returned or destroyed, immediately narrowing the evidentiary record and eliminating claims and defenses that flow from the same.  That ruling would not only reduce the scope of the present case but also prevent satellite disputes over the use, dissemination, and potential sealing of those materials throughout the litigation.

This same analysis holds true with respect to the Rule 45 issues presented herein.  If those issues are resolved in Defendants' favor, Plaintiff's ability to rely on

documents obtained through facially defective subpoenas would likely be foreclosed. That would remove from the case large volumes of materials—banking records, shipment data, and technical designs—that potentially form the backbone of Plaintiff's claims, thereby narrowing or even eliminating key causes of action. Together, these rulings would substantially reduce the scope of discovery and shorten the path to a final resolution of the case, thereby satisfying § 1292(b)'s requirement that interlocutory review materially advance the ultimate termination of the litigation.

## CONCLUSION AND PRAYER

For these reasons, Defendants respectfully request that the Court:

1.    Grant reconsideration of its September 8, 2025 Order (ECF 107) and related orders (including ECF 59 and 97) insofar as they denied Defendant's request for protective relief and permitted merits discovery to proceed despite the unresolved jurisdictional motions; or

2.    In the alternative, certify for interlocutory appeal under 28 U.S.C. § 1292(b) the two controlling questions of law identified above; and

3.    Grant such other relief, whether in law or in equity, to which Defendants may be justly entitled.

## CERTIFICATE OF CONFERRAL

I certify that Mr. Floyd conferred with counsel for Plaintiff regarding the relief requested in this Motion via emails dated September 30, 2025, on which I was copied and counsel for Plaintiff advised it would oppose the motion.

## CERTIFICATE OF WORD COUNT

Undersigned counsel for Defendants certifies per L.R. 7.1.(f) that this Motion and memorandum contains 6,754 words.

Respectfully submitted,

**REINER & REINER, P.A.**
*Counsel for Atrius Development Group Corp.,*
*Malcolm Brown, and Lea Andreoli*
9100 South Dadeland Blvd., Suite 901
Miami, Florida  33156-7815
Tel: (305) 670-8282; Fax: (305) 670-8989
dpr@reinerslaw.com; eservice@reinerslaw.com

By:
**DAVID P. REINER, II, ESQ.**; FBN 416400


s/ *Michael J. Smith*
Michael J. Smith
Texas Bar No. 24037517
**THE FOWLER LAW FIRM P.C.**
3301 Northland Drive, Suite 101
Austin, Texas 78731
Tel. No.: (512) 441-1411
Email: msmith@thefowlerlawfirm.com

*Attorney for Defendants Big Daddy Enterprises, Inc., Big Daddy Unlimited, Inc., Blackstock, Inc., Wide Open Enterprises, LLC, We Got Ammo, Inc., Performance Triggers Inc., Anthony Mr. McKnight, Sherrie Mr. McKnight, Douglas Rios, and Christopher Rios*

## CERTIFICATE OF SERVICE

*I HEREBY CERTIFY that on **October 2, 2025**, I filed the foregoing with the Clerk of the Court via CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.*

By: _____

**DAVID P. REINER, II**; FBN 416400