UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

| | |
|---|---|
| RARE BREED TRIGGERS, INC., a Texas corporation,<br><br>*Plaintiff*,<br><br>v.<br><br>BIG DADDY ENTERPRISES, INC., *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-00181-RH-MAF<br><br><br><br><br><br>Judge Robert L. Hinkle<br>Magistrate Judge Martin A. Fitzpatrick |

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS C&C HOLDINGS GROUP, LLC, ANDREW MYERS, AND DELTA 7 LLC AND ALLOWING DISCOVERY ON FINAL DAMAGES**

Pursuant to Federal Rule of Civil Procedure 55, Plaintiff Rare Breed Triggers, Inc., by and through its undersigned counsel, hereby moves for entry of default judgment against Defendants C&C Holdings Group, LLC ("C&C"), Delta 7 LLC ("Delta 7"), and Andrew Myers (collectively, "Defendants") and for discovery on final damages. The Clerk entered default against C&C, Myers, and Delta 7 on October 3, 2025. (ECF Nos. 119, 120, 121.) C&C failed to plead or otherwise defend against the aiding-and-abetting-fraud claim by September 1, 2025, when its time to do so expired. (ECF No. 67.) Both Myers and Delta 7 failed to plead or otherwise defend against the aiding-and-abetting-fraud claim by September 1, 2025, when their time to do so expired. (ECF Nos. 73, 74.)

1

Defendant C&C has still not filed anything with this Court. Defendants Myers and Delta 7 have since filed a motion to set aside the Clerk's entry of default and an amended version of that motion. (ECF Nos. 124, 127). Nonetheless, entry of judgment is warranted because Rule 55's prerequisites were satisfied, service on Defendants was proper, and, by failing to respond, Defendants admitted to the Complaint's factual allegations, thereby establishing their liability for facilitating circumvention of the Settlement Agreement and this Court's Permanent Injunction.

**INTRODUCTION**

Under FRCP 55, when a properly served defendant fails to plead or otherwise defend within the time allowed, the Court may enter default judgment and treat the complaint's well-pleaded allegations as admitted. Here, C&C was served on August 8, 2025; its response deadline—August 29, 2025—expired without pleading or appearance, and the Clerk entered default on October 3, 2025. The admitted allegations establish that C&C directed and controlled Defendant Performance Triggers during its continued FRT sales. Indeed, C&C was named President of Performance Triggers on August 15, 2023. C&C knowingly aided and abetted their co-Defendants' scheme to continue selling prohibited FRT devices by using Performance Triggers as a front, configuring and operating domains

2

(including performancetriggers.com), redirecting traffic, and processing sales during the injunction and settlement period.

Myers and Delta 7 were served on August 9, 2025; their response deadline—September 1, 2025—expired without any pleading or appearance; and the Clerk entered defaults against both on October 3, 2025. The admitted allegations establish that Myers and Delta 7 knowingly aided and abetted their co-Defendants' scheme to continue selling prohibited FRT devices by forming and using Delta 7 as a front, configuring and operating domains (including wot15.com and beararmsoutfitters.com), redirecting traffic, and processing sales during the injunction and settlement period.

Moreover, as explained below, RBT's service on C&C and Delta 7 fully complied with the requirements of FRCP 4 and Florida law, and its service on Myers complied with those statutes to the greatest extent reasonably practicable. Accordingly, the Court should enter default judgment against C&C, Myers, and Delta 7, issue a permanent injunction mirroring the existing prohibitions binding the parties to the Settlement Agreement, and award monetary relief within the scope of the pleadings after damages discovery and an evidentiary hearing.

## FACTUAL BACKGROUND

On July 1, 2025, Plaintiff Rare Breed Triggers, Inc. ("RBT") filed this action to enforce a Settlement Agreement that prohibits Defendants Big Daddy

Enterprises, Inc. ("BDE"), Big Daddy Unlimited, Inc. ("BDU"), Blackstock, Inc., Wide Open Enterprises, LLC, We Got Ammo, Inc., Performance Triggers, Inc., Anthony McKnight, Sherrie McKnight, and Douglas Rios (collectively, the "Settling Defendants")—and their agents and co-conspirators, including Defendants C&C Holdings Group, LLC ("C&C"), Delta 7 LLC ("Delta 7") and Andrew Myers—from manufacturing, marketing, or selling forced reset trigger ("FRT") units or parts. (ECF No. 1, Complaint ("Compl.").) Specifically, RBT asserts claims for breach of contract, fraud, and aiding-and-abetting fraud based on Defendants' scheme to falsely represent compliance with the Settlement Agreement and Permanent Injunction while continuing to sell prohibited FRTs through newly formed entities and websites. (Compl. ¶¶ 10, 37, 51–52, 69, 84–95, 114, 117, 119, 121, 123, 153–164.) As alleged in the Complaint, Defendants knowingly joined and substantially assisted that scheme. (*Id.*)

C&C is a Delaware limited liability company. (ECF No. 66-5.) The Complaint alleges that C&C—President of Performance Triggers as of August 15, 2023—directed and controlled Defendant Performance Triggers during its continued FRT sales. (Compl. ¶¶ 10, 69.) Performance Triggers was used to circumvent the obligations of Anthony McKnight and Douglas Rios to desist manufacture, import, market, or sale of prohibited FRTs, while concealing direct involvement. (Compl. ¶ 66.) Moreover, it was during C&C's reign as President

that Performance Triggers moved its principal place of business at 4505 Kenny Road, #1102, [Columbus] Ohio 43220, an address that belongs to a Staples office supply store. (Compl. ¶ 70.) Defendants attempted to conceal that Performance Triggers' address was actually a Staples office supply store by listing its principal place of business as Kenny, Ohio, which does not exist. (*Id.*)

In 2023, Performance Triggers began selling the infringing "Atrius Select Fire FRT," explicitly marketing it as a three-position FRT that eliminated trigger reset functionality—directly contravening the Settlement Agreement's prohibitions. (Compl. ¶ 75.) Throughout 2023 and into 2025, Performance Triggers manufactured and produced infringing triggers such as the three-position WOT and Selektor triggers—components substantially identical to those previously adjudicated as infringing, and falling within the Settlement Agreements definition of an FRT. (Compl. ¶ 80.)

Service was made on C&C on August 8, 2025. (ECF No. 67.) Under the applicable deadlines, C&C's response was due by August 29, 2025. (ECF 67.) C&C failed to appear or otherwise defend, and on October 3, 2025, the Clerk entered default against it. (ECF 120.)

Myers—the sole member and registered agent of Delta 7—coordinated with Defendants Anthony McKnight and Douglas Rios to create and operate the online sales and payment infrastructure used to market, sell, and ship prohibited FRT

devices and parts during the injunction period. (Compl. ¶¶ 37, 51–52, 84–95, 114, 117, 119, 121, 123, 153–164.) Acting in concert with the Settling Defendants, Myers and Delta 7 maintained this system to facilitate ongoing infringing sales. (*Id.*)

On or about July 14, 2022, Myers filed articles of organization for Delta 7, which functioned as a front entity for the Settling Defendants' ongoing FRT operations. (Compl. ¶¶ 84–85.) He later amended Delta 7's corporate filings to list 9200 NW 39th Ave., Suite 130, Box 3556, Gainesville, Florida—the same physical and mailing address used by the infringing websites wot15.com and beararmsoutfitters.com. (*Id.* ¶¶ 86, 90.) Myers operated or controlled those sites, as well as mid-tierdefense.com, to advertise and sell infringing FRT models such as the Wide Open Trigger ("WOT") and "Super Safety AR-15 Trigger." (*Id.* ¶¶ 87–90.)

The Complaint further alleges that Myers handled the technical infrastructure for these sites, including payment processing and routing protocols, which were critical to concealing and sustaining the ongoing sales. (Compl. ¶ 91.) Settling Defendants sold FRT units to Myers for cash, allowing them to avoid detection and the restrictions imposed by the Settlement Agreement. (*Id.* ¶¶ 87, 93, 114.) Delta 7 generated well over $100,000 in profits before its voluntary dissolution on July 22, 2024, after nearly two years of unlawful activity. (*Id.* ¶¶ 11,

94.) Myers's coordination with McKnight and Rios through Delta 7 and the use of concealed hosting arrangements were central to the Settling Defendants' broader scheme to evade the Court's injunction and the Settlement Agreement. (*Id.* ¶ 95.)

On July 7, 2025, RBT first attempted to serve Myers personally at his last known address of 693 SW Hamlet Circle, Lake City, Florida 32024. (Declaration of Anthony J. Fusaro, Jr. ("Fusaro Decl.") ¶¶ 2–4.) That attempt was unsuccessful, as Myers' younger brother Aaron Myers advised Myers no longer lived there and denied knowing his whereabouts. (*Id.*) That same day, RBT attempted service on Delta 7 LLC at 881 SW Brookdale Drive, Lake City, Florida 32025 —the registered agent address (i.e., Andrew Myers) listed on Delta 7's most recent annual report filed with the Florida Department of State. (Fusaro Decl. ¶¶ 5–6.) The resident advised that he had moved in roughly three months earlier and did not know Myers or his whereabouts. (*Id.*)

After these unsuccessful attempts, RBT retained licensed private investigator Frank Curcio to conduct an independent search for the new addresses for both Myers and Delta 7. (Fusaro Decl. ¶ 7; Declaration of Frank Curcio ("Curcio Decl.") ¶¶ 1–5.) Mr. Curcio reviewed Delta 7's Articles of Dissolution, which confirmed that attorney Richard Markow was designated to "wind up" the company's affairs and that Delta 7 had no members. (*Id.* ¶ 5.) Because the Articles listed a Gainesville, Florida office for Mr. Markow, Mr. Curcio attempted service

7

at that location. (*Id.* ¶¶ 6–7.) The process server could not locate Mr. Markow at the address, found no exterior or interior signage identifying it as his office, and learned that the suite was actually sublet from another attorney, Jose Moreno. (*Id.* ¶ 7.) Mr. Moreno and his staff explained that Mr. Markow was not present, that there was no expectation of his return, that he was "usually in Bradenton," and that he only came to the office "on and off." (*Id.*)

Without any chance of serving Mr. Markow at the Gainesville law office, Mr. Curcio conducted additional research and identified Mr. Markow's residence at 3514 Big Sky Way, Bradenton, Florida 34211. (Curcio Decl. ¶¶ 9–11.) On August 9, 2025, Mr. Curcio subcontracted a process server to deliver the summons and complaint for both Myers and Delta 7 to Mr. Markow's wife, Maryann Markow, at that residence. (Curcio Decl. ¶¶ 10–11; ECF 73, 74.)

Under the applicable deadlines, Myers and Delta 7's responses were due by September 1, 2025. (ECF 73, 74.) Neither Defendant appeared or responded, and on October 3, 2025, the Clerk entered default against both. (ECF 119, 121.) Defendants later moved on October 20, 2025, to set aside the defaults, arguing that service was defective because (1) the proofs of service referenced a subpoena form rather than a summons; (2) RBT made "no attempt whatsoever" to serve Myers individually; (3) neither Richard nor Maryann Markow had authority to accept service on Myers's behalf; and (4) service on Delta 7 was invalid because RBT

8

allegedly failed to first attempt service on its registered agent, Myers. These arguments are addressed in RBT's opposition to Defendants' motion.

RBT now seeks entry of default judgment based on Defendants' failure to respond after being properly served. Consistent with its allegations, RBT requests (1) a permanent injunction against C&C, Delta 7, and Myers mirroring the injunction imposed on the Settling Defendants, and (2) monetary relief including compensatory, consequential, and reliance damages, as well as restitution arising from C&C, Delta 7, and Myers's unlawful conduct in aiding and abetting the Settling Defendants' fraud. (Compl. ¶¶ 10, 11, 14–15, 37, 51, 120, 164–65; Compl. Prayer ¶¶ 1–4.)

## LEGAL STANDARD

FRCP 55 authorizes the entry of default and default judgment when a party fails to plead or otherwise defend against a complaint. *See* Fed. R. Civ. P. 55(a), (b)(2). Once default is entered, the well-pleaded factual allegations of the complaint regarding liability are deemed admitted, except those pertaining to damages. *See Alternative Materials, LLC v. Monroe*, No. 5:20-CV-239-AW/MJF, 2023 WL 3776251, at *3 (N.D. Fla. Apr. 24, 2023), *report and recommendation adopted sub nom. Alternative Materials, LLC v. TCH Constr. Grp., Inc.*, No. 5:20-CV-239-AW-MJF, 2023 WL 5532161 (N.D. Fla. Aug. 28, 2023) (citing *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015)).

FRCP 4(e) provides that "service of process is valid if the state law procedure for effecting service is followed." *Cordell Funding, LLLP v. Jenkins*, No. 11-80988-CIV, 2013 WL 12080922, at *2 (S.D. Fla. Jan. 30, 2013), *report and recommendation adopted,* No. 11-80988-CIV, 2013 WL 12080908 (S.D. Fla. Mar. 4, 2013) (citing Fed. R. Civ. P. 4(e)(1)).

Under Florida law, service of process may be completed by personally delivering the summons and complaint to the person being served or by leaving those documents at the person's usual residence with someone who lives there and is at least fifteen years old. Fla. Stat. Ann. § 48.031(1)(a).

## ARGUMENT

### I. The Court should enter default judgment against C&C.

On August 8, 2025, C&C was served through its registered agent Resident Agents Inc., which is authorized by appointed to receive service of process for C&C (ECF No. 67), and which complied with FRCP 4(e). *See* Fla. Stat. Ann. § 48.062(2) (permitting service on LLC through its registered agent); Del. Code Ann. tit. 6, § 18-105 (same). C&C has still not made any filing with this Court, despite Defendants' counsel advising on October 14, 2025, (1) that he was retained by C&C to represent it and (2) that a motion to set aside C&C's default be filed. Fusaro Decl. ¶ 8.

II. **The Court should enter default judgment against Delta 7 because, after a good-faith attempt to serve its registered agent, RBT properly served its designated liquidator, who was also the last person listed in its articles of dissolution.**

If a Florida LLC has been dissolved and its registered agent cannot be located or served after a good-faith effort, process may be served on anyone identified in the company's most recent annual report or on the individual appointed to wind up its affairs as liquidator, trustee, or receiver. Fla. Stat. §§ 48.062(3); 48.101(3)(b).

As with service on an individual, substitute service on a dissolved LLC may be effected by leaving the process with a resident at the home of its registered agent, listed representative, or designated liquidator, provided that person is at least fifteen years old. *See Adan v. Bermudez*, No. 1:19-CV-20825-KMM, 2019 WL 13237715, at *2 (S.D. Fla. May 22, 2019) ("[B]oth individuals and LLCs can be served pursuant to Florida Statute Section 48.031, which authorizes substitute service"); *see, e.g.*, *Kinsale Ins. Co. v. Siddhi Hosp. Orlando, LLC*, No. 6:23-CV-1046-PGB-EJK, 2024 WL 3342141, at *4 (M.D. Fla. June 21, 2024), *report and recommendation adopted*, No. 6:23-CV-1046-PGB-EJK, 2024 WL 3757750 (M.D. Fla. July 8, 2024) (granting a motion for default judgment where an LLC was served through the spouse of the registered agent at their shared address).

Here, RBT properly served Delta 7 after first attempting service on its registered agent, Andrew Myers, at the address listed in the company's most recent

annual report. (Fusaro Decl. ¶¶ 5–6.) When the resident confirmed Myers no longer lived there, RBT retained licensed investigator Frank Curcio to locate an alternative authorized recipient. (*Id.* ¶ 7.) The investigator identified attorney Richard Markow as the individual named in Delta 7's Articles of Dissolution to wind up its affairs. (Curcio Decl. ¶ 5.) After finding Markow's listed Gainesville office closed and effectively abandoned, the investigator located his residence in Bradenton. (*Id.* ¶¶ 6–11.) On August 9, 2025, Mr. Curcio engaged a process server to deliver the summons and complaint to Markow's wife, Maryann Markow. (Curcio Decl. ¶¶ 9–11; ECF 73, 74.)

That service was valid because it was left at the liquidator's residence with a co-occupant of suitable age. Fla. Stat. Ann. §§ 48.031(1)(a), 48.062(3), 48.101(3)(b); *Adan*, 2019 WL 13237715, at *2; *Kinsale*, 2024 WL 3342141, at *4. Thus, RBT satisfied each statutory step required by Florida law: it first attempted service on Delta 7's registered agent, then properly served its liquidator. *See* Fla. Stat. Ann. §§ 48.062(3), 48.101(3)(b) ("In addition to the persons listed in s. 48.062(3), service on a dissolved domestic limited liability company may be made on the person appointed as the liquidator, trustee, or receiver").

Accordingly, because Delta 7 was properly served yet failed to appear or respond by the September 1, 2025 deadline, the Court should enter default judgment against Delta 7.

### III. The Court should enter default judgment against Myers because RBT's diligent, good-faith efforts at service substantially complied with FRCP 4(e) and Florida law.

The Eleventh Circuit has recognized that FRCP 4 "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *See Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 900 (11th Cir. 1990) (internal quotations and citation omitted). Because the object of service is to ensure notice and an opportunity to defend, service reasonably calculated to reach the defendant satisfies due process. *See Shurman v. Atl. Mortg. & Inv. Corp.*, 795 So. 2d 952, 953 (Fla. 2001) ("It is well settled that the fundamental purpose of service is to give proper notice to the defendant in the case that he is answerable to the claim of plaintiff and, therefore, to vest jurisdiction in the court entertaining the controversy") (internal quotations and citation omitted); *see also Cruz v. Citimortgage, Inc.*, 197 So. 3d 1185, 1189 (Fla. Dist. Ct. App. 2016); *Conde v. Pro. Mediquip of Fla., Inc.*, 436 So. 2d 322, 323 (Fla. Dist. Ct. App. 1983).

Here, RBT satisfied these standards when serving Myers. After unsuccessful attempts to serve Myers at his last known addresses, RBT retained licensed investigator Frank Curcio to locate him and confirm his residence. (Fusaro Decl. ¶ 7.) After confirming that prior service attempts at Myers's last known and registered addresses were unsuccessful, Mr. Curcio conducted an independent

search for new addresses and determined that Myers no longer resided at the location listed in Delta 7's corporate filings. (Curcio Decl. ¶¶ 4–5.)

Upon reviewing Delta 7's Articles of Dissolution, Mr. Curcio identified attorney Richard Markow—the individual designated to wind up Delta 7's affairs—as the appropriate contact for service. (Curcio Decl. ¶ 5.) Mr. Curcio's investigation revealed that Mr. Markow's Gainesville office was closed and effectively abandoned, with staff confirming that Markow was "usually in Bradenton" and only visited the office "on and off." (*Id.* ¶ 7.) Mr. Curcio then located Mr. Markow's residence at 3514 Big Sky Way, Bradenton, Florida 34211, and engaged a process server to complete service by delivering copies of the summons and complaint for both Myers and Delta 7 to Mr. Markow's wife, Maryann Markow, a co-resident of suitable age and discretion. (Fusaro Decl. ¶ 7; Curcio Decl. ¶¶ 9–11; ECF 73, 74.)

Given Myers's dual role as Delta 7's registered agent and principal, service at the residence of the company's designated liquidator was reasonably calculated to provide actual notice. *See Sanderford*, 902 F.2d at 900; *Shurman*, 795 So. 2d at 953; *Cruz*, 197 So. 3d at 1189. Neither Myers nor Delta 7 has denied receiving notice or alleged prejudice from the method of service. (*See* ECF No. 127.)

Because RBT exercised due diligence, effected substitute service at a residence reasonably connected to Myers's business and personal interests, and

achieved the notice required by Rule 4(e) and Florida Statute § 48.031(1)(a), service on Myers was proper or, at minimum, substantially compliant. Accordingly, entry of default judgment under Rule 55 is within the Court's discretion.

> **IV.     The Complaint states a valid claim for aiding and abetting fraud against C&C, Delta 7, and Myers because its allegations show that they knowingly and substantially assisted the Settling Defendants' fraudulent conduct.**

As stated above, once default is entered, the well-pleaded factual allegations of the complaint regarding liability are deemed admitted. *See Monroe*, 2023 WL 3776251, at *3 (citing *Surtain*, 789 F.3d at 1245).

To state a claim for aiding and abetting fraud under Florida law, a plaintiff must allege the: "(1) existence of the underlying fraud; (2) knowledge of the fraud; and (3) the defendant provided substantial assistance to the commission of the fraud." *Gilison v. Flagler Bank*, 303 So. 3d 999, 1002 (Fla. Dist. Ct. App. 2020).

Here, RBT's Complaint satisfies each element of aiding and abetting fraud against C&C, Delta 7, and Myers. The Complaint alleges—and Defendants' defaults concede—the existence of an underlying fraudulent scheme. The Settling Defendants misrepresented to RBT and the Court that they had ceased manufacturing and selling FRTs while continuing those operations through newly formed entities and concealed websites. (Compl. ¶¶ 37, 51–52, 84–95, 114, 117, 119, 121, 123, 153–164.) Those misrepresentations were material, intentional, and

15

designed to evade the Court's Permanent Injunction and Settlement Agreement. (*Id.*)

C&C, Myers, and Delta 7 knew of that fraud and joined it. As President of Performance Triggers, C&C directed and controlled Defendant Performance Triggers during its continued FRT sales. (Compl. ¶¶ 10, 69.) Performance Triggers was used to circumvent the obligations of Anthony McKnight and Douglas Rios to desist manufacture, import, market, or sale of prohibited FRTs, while concealing direct involvement. (Compl. ¶ 66.) Moreover, it was during C&C's reign as President that Performance Triggers moved its principal place of business to Ohio with an address that would mask the address being merely a Staples office supply store. (Compl. ¶ 70.)

Myers—the sole member and registered agent of Delta 7—worked directly with McKnight and Rios, the central actors in the Settling Defendants' scheme, to create and operate a front entity and web infrastructure for selling prohibited FRTs. (Compl. ¶¶ 84–95, 114, 117, 119, 121, 123, 153–57.) He personally filed articles of organization for Delta 7 on July 14, 2022, then amended its filings to list 9200 NW 39th Ave., Suite 130, Box 3556, Gainesville—the same address used by the infringing websites wot15.com and beararmsoutfitters.com. (*Id.* ¶¶ 85–86, 90.) He handled the payment routing and hosting infrastructure essential to maintaining those sites. (*Id.* ¶ 91.) Myers's participation cannot be viewed as incidental: he

operated the same domains that redirected to new sales platforms once prior sites were discovered, reflecting knowledge of both the injunction and the need to conceal ongoing violations. (*Id.* ¶¶ 88–90, 117, 121, 156.)

The allegations also establish substantial assistance. Indeed, C&C was not some hapless employee of Performance Triggers but instead its President. (Compl. ¶¶ 10, 69.) During C&C's role as President in 2023 and into 2025, Performance Triggers manufactured and produced infringing triggers such as the three-position WOT and Selektor triggers—components substantially identical to those previously adjudicated as infringing, and falling within the Settlement Agreements definition of an FRT. (Compl. ¶ 80.)

Myers and Delta 7 provided the technical and transactional infrastructure that enabled the Settling Defendants to continue selling enjoined triggers. (Compl. ¶¶ 87–95, 157.) They operated and redirected websites—including wot15.com, beararmsoutfitters.com, and mid-tierdefense.com—to sustain and disguise sales of prohibited FRT products such as the Wide Open Trigger and the "Super Safety AR-15 Trigger." (*Id.* ¶¶ 87–90, 117.) Myers processed payments and purchased FRTs for cash to resell, directly facilitating the Settling Defendants' evasion of the injunction. (*Id.* ¶¶ 87, 93, 114, 156–57, 160.) Through those acts, Delta 7 generated at least $100,000 in profits before dissolving on July 22, 2024. (*Id.* ¶¶ 11, 94.)

Taken together, these admitted facts show that C&C, Myers, and Delta 7 knowingly joined, materially advanced, and profited from the Settling Defendants' ongoing fraud. Their coordination with McKnight and Rios, use of shared addresses and websites, cash transactions, and deliberate obfuscation of sales channels collectively satisfy each element of aiding and abetting fraud. Accordingly, the Complaint states a valid claim, and entry of default judgment is warranted.

### V. Plaintiff should be afforded to take discovery on final damages.

Should the Court enter default judgment, Plaintiff should be entitled to discovery on final damages. *TracFone Wireless, Inc. v. Technopark Co.*, 281 F.R.D. 683, 691 (S.D. Fla. 2012) (ruling that "post-default discovery is permissible"); *Svetlick v. Lucius,* Case No. 08–61525–CIV, 2009 WL 1203925 (S.D.Fla. May 1, 2009) (granting default final judgment and permitting the plaintiff to take additional discovery to determine damages).

### CONCLUSION

For the foregoing reasons, Plaintiff RBT respectfully requests that this Court enter default judgment against Defendants C&C Holdings Group, LLC, Delta 7 LLC and Andrew Myers, and permit Plaintiff to take discovery to determine damages.

Dated: November 12, 2025                Respectfully submitted,

By: */s/ Josiah Contarino*
    Josiah Contarino (Admitted PHV)
    Jacob William Roth (Bar No. 1036551)
    Anthony J. Fusaro, Jr. (Admitted PHV)
    **DHILLON LAW GROUP, INC.**
    1601 Forum Place, Suite 403
    West Palm Beach. FL, 33401
    415-433-1700
    jcontarino@dhillonlaw.com
    jroth@dhillonlaw.com
    afusaro@dhillonlaw.com

By: */s/ Glenn D. Bellamy*
    Glenn D. Bellamy
    **WOOD HERRON & EVANS LLP**
    600 Vine Street, Suite 2800
    Cincinnati. Ohio 45202
    gbellamy@whe-law.com

    *Attorneys for Plaintiff*
    *Rare Breed Triggers, Inc.*

## LOCAL RULE 7.1(F) CERTIFICATION

Undersigned counsel for Plaintiffs RBT and ABC IP certifies that this memorandum complies with Local Rule 7.1(F) because it contains 3947 words, excluding those portions exempted by the rule.

## LOCAL RULE 7.1(B) CERTIFICATION

The undersigned counsel for Plaintiffs certifies that on November 12, 2025, counsel for Plaintiffs corresponded with counsel for Defendants, to advise of Plaintiffs' intent to file the present motion and to ask whether Defendants would

oppose. Counsel for Defendants responded that he did not believe there was a basis for the motion because opposition to Defendants' amended motion to set aside default had not yet been filed and a ruling thereon not yet entered.

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.1(F)(1), this filing will served through the electronic filing system and will be received by counsel for Defendants.

*/s/     Josiah Contarino*
Josiah Contarino