# Exhibit 1 – Arbitration Interim Preliminary Injunction Award (Filed Under Seal)

**JAMS ARBITRATION**

**RARE BREED TRIGGERS, INC.**

    **Claimant,**

v.                                           **REFERENCE NO. 5460002403**

**BIG DADDY ENTERPRISES, INC. ET AL.**

    **Respondent.**

_____/

**INTERIM PRELIMINARY INJUNCTION AWARD**

This matter is before the undersigned arbitrator, Dorian Damoorgian, pursuant to the order dated Sept. 15, 2025, compelling arbitration and setting procedures entered by United States District Court Judge Robert L. Hinkle in Rare Bread Triggers, Inc. v. Big Daddy Inc. et al.; Case No 1:25cv181-RH-MAF/N.D. Fla.

Claimant, Rare Breed Trigger, Inc. (Rare Breed) filed its Notice of Request for Appointment of Emergency Arbitrator and Order Prohibiting Conduct In Violation of Settlement Agreement Pursuant to JAMS Rule 2(C). The parties stipulated that the request for a preliminary injunction and arbitration shall be administered by JAMS under the JAMS Comprehensive Arbitration Rules and Procedures. Pursuant to the pre-hearing scheduling order, an evidentiary hearing was held on January 12th, 2026 during which both sides were given the opportunity to present evidence in support of their respective claims and defenses. The arbitrator reviewed the filings in this matter, considered the testimony of the witnesses and the exhibits introduced into evidence, and made the appropriate credibility determinations as to the evidence presented. Based upon the foregoing, the following interim Preliminary Injunction Award is issued:



Rare Breed claims that Performance Triggers, Inc. (Performance) is under the ownership, direction, and control of the respondents Anthony McKnight, Sherrie McKnight, (collectively "McNights") and Douglas Rios. Performance manufactures and sells several forced reset trigger (FRT) models and parts that may be used in an FRT. It is further alleged that the McNights and Rios used Performance as a straw man or alter ego to conceal their violation of a covenant not to produce or sell FRTs or parts that may be used in an FRT. The prohibition against engaging in such activities is set forth in the Confidential Settlement Agreement ("Agreement") entered into between the parties. (Exhibit P.3) Rare Breed seeks a preliminary injunction stopping the McNights and Rios from continuing to manufacture or sell FRTs or parts that may be used in an FRT.

Respondents counter that the FRTs they are manufacturing and/or selling through Performance are not FRTs as that term is defined in the Agreement. Alternatively, respondents argue that Rare Breed cannot satisfy the requirements for preliminary injunctive relief because it has not suffered and will not suffer irreparable harm; there is an adequate remedy at law; Rare Breed is not likely to succeed on the merits of its claims; and an injunction in this instance is against public policy.

**Issue 1. Did Respondents violate the Confidential Settlement Agreement.**

At issue is whether the McKnights and Rios, violated the Agreement which is the subject of the aforementioned federal litigation. It is undisputed that respondents entered into the Agreement. The Agreement provides, at paragraph 11, that "[d]efendants agree to no longer produce or sell Forced Reset Triggers or parts that can be used as part of Forced Reset Triggers." The language is clear and unequivocal – The McNights and Rios each agreed not to produce or sell FRTs or any part that could be used in an FRT.

Rare Breed presented the testimony of Brian Luettke. It is undisputed that Luettke is qualified to give an expert opinion on whether the products manufactured and/or sold by Performance were in fact FRTs as that term is defined in the Agreement. Luettke opined that the following products manufactured and/or sold by Performance; to wit: The Disruptor (manufactured by Partisan Triggers); Super Selektor; 3 Position Forced Reset Safety for AR-15; Super Safety Kit; and Taurus TX22 each fall within the definition of an FRT as that term is defined at paragraph 3 of the Agreement. Respondents did not present their own expert or other evidence to rebut all or part of this testimony.

As further evidence that respondents were producing and selling FRTs, Rare Breed introduced a photo (Exhibit P.22) showing a side-by-side view of the components of The Disruptor model and Rare Breed's model FRT-15L3. To the naked eye The Disruptor appears to be a direct copy of the FTR-15L3. Equally compelling is the caveat contained within Performance's website listing states that prohibit the sale of FRTs, as well as representing The Disrupter as a "Drop-In Forced Reset Trigger System".

Finally, the evidence established that the McNights and Rios used Performance as a vehicle to conceal that which they agreed not to do. Not to be overlooked, Rios himself admitted he was prohibited from producing or selling FRTs.

Based upon the foregoing, Rare Breed has established that the McKnights and Rios, individually and collectively, through Performance violated the terms of the Agreement by producing and selling FRTs and/or parts that could be used in an FRT.

**Issue 2. Requirements for Injunctive Relief**.

It is axiomatic that a party seeking preliminary injunctive relief must establish: (1) irreparable harm; (2) no adequate remedy at law; (3) injunctive relief is not against public policy; and (4) there is a substantial likelihood of success on the merits. Respondents claim Rare Breed cannot satisfy these requirements.

**Irreparable Harm**: The Agreement provides a presumption that a violation of its terms constitutes irreparable harm. Florida law allows for such a presumption and creates a burden shifting mechanism. In other words, once the presumption is established the burden shifts to the opposing party to establish no irreparable harm. Federal law requires the moving party to establish irreparable harm. Although neither party expressly argued the application of one standard over the other, under either standard, the evidence established that respondents' actions have and will continue to cause Rare Breed irreparable harm through price erosion and the loss of brand loyalty. The testimony of Rare Breed's president, Lawrence DeMonico, established that there is a significant price differential between the respective products at issue because Rare Breed has invested significant time and money establishing the legality of FRT's as well as enforcing its patent against individuals and entities producing FRTs, which infringe on its FRT patent rights. See U.S. v. Rare Breed Triggers LLC, et al., 1:23-cv-00369 (E.D.N.Y.) and National Association for Gun Rights, Inc., et al. v. Garland, et al., Case No. 4:23-cv-830 (N.D. Tex. Aug. 9, 2023). Rare Breed invested time and money in creating a legal FRT product market. Respondents presented no evidence that they contributed to this effort. Were respondents allowed to continue to manufacture and sell FRTs at a much lower price, it is unrealistic to think that Rare Breed, with its production cost structure, could compete against a much lower priced competitor. Further, it stands to reason that with the significant price differential brand loyalty will be greatly affected as consumer

expectation would gravitate to the lower cost product. For these reasons, Rare Breed has established that it has and will continue to suffer irreparable harm without injunctive relief.

**Adequate Remedy at Law**: Respondent's generally argue that Rare Breed has an adequate remedy at law by virtue of the liquidated damages clause in the Agreement. Respondents provide no authority for their position. Enforcement of the liquidated damages clause and any claim for liquidated damages are not before this arbitrator. Nonetheless, the claim that a liquidated damages clause provides an adequate remedy at law is rejected given the history behind Rare Breed's development of the FRT market, and the significant price differential which has and will continue to erode Rare Breed's ability to sell its products in the FRT marketplace.

**Public policy**: Respondents' argument that issuing a preliminary injunction and compelling them to do what they agreed to do in the first place is against public policy. Given the totality of the evidence, public policy favors issuing a preliminary injunction against the respondents because doing so will promote fair competition, discourage unlawful behavior which creates an unfair market advantage, and promote innovation through the enforcement of patent rights.

**Likelihood of Success on the Merits**: Considering this arbitrator's finding that respondents willfully violated their contractual obligations by manufacturing and selling FRTs, Rare Breed has established it is likely to succeed on the merits.

The undersigned arbitrator finds that Claimant, Rare Breed Triggers, Inc., has established by a preponderance of the evidence that it is entitled to preliminary injunctive relief.

Based upon the foregoing findings and conclusions, pursuant to JAMS Rule 2(c), Anthony McKnight, Sherrie McKnight, Douglas Rios, and Performance Triggers, Inc., their officers, agents,

directors, affiliates, legal representatives, employees, successors, heirs, assigns, individually or collectively:

> Are prohibited from engaging in the manufacture or sale of forced reset triggers, or any parts that could be used in a forced reset trigger, including, but not limited, to the: (1) Partisan "The Disruptor"; (2) Super Selektor ; (3) 3 Position Forced Reset Safety for AR-15; (4) Super Safety Kit; and (4) Taurus TX22, until otherwise ordered by this Arbitration Tribunal.

For purposes of compliance or enforcement, the parties may disclose the content of this Interim Preliminary Injunction Award to notify those individuals and/or entities that may be required to comply with the prohibitions contained herein.

After having considered the evidence presented and being otherwise fully advised in the premises, this preliminary injunction is issued without the imposition of security by Rare Breed, without prejudice to respondents to move for such relief.

The Arbitrator retains jurisdiction to enter further relief including, but not limited to liquidated damages, costs, and attorney's fees pursuant to the terms of the Agreement.

Date: January 20, 2026.

/s/Dorian K. Damoorgian
Hon. Dorian Damoorgian (Ret.)
Arbitrator