**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| RARE BREED TRIGGERS, INC., a Texas corporation,<br><br>*Plaintiff*,<br><br>v.<br><br>BIG DADDY ENTERPRISES, INC., et al.,<br><br>*Defendants*. | Case No. 1:25-cv-00181-RH-MAF |

**MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS AND THIRD PARTIES SHOULD NOT BE HELD IN CONTEMPT AND FOR MODIFICATION OF PRELIMINARY INJUNCTION**

Plaintiff Rare Breed Triggers, Inc. ("RBT") respectfully moves pursuant to Fed. R. Civ. P. 70(e), the Court's preliminary injunction entered on March 16, 2026 (the "Injunction"), and the Court's inherent authority for an order:

1) Requiring Defendants Anthony McKnight, Sherrie McKnight, Performance Triggers, Inc. ("Performance Triggers") (together, the "Enjoined Defendants"), Christopher Rios, C&C Holdings Group LLC ("C&C"), and third-parties Reginald Robinson, Bump Cerakoting and More, Inc. ("Bump"), and High Kaliber Studios, Inc. ("HKS") (all together, the "Contemnors") to show cause why they are not in contempt

of Court based on their ongoing violations of the Injunction and scheduling a show-cause hearing; and

2) Permitting RBT to conduct expedited discovery to ascertain the scope of the contempt by the Contemnors in violation of the Injunction, the role of any further parties or non-parties in assisting the Enjoined Defendants' violations of the Injunction, and to determine the amount of damages and relevant additional injunctive relief to be awarded to RBT as a result of the violations;

3) Modifying the Injunction to expand its scope beyond the Enjoined Defendants to the other Contemnors, freeze the assets of the Contemnors, and appoint a Receiver and a Special Master to ensure that the Contemnors cannot continue to thwart the Court's authority and harm RBT through further violations of the Injunction.

Pursuant to Local Rule 7.1(L), RBT requests the Court modify the Injunction on an emergency basis. The Contemnors' violations of the Injunction are causing present irreparable harm to RBT and will continue unless the Injunction is expanded appropriately. For this reason, RBT asks that the Court resolve the issue of whether to modify the Injunction on an emergency basis and that this issue not be tied to the same schedule as resolution of RBT's motion for an order to show cause.

RBT supports its request for relief on the bases provided in the accompanying memorandum.

## MEMORANDUM OF LAW

## INTRODUCTION

On March 16, 2026, at 9:28 AM, the Court entered the Injunction, confirming an interim preliminary injunctive award (the "Interim Award") granted by Arbitrator Dorian Damoorgian in the ongoing arbitration related to this matter (the "Arbitration"). The Arbitrator granted the Interim Award based on RBT's demonstration that the Enjoined Defendants had been violating the Settlement Agreement that underlies the dispute in this matter.

The Injunction states the following:

> 2. The defendants Anthony McKnight, Sherrie McKnight, Douglas Rios, and Performance Triggers, Inc. are prohibited from engaging in the manufacture or sale of forced reset triggers, or any parts that could be used in a forced reset trigger, including, but not limited, to the: (1) Partisan "The Disruptor"; (2) Super Selektor; (3) 3 Position Forced Reset Safety for AR-15; (4) Super Safety Kit; and (5) Taurus TX22.
>
> 3. This injunction is effective immediately and will remain in effect until otherwise ordered by the arbitrator or this court or until superseded by a final arbitration award or final judgment of this court.
>
> 4. This injunction binds the defendants listed above and their officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

ECF No. 162 ¶¶ 2–4.

The Enjoined Defendants have had notice of the Injunction's substantive terms for months: the Arbitrator announced his intent to enjoin the prohibited conduct on January 13, 2026; the Arbitrator granted the Interim Award on January 20, 2026; RBT first moved the Court to confirm the Interim Award on January 29, 2026, and moved to confirm the Interim Award again on March 5, 2026, after posting an injunction bond.

The Enjoined Defendants used this time to prepare a scheme to circumvent the Injunction's restrictions and continue their sales of forced reset triggers ("FRTs") and parts that could be used in a forced reset trigger ("FRT Parts") by having the website they use for the majority of their prohibited sales, www.performancetriggers.com (the "PT Website"), transferred to Bump, a company owned by an employee/agent of theirs, which would nominally own the site while they continued to use it sell FRTs and FRT Parts.

The Enjoined Defendants put this scheme into practice on February 9, 2026, having Defendants C&C and Christopher Rios (who are subject to the Enjoined Defendants' control) fraudulently transfer the PT Website and its related assets to Bump. Through this fraudulent transfer—which had no legal effect under Delaware law because C&C is a defunct Delaware LLC that cannot transact business or enter agreements—the Enjoined Defendants set themselves up to continue selling their inventory of FRTs and FRT Parts through the PT Website while Bump and its

owner Reginald Robinson ran cover for them by serving as the PT Website's nominal operators.

The Enjoined Defendants have continued with this scheme from the date of the purported transfer on February 9, 2026, to the present, and have not ceased their activity despite it now occurring in direct violation of the Injunction. Though RBT provided Bump and Robinson actual notice of the Injunction and their contumacious role assisting the Enjoined Defendants' violation, they have refused to cease assisting the Enjoined Defendants' prohibited sales. Similarly, Defendants C&C and Christopher Rios are violating the Injunction by knowingly giving cover to the Enjoined Defendants' contempt scheme through falsely maintaining that the PT Website and related assets were transferred to Bump and that the Enjoined Defendants have no involvement with the PT Website's ongoing sales of FRTs and FRT Parts. Finally, the Enjoined Defendants are actively using HKS, another entity owned and controlled by Defendants Anthony McKnight and Sherrie McKnight, to aid and abet their violation of the Injunction by using its financial assets to run their business operations for contumacious sales.

In addition to the Enjoined Defendants' contumacious sales through the PT Website, the Enjoined Defendants continue to violate the Injunction through sales of FRTs and FRT Parts they conduct through at least two additional websites that

they control: www.fasttriggers.com ("Fast Triggers") and www.triggerpartsusa.com ("TPUSA").

This contempt scheme is only the latest entry in the campaign by Anthony McKnight, Sherrie McKnight, and Douglas Rios to use every means at their disposal to "overwhelm" RBT with unnecessary legal proceedings by violating Court orders and contracts, as they have openly contemplated doing since 2022.[1] First, they pirated RBT's products with copycats like the WOT and Alamo-15, before agreeing to the permanent injunction and settlement agreement to end RBT's prior litigation against them.[2] Then, they revealed their agreement to that settlement was a fraud, violating both the injunction and settlement through continued sales of WOTs and other FRTs, necessitating the contempt proceedings in the prior cases and the present action for fraud and breach of contract. Now, they are flagrantly violating the Injunction, having built out a new contempt scheme to once again flout the Court's authority and interfere with RBT's business.

RBT requests an order to show cause why these Contemnors—the Enjoined Defendants, Christopher Rios, C&C, HKS, Reginald Robinson, and Bump—should not be found in contempt of the Injunction and sanctioned. RBT also

---

[1] Exhibit A (February 2022 text message from Douglas Rios).

[2] *Rare Breed Triggers LLC v. Big Daddy Enterprises, Inc.*, Case No. 1:21-cv-149-RH-HTC (N.D. Fla.); *Rare Breed Triggers LLC v. Big Daddy Unlimited, Inc.*, Case No. 1:22-cv-61-RH-HTC (N.D. Fla.) (together, the "Related Cases").

requests limited expedited discovery to determine the scope and severity of the Contemnors' contumacious activity and whether any other parties are involved, and a modification of the Injunction to freeze the Contemnors' assets and to appoint a receiver and a special master in order to uphold the Court's authority, protect RBT's rights, and ensure that the Contemnors do not continue to violate the Injunction.

## STATEMENT OF FACTS

In December 2025, RBT submitted an emergency request for an injunction prohibiting conduct in violation of the Settlement Agreement by the Enjoined Defendants, who were operating the PT Website to sell FRTs and FRT Parts. On January 12, 2026, the Arbitrator held a hearing on RBT's request and on January 20, 2026, the Arbitrator issued the Interim Award, prohibiting the Enjoined Defendants and those working with them from making or selling FRTs and FRT Parts, including multiple named FRT models.[3]

The Enjoined Defendants did not dispute their ownership and control over the PT Website in their opposition to RBT's motion or at the hearing. The Arbitrator found that the Enjoined Defendants owned and operated the PT Website

[3] ECF No. 160-1.

and used it to engage in sales of FRTs and FRT Parts in violation of the Settlement Agreement accordingly.[4]

Despite the Interim Award, the Enjoined Defendants continued selling FRTs and FRT Parts through the PT Website. RBT's counsel filed repeated letters with the Arbitrator regarding the open violation of the Interim Award. Following RBT's letters, the Enjoined Defendants removed certain FRTs from the PT Website, but other FRTs and all FRT Parts remained available for sale. The Enjoined Defendants also posted a notice on the front page of the PT Website (the "Notice") stating that several FRTs had been removed from sale on the PT Website due to the Interim Award, breaching the confidentiality required by the Court's arbitration order[5] and the Interim Award itself.[6] As part of the Enjoined Defendants' smear campaign against RBT, the Notice falsely claimed that the Interim Award was related to "patent litigation" rather than RBT holding the Enjoined Defendants accountable for fraud and breach of the Settlement Agreement.

On January 29, 2026, RBT moved to confirm the Interim Award with the Court.[7] A hearing on the motion was scheduled for February 13, 2026. On February 10, 2026, RBT's counsel discovered that the full range of FRTs and FRT

[4] *Id*. at 3.
[5] *See* ECF No. 113.
[6] ECF No. 160-1 at 6.
[7] ECF No. 137.

Parts previously sold by the Enjoined Defendants was once more available for sale on the PT Website and that the Notice had been removed.[8]

The Enjoined Defendants' counsel, Mr. Smith, filed a response letter claiming that on February 9, 2026, Defendant C&C (a cancelled Delaware LLC for which Defendant Christopher Rios was the sole member before its dissolution) was the sole owner of the PT Website and related operational assets following Performance Triggers' dissolution in November 2024 and that Christopher Rios had entered an agreement on C&C's behalf to sell "the performancetriggers.com website, customer lists, social media accounts, merchant accounts, Performance Triggers branded merchandise and all other Performance Triggers intellectual property to Bump Cerakoting & More, Inc. in an arm's length transaction."[9]

Attached to the letter was the purported purchase agreement (the "Agreement").[10] Christopher Rios had signed the Agreement on C&C's behalf as its authorized representative.[11] Though Performance Triggers had been formally dissolved in November 2024, the Agreement contains a provision in which C&C

---

[8] Exhibit B (letter to the Arbitrator).

[9] ECF No. 151-1. Mr. Smith's letter and the Agreement refer to the transacting entity as "C&C Holdings LLC," not "C&C Holdings Group, LLC." This appears to be a scribal error. Mr. Smith, representing C&C before the Court on February 13, 2026, referred to Defendant C&C as the entity that had transferred assets to Bump under the Agreement. Exhibit C at 13:20–23 (transcript of February 13, 2026, hearing).

[10] ECF No. 151-1 at 3–7.

[11] *Id*. at 7.

warrants that it "agrees to dissolve and/or abandon Performance Triggers, Inc. and shall provide [Bump] evidence of formal dissolution or name change of Performance Triggers, Inc. as soon as practicable."[12]

Per the Agreement, the closing for the Agreement occurred at noon on February 9, 2026, at which time C&C delivered to Bump "all assets set forth in Section 1 [of the Agreement] including any necessary credentials, usernames, and passwords required to access all accounts."[13]

At the February 13, 2026, hearing, Mr. Smith—who represents the Enjoined Defendants, Christopher Rios, and C&C—stated that the Agreement transferred all assets that had been held by C&C.[14] Notably, the Agreement did not include the transfer of any FRTs or FRT Parts. Thus, based on Mr. Smith's representation, C&C did not possess any FRTs or FRT Parts despite purportedly owning and operating the PT Website through which FRTs and FRT Parts were sold. The FRTs and FRT Parts that had been sold through the PT Website appear to instead have been owned by the Enjoined Defendants, who assumed responsibility for removing particular FRTs and FRT Parts from sale on the PT Website in response to the

[12] *Id*. at 4.
[13] *Id*. at 4.
[14] Exhibit C at 13:20–23; 14:2–6; 15:2–3.

letters from RBT's counsel about the continued FRT sales following the Interim Award.[15]

**Immediate continuation of sales by Bump following the Agreement.**

Immediately following the Agreement's execution, the PT Website began offering all the same FRTs and FRT Parts that had been sold by the Enjoined Defendants without disruption or pause,[16] doing so at the same or similar prices as the Enjoined Defendants had sold them for. Neither the Agreement nor Mr. Smith's letter explained how Bump has been able to sell the exact same inventory of niche FRT products as the Enjoined Defendants did without any pause in sales and without receiving the Enjoined Defendants' inventory, nor what the Enjoined Defendants have done with their inventory of FRTs and FRT Parts.

Though the Agreement purports to transfer the merchant accounts and similar assets used in running the PT Website and conducting its sales, merchant accounts are non-transferrable by their nature and cannot be shifted over for use by someone other than the one who created them. Merchant accounts are opened using the social security number of the individual who created them—and who personally guarantee them as well—and cannot simply be handed over to another person to use. This suggests that the merchant accounts used for the continuing

---

[15] *See* Exhibit D ¶ 9 (Smith letter to the arbitrator on behalf of Enjoined Defendants).

[16] *See* Exhibit B.

operation of the PT Website and its FRT sales are those created and controlled by the Enjoined Defendants. The "transfer" of these accounts to Bump's nominal ownership for continued use in the PT Website's operation indicates that the Enjoined Defendants continue to be involved with the site's operation.

Furthermore, the PT Website shows no visible change in ownership or operation: the PT Website states that Performance Triggers still operates out of the same Columbus, Ohio address as used by the Enjoined Defendants for Performance Triggers.[17]

**Bump and its owner Reginald Robinson**

Bump's owner is Reginald Robinson. Robinson incorporated Bump in Florida in November 2024. Bump was incorporated for the limited purpose of "cerakoting, sandblasting, painting."[18] Robinson operates social media accounts under the stage name "Mr. Bumpfire."[19] Robinson was previously an employee of Defendants Anthony and Sherrie McKnight's former business Defendant Big Daddy Unlimited, Inc. ("BDU"). By all appearances, he is still their employee or

---

[17] Exhibit E at 3 (time-stamped printout of the PT Website).
[18] *See* Bump's Articles of Incorporation, available here: https://search.sunbiz.org/Inquiry/CorporationSearch/ConvertTiffToPDF?storagePath=COR%5C2024%5C1107%5C50519015.tif&documentNumber=P24000068510. Cerakoting is a process used to coat mechanical hardware and firearms to increase their durability and resistance against wear and weather.
[19] *See* https://www.instagram.com/mrbumpfire/?g=5; https://bumpfire.com/.

agent for Performance Triggers' operations, serving as the face of the Performance Triggers brand online and marketing efforts.

Since 2023, Robinson has personally appeared in, and most often hosted, the plurality of the media content put out by the Enjoined Defendants for Performance Triggers, appearing in 36 out of 103 posts on the Performance Triggers Instagram account; and 10 out of 15 longform videos and 14 out of 33 shortform videos on the Performance Triggers YouTube account. He has been the sole host and impresario in Performance Triggers' video content and has referred to himself and Performance Triggers in the first person plural as "us" when asking viewers to engage with Performance Triggers' social media. Robinson's role as the public face of the Performance Triggers FRT sales operation did not change or diminish following Performance Triggers' nominal dissolution in November 2024: Robinson continued to appear in videos for marketing Performance Triggers FRT sales through the PT Website at least 6 more months until May 2025.

Robinson also previously incorporated an entity called BD UNLTD, LLC that appears to have been a cutout for the Enjoined Defendants' prior business BDU. Robinson incorporated it in January 2024 and dissolved it on November 29, 2024—three days after Performance Triggers, Inc. was dissolved.[20] The formal

---

[20] *See* BD UNLTD, LLC's page with Sunbiz: https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=BDUNLTD%20L24000

business and mailing address registered for Bump with the Florida Secretary of State—21803 NW 58th Terrace, Alachua, FL 32615—is a property owned by Robinson's mother, Servera Edward Browns, zoned as a nightclub/bar,[21] served as the address for an administratively dissolved entity she owned called Decorations by Pinky LLC,[22] and does not appear to be a site capable of being used for the business operations Bump purportedly took over and is now running. A photo of the property follows:

---

0135700&aggregateId=flal-l24000013570-59912a3d-29bc-4246-a71d-1488e93c8a5f&searchTerm=bd%20unltd&listNameOrder=BDUNLTD%20L240000135700.

[21] *See* Bump's entry on Sunbiz: https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=BUMPCERAKOTINGMORE%20P240000685100&aggregateId=domp-p24000068510-b6ddf88f-6f19-484e-81f9-5ba627f3ee0e&searchTerm=bump%20cerakoting&listNameOrder=BUMPCERAKOTINGMORE%20P240000685100; *see also* Alachua County's parcel information for 21803 NW 58th Terrace, Alachua, FL 32615: https://qpublic.schneidercorp.com/Application.aspx?AppID=1081&LayerID=26490&PageTypeID=4&PageID=10770&Q=1190481355&KeyValue=05494-000-000.

[22] https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=DECORATIONSBYPINKY%20L210002140780&aggregateId=flal-l21000214078-cf2a4eb4-8a2e-4401-b6ab-07b3d33cc55d&searchTerm=decorations%20by%20pinky&listNameOrder=DECORATIONSBYPINKY%20L210002140780.



**Sherrie and Anthony McKnight use the assets of their company HKS to run operations for the Enjoined Defendants' FRT sales.**

HKS is a third party entity that was incorporated in Florida by Anthony McKnight in 2021. In HKS's 2023 annual report, Sherrie McKnight was listed as HKS's president and she serves in this role to the present.

Performance Triggers' account with Capital City Bank was opened as an affiliate under an account for HKS, and Anthony McKnight has control over both accounts per Capital City Bank's records custodian. Records for Performance Triggers' account show that all of the account's over 500 ACH payments between June 2023 and August 2025 were made by Anthony McKnight under HKS's name.[23] All checks but one making withdrawals from the Performance Triggers

[23] Exhibit F (PDF printout of ACH transaction records produced by Capital City Bank).

account state that they are payable on HKS's account.[24] Defendants Anthony McKnight, Christopher Rios, and Doug Rios are all signers on Performance Triggers' Capital City account.[25]

The account shows no change in activity or control following Performance Triggers' dissolution in November 2024: Anthony McKnight continued to make all the ACH payments and to do so under HKS's name, and all Performance Triggers business operations continued without change, including weekly payroll distributions and other ongoing business expenses.[26] The continued use of the account by McKnight and absence of Christopher Rios or C&C from the account's transactions reflects that the purported transfer of Performance Triggers, Inc.'s assets to C&C following its dissolution either never took place or was purposefully incomplete.

The account remains under the active control and use by the Enjoined Defendants, as they used it to pay RBT on March 23, 2026, for the multiple sanctions fees ordered by the Court. The address used for Performance Triggers' account in the wire—27831 NW 46th Ave., Newberry, FL 32669—is registered to

---

[24] Exhibit G (records of withdrawals made on Performance Triggers' account).
[25] Exhibit H (signer card for Capital City Bank).
[26] Exhibit I (excerpted account statements for Performance Triggers' Capital City Bank account); Exhibit F.

Anthony and Sherrie McKnight.[27] This use of Performance Triggers' Capital City Bank account confirms that HKS remains actively involved with the Enjoined Defendants' operations because Performance Triggers' account is an affiliate under HKS's account. A true and accurate image of the receipt for the wire payment follows:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 3/23/2026 | 11:10 AM | Wire Transfer Incoming | TRN [redacted] SENDING ABA [redacted] CAPITAL CITY BANK ORG=/ [redacted]<br>1/PERFORMANCE TRIGGERS<br>2/27831 NW 46TH AVE<br>3/US/NEWBERRY,32669,FL<br>OBK= [redacted] Capital City Bank 217 North Monroe St US/Tallahassee,32301,FL<br>SRF= [redacted]<br>BBI=/LOCINS/CTRC<br>BNF= [redacted] WOOD HERRON & EVANS LLC 600 VINE ST STE 2800 CINCINNATI OH 45202-2409 US | 20260323 [redacted] | | $5,250.00 |

**The Enjoined Defendants control Fast Triggers and Trigger Parts USA**

The records for the Capital City Bank account reflect that the Enjoined Defendants conduct FRT sales through the websites for Fast Triggers and Trigger Parts USA. Multiple checks were deposited to the Performance Triggers account in 2025 made out to "Fast Triggers/Performance Triggers," "Fast Triggers/Performance," and "Trigger Parts USA/Performance Triggers," with at

[27] *See* Alachua County parcel summary for 27831 NW 46th Ave., Newberry, FL 32669: https://qpublic.schneidercorp.com/Application.aspx?AppID=1081&LayerID=26490&PageTypeID=4&PageID=10770&KeyValue=01840-002-001.

least one check stating in its memo line, "WOT/AR15."[28] The handwriting on these checks is visually inconsistent: the handwriting for the words "Performance" or "Performance Triggers" differs markedly from the rest of the handwriting on the checks and appears to have been added after the checks' execution by a different person.[29]

None of the checks otherwise refer to Performance Triggers by name or include its address despite containing address information for Fast Triggers and TPUSA that matches information their websites. The checks written out to "Trigger Parts USA/Performance Triggers" have TPUSA's address—2310 N. Henderson Ave., Suite 1518, Dallas, TX 75206—written on them in the addressee or memo section and one of them of additionally refers to TPUSA (and only TPUSA) by name in the memo section, but not to Performance Triggers. Excerpt images of these checks from Exhibit J and a screenshot from the TPUSA site follow:

---

[28] Exhibit J (2025 deposit statement for Performance Triggers' Capital City Bank account with images of checks).
[29] *Id.*




Check: [redacted] Amount: $144.00 Date: 2/14/2025
Run: 1002, Batch: 75, Seq: 74, PC: 0, Source: jXTC POD




Check: 0 Amount: $163.19 Date: 2/14/2025
Run: 1002, Batch: 75, Seq: 73, PC: 0, Source: jXTC POD



A check written out to "Fast Triggers/Performance" similarly uses the address listed on Fast Triggers' website. This check additionally has "WOT/AR15" written in its memo section: while WOTs have been sold by Fast Triggers, it does not appear they have been sold through the PT Website. An excerpt image of this check from Exhibit J and a screenshot from the Fast Triggers site follow:


UNITED STATES POSTAL SERVICE
POSTAL MONEY ORDER
Serial Number [redacted]
Year, Month, Day 2025-02-03 Post Office 950238 U.S. Dollars and Cents $300.00
Amount Three Hundred Dollars and 00/100
Pay to FAST TRIGGERS/Performance Clerk 07
Address 720 N. US Hwy 441
Lady Lake, FL 32159
From D. Benedetti
Address 16600 Monterey Rd
Morgan Hill, CA 95038
Memo WOT/AR15
SEE REVERSE WARNING • NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS
[redacted]

Check: 0 Amount: $300.00 Date: 3/6/2025
Run: 1002, Batch: 65, Seq: 131, PC: 0, Source: jXTC POD

| ADDRESS | TEXT OR CALL US | EMAIL US |
|---|---|---|
| 720 N US Hwy. 441 Lady Lake, FL 32159 | (352) 530-0130 | support@fasttriggers.com |

Copyright © 2025 FastTriggers.com

These three checks were deposited in Performance Triggers' account following its November 2024 dissolution, between January and March 2025.

Performance Triggers' Capital City Bank statements also show regular payments to Veeqo.com, an Amazon company that enables a customer to operate sales, fulfilment, and payment for multiple ecommerce websites through a single

account. A subscription to Veeqo provides the means for the Enjoined Defendants to operate sales of FRTs and FRT Parts for at least the PT Website, Fast Triggers, and TPUSA simultaneously and with ease.

On February 10, 2026, the day after the Agreement nominally transferred ownership of the PT Website to Bump, TPUSA conspicuously issued a press release announcing the introduction of new FRTs for AR-15 pattern rifles on its site.[30]

**The Enjoined Defendants are engaged in ongoing sales of FRTs and FRT Parts with the assistance of the other Contemnors.**

The Court entered the Injunction on March 16, 2026. On March 20, 2026, RBT served notice on the Enjoined Defendants, Christopher Rios, C&C, and HKS of their conduct in violation of the Injunction through Mr. Smith. Mr. Smith accepted service on behalf of HKS. RBT served notice on Reginald Robinson and Bump through a process server on March 23, 2026.[31]

Despite this notice of the Injunction and the violation, the PT Website continues its contumacious sales of FRTs and FRT Parts; as do the websites for Fast Triggers and TPUSA. The Contemnors all refuse to cease their conduct and to acknowledge their contempt of the Injunction.

---

[30] https://www.prlog.org/13126522-trigger-parts-usa-introduces-its-latest-ar-15-frt-triggers.html.

[31] Exhibit K (affidavit of service).

## LEGAL STANDARD

In the Eleventh Circuit, the procedure for enforcing an injunction is straightforward:

> [Injunctions] are enforced through the trial court's civil contempt power. If the plaintiff (the party obtaining the writ) believes that the defendant (the enjoined party) is failing to comply with the [injunction's] mandate, the plaintiff moves the court to issue an order to show cause why the defendant should not be adjudged in civil contempt and sanctioned. The plaintiff's motion cites the injunctive provision at issue and alleges that the defendant has refused to obey its mandate. If satisfied that the plaintiff's motion states a case of non-compliance, the court orders the defendant to show cause why he should not be held in contempt and schedules a hearing for that purpose. At the hearing, if the plaintiff proves what he has alleged in his motion for an order to show cause, the court hears from the defendant. At the end of the day, the court determines whether the defendant has complied with the injunctive provision at issue and, if not, the sanction(s) necessary to ensure compliance.

*Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000) (citations omitted).

"For issuance of a show-cause order, the plaintiff "need make only detailed *allegations* which, if true, would support a finding of contempt." *Id*. (quoting *Wyatt by & Through Rawlins v. Sawyer*, 80 F. Supp. 2d 1275, 1278 (M.D. Ala. 1999). "It is at the hearing where the plaintiff must present clear and convincing evidence of the defendant's contempt." *Id*. (quoting *Wyatt*, 80 F. Supp. 2d at 1280).

An enjoined party is liable for contempt when it acts through third-parties to violate an injunction. *Regal Knitware Co. v. NLRB*, 324 U.S. 9, 14 (1945)

("[D]efendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.").

## ARGUMENT

### I. The Contemnors are liable for contempt because they have violated the Injunction.

#### A. The Contemnors are violating the Injunction through prohibited sales of FRTs and FRT Parts.

The Contemnors are in contempt of the Injunction through their participation in the Enjoined Defendants' scheme to continue selling FRTs and FRT Parts in violation of the Injunction. The Enjoined Defendants sit at the head of the scheme, engaging in contumacious sales of FRTs and FRT Parts through the PT Website and through at least Fast Triggers and TPUSA. Bump and Robinson have actual notice of the Injunction but continue to assist the Enjoined Defendants through holding nominal possession of the PT Website while the Enjoined Defendants use it to sell their FRT inventory. Christopher Rios and C&C have actual notice of the Injunction and C&C continues to hold actual ownership of the PT Website while the Enjoined Defendants use it for contumacious sales,[32] and they cover for the Enjoined Defendants' contumacious sales by maintaining the falsehood that they are no longer involved with the PT Website's sales. And HKS has actual notice of

---

[32] This is because the Agreement was invalidly executed without authority. *See infra* at Section I(A)(2)(ii)(a).

the Injunction and aids the Enjoined Defendants' contumacious sales through the use of its assets to run the Enjoined Defendants' FRT sales operations for the PT Website, Fast Triggers, and TPUSA.

**i. The Enjoined Defendants continue to sell FRTs and FRT Parts.**

The Enjoined Defendants are currently selling FRTs and FRT Parts in violation of the Injunction through the PT Website and the websites for Fast Triggers and TPUSA.

**1. The Enjoined Defendants are working with Bump to sell FRTs and FRT Parts through the PT Website.**

All indications suggest that the Enjoined Defendants are using Bump and Robinson as cutouts to enable their continued sales of FRTs and FRT Parts through the PT Website.

First, the Enjoined Defendants appear to be the source of the PT Website's inventory: the Enjoined Defendants were the apparent source of FRTs and FRT Parts for the PT Website while C&C held it; C&C did not transfer any FRTs/FRT Parts to Bump in the Agreement, nor did it transfer prints, models, or other manufacturing sources which would be required for Bump to obtain manufacturing of FRTs that the Enjoined Defendants have been producing for sale on the PT Website under the brand name "PTI;" the PT Website's sales of FRTs and FRT Parts seamlessly continued without disruption or change in price following the

Agreement; there is no indication of how else Bump could possess an inventory of niche FRT products that was identical to the Enjoined Defendants' and that it was ready to sell on the PT Website immediately following the Agreement.

Second, the purported transfer of merchant accounts used in the Enjoined Defendants' operation of the PT Website to Bump under the Agreement—which cannot be transferred and remain tied to the individuals who created them, like Anthony McKnight or Doug Rios—indicates that the Enjoined Defendants continue to be involved with and responsible for the site's operation.

Third, the physical operations related to the PT Website's sales appear to remain under the Enjoined Defendants' control. The PT Website continues to use the same "4505 Kenny Road, #1102, Columbus, OH 43220" address[33] as used by the Enjoined Defendants for the PT Website's operations.

Fourth, Bump was incorporated by Robinson for the extremely limited business purpose of "cerakoting, sandblasting, painting:" not major e-commerce sales operations for FRTs. And Robinson is a longtime employee of the Enjoined Defendants, working previously for Anthony and Sherrie McKnight's other business, Defendant BDU, and serving as the face of Performance Triggers' brand and marketing for years. Far from an arms' length transaction as Mr. Smith claims, the purported transfer to Bump appears to have been an attempt by the Enjoined

---

[33] Which is a Staples office supply center.

Defendants to park nominal ownership of the PT Website and related assets in a legal entity that was within easy reach of them based on their relationship with Robinson as their employee/agent so they could circumvent the Injunction by continuing to use the site to run their FRT sales.

Fifth, the Enjoined Defendants continue to control and use Performance Triggers' bank account as demonstrated by their using it to pay RBT for sanctions fees.

By every available appearance, the Enjoined Defendants are engaged in ongoing contumacious sales of FRTs and FRT Parts through the PT Website, with Bump and Robinson acting as nominal owners of the site to give them cover for their prohibited sales.

**2. The Enjoined Respondents also continue sales through Fast Triggers and TPUSA.**

The Enjoined Defendants are also violating the Injunction through ongoing sales of FRTs and FRT Parts through the Fast Triggers and TPUSA websites. The Enjoined Defendants' control over these sites is demonstrated by bank records for Performance Triggers' account showing deposits from multiple checks made out to Fast Triggers and TPUSA.[34] These checks reflect that Fast Triggers and TPUSA are part of the Enjoined Defendants' Performance Triggers FRT sales operation and

[34] Exhibit J.

that the Enjoined Defendants control those websites' operations. The memo for one of the checks reflects the payment was made for the sale of a WOT, a type of FRT that was sold by Fast Triggers but not by Performance Triggers—demonstrating the Enjoined Defendants did deposit a check for a sale conducted through the Fast Triggers site.

There is no reasonable explanation for the Enjoined Defendants to consistently deposit checks like these in Performance Triggers' bank account unless the Enjoined Defendants control those sites and their sales. This conclusion is reinforced by the Enjoined Defendants payments to Veeqo.com, a service provider that would enable them to conduct the operations for multiple e-commerce sites from a single master account easily, as they appear to be doing with the PT Website, Fast Triggers, and TPUSA.

The Enjoined Defendants are thus also engaged in ongoing violations of the Injunction through their continuing sales of FRTs and FRT Parts through Fast Triggers and TPUSA.

**ii. The other Contemnors are violating the Injunction by knowingly assisting the Enjoined Defendants' scheme to engage in contumacious sales.**

Under Fed. R. Civ. P. 65(d), a third party is bound by an injunction when he has "actual notice of it" and is one the enjoined parties' "officers, agents, servants, employees, [or] attorneys" or is otherwise "in active concert with" one of an

enjoined party or his officers, agents, servants, employees, or attorneys. Fed. R. Civ. P. 65(d)(2)(C); *See FTC v. Leshin*, 618 F.3d 1221, 1236 (11th Cir. 2010) (third party entity controlled by enjoined individual also bound by injunction).

Third parties have actual notice of the Injunction, so long as they have "'knowledge of the mere existence of the injunction; not its precise terms.'" *FTC v. Acquinity Interactive, LLC*, Civil Action No. 14-60166-Civ-Scola, 2021 U.S. Dist. LEXIS 201525, at *11 (S.D. Fla. Sep. 29, 2021). "A party who learns about an injunction cannot 'maintain a studied ignorance of the terms of the decree in order to postpone compliance and preclude a finding of contempt.'" *United States v. Planes*, No. 8:18-cv-2726-T-23TGW, 2019 U.S. Dist. LEXIS 115314, at *29 (M.D. Fla. July 11, 2019) (citation omitted).

A third party is in active concert or participation with an enjoined party in violation of an Injunction "if [he] has a general awareness that his role was a part of an overall activity that is improper, and if the accused aider-abettor knowingly and substantially assisted the violation." *Bellsouth Telcoms., Inc. v. Mintz*, Civil Action No. 04-cv-3586, 2006 U.S. Dist. LEXIS 102744, at *4 (N.D. Ga. Mar. 30, 2006). Awareness of a third party's role in a violation may be demonstrated by "surrounding circumstances and expectations of the parties … because knowledge of the existence of a violation must usually be inferred.'" *Id*. (quoting *Woods v. Barnett Bank of Fort Lauderdale*, 765 F.2d 1004, 1009 (11th Cir. 1985)).

#### 1. Reginald Robinson and Bump are knowingly violating the Injunction.

Bump and Robinson possess actual notice of the Injunction because Robinson was served a cease and desist demand by RBT containing a copy of the Injunction. Bump and Robinson are therefore violating the Injunction by, as described above, knowingly aiding and abetting the Enjoined Defendants' contumacious sales through serving as nominal owners of the PT Website while the Enjoined Defendants continue to use the site run their operations selling FRTs and FRT Parts.[35]

Robinson is also bound by the Injunction as an agent/employee of the Enjoined Defendants. Under the Injunction's terms and Rule 65(d), an employee or agent of an enjoined party with actual notice of an Injunction is also bound. Robinson is an employee/agent of the Enjoined Defendants with actual notice of the Injunction. He is thus violating the Injunction through the ongoing sales of FRTs and FRT Parts through the site regardless of his assistance to the Enjoined Defendants' contumacious sales.

---

[35] *See supra* at Section I(A)(1)(i).

**2. Christopher Rios, C&C, and HKS are knowingly violating the Injunction**

Christopher Rios, C&C, and HKS are violating the Injunction by knowingly aiding and abetting the Enjoined Defendants' scheme to contumaciously continue selling FRTs and FRT Parts through the PT Website.

**a. Christopher Rios and C&C are deliberately providing cover to the Enjoined Defendants' contempt scheme.**

Christopher Rios and C&C have actual notice of the Injunction through their role as Defendants in this matter, through sharing the same attorney, Mr. Smith, as the Enjoined Defendants, and through RBT serving them through Mr. Smith with a cease and desist letter with the Injunction attached. *See Smith v. Ayer*, 101 U.S. 320, 326 (1879) (the law "considers the principal as affected with notice of all facts, notice of which can be charged upon the attorney"). Christopher Rios and C&C are the Enjoined Defendants' servants or agents based on their role holding nominal ownership of the PT Website while the Enjoined Defendants used it to run their sales of FRTs and FRT Parts and attempting to transfer the PT Website and assets to Bump to enable the Enjoined Defendants to using it for FRT sales in violation of the Injunction.

Christopher Rios and C&C are liable for contempt by knowingly aiding and abetting the Enjoined Defendants' contumacious sales scheme with Bump by actively perpetuating the false narrative that the PT Website and related assets were

transferred to Bump, that the transaction was at arms' length, and that the Enjoined Defendants have no involvement with the PT Website's ongoing sales of FRTs and FRT Parts.

C&C is also in violation of the Injunction because of its continued ownership over the PT Website and its related assets, which the Enjoined Defendants are using for their contumacious sales. C&C still owns the PT Website and the other assets purportedly transferred to Bump by the Agreement because Christopher Rios had no authority to bind it to the Agreement. C&C was cancelled as a Delaware entity on July 17, 2025,[36] and therefore no longer exists as a business entity under Delaware law and cannot enter agreements or hold property other than as a reserve for satisfying claims against it and does not have any owners, officers, or authorized representatives—including Christopher Rios. *In re Reinz Wis. Gasket, LLC*, Civil Action No. 2022-0859-MTZ, 2023 Del. Ch. LEXIS 106, at *4-6 (Ch. May 8, 2023). Thus, Christopher Rios had no authority to enter the Agreement on C&C's behalf and none of C&C's assets, including the PT Website, have been lawfully transferred to Bump. C&C is therefore violating the Injunction by assisting the Enjoined Defendants' contumacious sales of FRTs and FRT Parts through the PT Website that it owns.

---

[36] *See* ECF No. 134-1.

**b. HKS is knowingly aiding and abetting the Enjoined Defendants' contempt scheme.**

HKS has actual notice of the Injunction because its president, Defendant Sherrie McKnight, is one of the Enjoined Parties and because RBT served notice of the Injunction on her attorney, Mr. Smith. HKS is violating the Injunction by knowingly aiding and abetting the Enjoined Defendants' contumacious sales.

The Enjoined Defendants have used HKS's assets as an integral part of their ongoing FRT sales operations through the PT Website, Fast Triggers, and TPUSA for years. Performance Triggers' Capital City Bank account, through which Anthony McKnight conducts the Enjoined Defendants' business for FRT sales, is an affiliate under HKS's account—which Anthony McKnight also controls. All ACH transactions made for Performance Triggers' business operations selling FRTs and FRT Parts before and after its dissolution have been made by Anthony McKnight in HKS's name,[37] and all check withdrawals made for these business operations (except for one) have been explicitly payable on the HKS account.[38] The Enjoined Defendants have intertwined HKS's bank account with their FRT sales operations, which have continued without disruption since the last date for which RBT has discovery records (July 2025).[39] Based on the integral role that

---

[37] Exhibit F.
[38] Exhibit G.
[39] *See* Exhibit F; Exhibit I.

HKS has in the Enjoined Defendants' FRT sales operations, the Enjoined Defendants' ongoing sales of FRTs and FRT Parts mean that HKS is currently violating the Injunction through its role aiding and abetting the Enjoined Defendants' contumacious conduct.

For the above reasons, the Court should require the Contemnors to show cause why they should not be held in contempt for violating the Injunction and should schedule a show-cause hearing.

## II. The Court should grant expedited discovery into the Contemnors' contumacious conduct.

RBT seeks limited expedited discovery into the scope and severity of the Contemnors' contumacious activity so that appropriate sanctions and additional injunctive relief can be determined. Courts routinely grant requests for expedited discovery by parties moving for contempt proceedings related to the violation of an injunction for the purpose of ascertaining the scope and extent of the contumacious conduct and the amount of damages. *See Edwards Moving & Rigging, Inc. v. Jenkins*, No. 8:19-cv-1004-T-36SPF, 2020 U.S. Dist. LEXIS 89566, at *32 (M.D. Fla. May 21, 2020) (granting discovery to determine the amounts an enjoined party profited from violating a preliminary injunction); *Tracfone Wireless, Inc. v. Technopark Co.*, 313 F.R.D. 680, 690 (S.D. Fla. 2016); *TracFone Wireless, Inc. v. GCA Elecs., LLC*, No. 1:07-CV-3084 TCB, 2012 WL 4044864, at *1 (N.D. Ga. Sept. 13, 2012); *Davenport v. AWP, Inc.*, No. 8:18-CV-1064-T-36CPT, 2019 WL

2453813, at *4 (M.D. Fla. Feb. 6, 2019); *see also Disney Enterprises, Inc. v. Funtime Getaway, Inc.*, No. 604CV1565ORL18JGG, 2007 WL 9757944, at *1 (M.D. Fla. Feb. 27, 2007), *report and recommendation adopted*, No. 604CV1565ORL18JGG, 2007 WL 9757929 (M.D. Fla. Mar. 20, 2007).

Here, RBT seeks leave to serve records requests to all the Contemnors and to take depositions of Anthony McKnight, Sherrie McKnight, Doug Rios, Christopher Rios, and Reginald Robinson to ascertain the extent of the Contemnors' conduct in violation of the Injunction, whether any additional parties or non-parties are involved, and the harm it has caused RBT.

## III. The Court should modify the Injunction to freeze the Contemnors' assets and appoint a Receiver and a Special Master.

The Court should modify the Injunction to freeze relevant assets held by the Contemnors and appoint a Receiver to ensure that the Injunction is enforced, that Contemnors are unable to continue violating it as they already have, and to prevent further dissipation or transfer of assets that would frustrate RBT's ability to obtain meaningful final equitable and monetary relief.

### A. Legal standard for modifying preliminary injunction.

"Upon a finding of civil contempt, district courts have broad discretion in fashioning appropriate sanctions." *Edwards Moving & Rigging, Inc. v. Jenkins*, No. 8:19-cv-1004-T-36SPF, 2020 U.S. Dist. LEXIS 57074, at *6 (M.D. Fla. Apr. 1, 2020) (collecting cases); *see also Edwards Moving & Rigging, Inc. v. Jenkins*,

No. 8:19-cv-1004-T-36SPF, 2020 U.S. Dist. LEXIS 89566, at *32 (M.D. Fla. May 21, 2020) (modifying a preliminary injunction expand its scope and restrictions following contumacious conduct by enjoined parties).

An existing injunction can be modified to expand the scope of its restrictions when "the defendant has made absolutely clear that it will not comply with the injunction." *Philip Morris USA, Inc. v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 244-47 (S.D.N.Y. 2004). Where, as here, a defendant is enjoined from conduct such as "manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products" of a particular category and violates the injunction, the injunction "may be modified to impose more stringent requirements to ensure the original purposes of the injunction are met." *Richemont Int'l SA v. Replicawatchesman.com*, No. 16-cv-62612-BLOOM/Valle, 2017 U.S. Dist. LEXIS 213425, at *1-3 (S.D. Fla. Jan. 12, 2017) (citation omitted). "If the relief originally has not produced the intended result" and the defendant "has acted to frustrate the purpose of the original injunction," the solution is to "modify the decree so as to achieve the required result with all appropriate expedition." *Id*. (citation omitted).

An asset freeze is appropriate when necessary to preserve the opportunity for effective final equitable relief. *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) ("A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset

freeze, in order to assure the availability of permanent relief."); s*ee also Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir.1984) (district court may exercise its full range of equitable powers, including a preliminary asset freeze, to ensure that permanent equitable relief will be possible).

An asset freeze is particularly appropriate when the enjoined parties have frustrated the court's authority and impaired the moving-party's rights through a fraudulent transfer of assets. *See Hartford Cas. Ins. Co. v. Intrastate Constr. Corp.*, No. 10-61064-CIV-MARTINEZ/GOODMAN, 2015 U.S. Dist. LEXIS 192198, at *38–39 (S.D. Fla. Apr. 13, 2015) (when a plaintiff demonstrates the defendants' intent "to hide and dissipate assets before [a plaintiff] has the opportunity officially" to seek final relief against them, an asset freeze is warranted) (report and recommendation adopted by *Hartford Cas. Ins. Co. v. Intrastate Constr. Corp.*, No. 10-61064-MARTINEZ-GOODMAN, 2015 U.S. Dist. LEXIS 192197 (S.D. Fla. Apr. 21, 2015)).

Further, "when assets can be held or moved by third parties on behalf of a defendant," courts "routinely issue orders freezing and transferring assets to enforce equitable relief that extend to those third parties." *Leidel v. Project Inv'rs*, Civil Action No. 9:16-cv-80060-MARRA, 2021 U.S. Dist. LEXIS 212757, at *11 (S.D. Fla. May 28, 2021) (collecting cases); *CFTC v. Atkinson*, No. 18-23992-CIV-

MARTINEZ/AOR, 2018 U.S. Dist. LEXIS 232610, at *27–32 (S.D. Fla. Nov. 16, 2018) (ordering an expansive asset freeze against enjoined defendants who violated an injunction).

District courts have authority to appoint receivers as part of their equitable powers to preserve property and ensure the availability of effective relief. U.S.C. Fed. R. Civ. P. 66; *CFTC v. Fingerhut*, No. 1:20-cv-21887, 2020 U.S. Dist. LEXIS 92398, at *4–*5 (S.D. Fla. May 26, 2020) (appointing temporary receiver in advance of a preliminary injunction hearing); *U.S. Bank Tr. Co., Nat'l Ass'n v. Myers*, No. 3:23cv24668-MCR-HTC, 2024 U.S. Dist. LEXIS 65067, at *5–*6 (N.D. Fla. Jan. 11, 2024). A receiver may be appointed to take possession of property, manage assets, prevent dissipation or concealment of assets, and ensure compliance with injunctive orders. *See Atkinson*, No. 18-23992-CIV-MARTINEZ/AOR, 2018 LX 67352, at *38–*50 (appointing a receiver to hold defendants' assets to prevent their ongoing abusive and fraudulent conduct).

**B. The Court should impose an asset freeze on the Contemnors and appoint a Receiver.**

Here, the Contemnors are engaged in an ongoing scheme to violate the Injunction through the Enjoined Defendants' continued sales of FRTs and FRT Parts. The Enjoined Defendants executed the scheme by having C&C and Christopher Rios purportedly transfer the PT Website and related assets to Bump

so it could serve as their nominal owner while the Enjoined Defendants continued their contumacious sales with the assistance of HKS's assets.

The Contemnors have thus demonstrated the means and mentality to thwart the Court's authority and impair RBT's rights through the dissipation and transfer of assets. Accordingly, it is necessary for the Court to use its inherent authority to ensure that the Injunction is complied with and that the Contemnors' contumacious conduct is remedied by modifying the Injunction to freeze the relevant assets of the Contemnors and to appoint a Receiver. *See United States SEC v. McC Int'l Corp.*, No. 2:22-cv-14129-KMM, 2022 U.S. Dist. LEXIS 117237, at *14 (S.D. Fla. Apr. 21, 2022) ("[T]he Court finds that there is good reason to believe Defendants will hide, transfer, or otherwise dissipate their ill-gotten assets unless those assets are restrained. A freeze of all Defendants' assets is therefore appropriate at this time."); *Fingerhut*, No. 1:20-cv-21887, 2020 U.S. Dist. LEXIS 92398, at *4–*7.

To that end, as reflected in the attached Proposed Order,[40] RBT seeks an asset freeze against each of the Contemnors and the appointment of a Receiver over their assets to ensure they do not continue to violate the Injunction..

**C. The Court should appoint a Special Master and employ coercive incarceration to remedy further contempt if necessary.**

[40] Exhibit L (proposed order).

A court may name a special master to "address pretrial ... matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C); *Whitesell Corp. v. Electrolux Home Prods., Inc.*, No. CV 103-050, 2021 U.S. Dist. LEXIS 147099, at *10-11 (S.D. Ga. Aug. 5, 2021). Courts regularly appoint special masters to investigative, administrative, and oversight functions when there are issues of contested discovery and non-compliance with court orders. *See Gayle v. Meade*, No. 20-21553-Civ-COOKE/GOODMAN, 2021 U.S. Dist. LEXIS 231959, at *11–*12 (S.D. Fla. Dec. 3, 2021) (special master appointed to investigate whether defendants were violating preliminary injunction); *Celestineo v. Singletary*, CASE Nos. 72-109-Civ-J-14, 72-94-Civ-J-14, 1992 U.S. Dist. LEXIS 21408, at *36 (M.D. Fla. Oct. 9, 1992) (special master appointed to monitor compliance with injunction).

The Enjoined Defendants and their related businesses have a demonstrated practice of deleting information, transferring and hiding assets, and obscuring and withholding information, which has frustrated RBT’s ability to assess their representations and their compliance with their obligations in this matter and the Related Cases. As the Court recognized at the hearing on February 13, 2026, the Enjoined Defendants, Christopher Rios, and C&C have engaged in “antics” that

have wasted the time and resources of the Court and RBT and muddled the case,[41] including withholding discovery, obscuring material information about the nature of and relationships between the parties (such as C&C's ownership), and their operations. This practice is ongoing, as demonstrated by the purported transfer of the PT Website and assets to Bump just before the February 13, 2026, hearing, and the Enjoined Defendants' continued use of Performance Triggers' Capital City Bank account to pay the sanctions fees they have incurred in this matter despite their claims that all Performance Triggers operations have ceased or are under the control of C&C, itself a cancelled entity.

For these reasons, it is necessary for a special master to be appointed to investigate the Contemnors' business operations and assets to ensure they comply with the Injunction and cooperate with the Receiver and asset freeze requested by RBT.

Relatedly, RBT requests that the Court employ all necessary coercive tools to ensure the Contemnors' compliance with its orders, including coercive incarceration to address any refusal to cooperate with the Receiver or Special Master. Courts may use coercive incarceration to obtain compliance with their orders. *See Mesa v. Luis Garcia Land Serv., Co.*, 218 F. Supp. 3d 1375, 1380-81 (S.D. Fla. 2016); *Blanco GmbH + Co. KG v. Vlanco Indus., LLC*, No. 12-61580-

[41] Exhibit C at 21:2–10.

CIV-LENARD/GOODMAN, 2014 U.S. Dist. LEXIS 187274, at *27-30 (S.D. Fla. Dec. 19, 2014). Coercive incarceration is appropriate when a contemnor continually refuses to comply with a court's order and a court may pre-emptively state in an order that it will issue a warrant for the arrest of a party if he fails to comply with the order, with the incarceration continuing the party purges his contempt by compliance. *See Mesa v. Luis Garcia Land Serv., Co.*, 218 F. Supp. 3d 1375, 1381 (S.D. Fla. 2016); *FTC v. Vacation Communs. Grp., LLC*, No. 6:13-cv-789-Orl-37TBS, 2013 U.S. Dist. LEXIS 133531, at *7 (M.D. Fla. Sep. 18, 2013); *FTc v. Nat'l Urological Grp., Inc.*, No. 1:04-CV-3294-CAP, 2014 U.S. Dist. LEXIS 125431, at *36-40 (N.D. Ga. Sep. 2, 2014); *Souther v. Tate (In re Tate)*, 521 B.R. 427, 431-32 (Bankr. S.D. Ga. 2014).

To avoid further waste of the Court's and RBT's time and resources due to non-compliance with the Court's orders by the Contemnors, RBT requests that the Court impose coercive incarceration on the Contemnors if they fail to cooperate with the Receiver or Special Master as requested in RBT's proposed order until such time as they bring themselves into compliance.

## IV. RBT is entitled to attorney's fees.

Courts may require contemnors to pay a moving party's attorney's fees. *Sizzler Fam. Steak Houses v. W. Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1534

(11th Cir. 1986). RBT requests that the Court order any parties it finds in contempt pay RBT's attorney's fees incurred related to the present contempt proceedings.

## CONCLUSION

RBT respectfully requests that the Court grant its motion for an order to show cause and why the Contemnors should not be held in contempt and for expedited discovery and to modify the Injunction on an emergency basis to impose an asset freeze on the Contemnors and the appointment of a Receiver and a Special Master.

Dated: March 26, 2026

**CONTARINO ROTH LLC**

By: *<u>/s/ Jacob Roth</u>*
Jacob William Roth (Bar No. 1036551)
Josiah Contarino (PHV)
Contarino Roth LLC
2255 Glades Road, Suite 324A
Boca Raton, FL 33431
561 872 6508
jroth@contarinoroth.com
jcontarino@contarinoroth.com

**WOOD HERRON & EVANS LLP**

By: *<u>/s/ Glenn D. Bellamy</u>*
Glenn D. Bellamy
Wood Herron & Evans LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
gbellamy@whe-law.com

*Attorneys for Plaintiffs*

**LOCAL RULE 7.1(F) CERTIFICATION**

Undersigned counsel for Plaintiff RBT certifies that this memorandum complies with Local Rule 7.1(F) because it contains 7,999 words, excluding those portions exempted by the rule.

**LOCAL RULE 7.1(B) CERTIFICATION**

The undersigned counsel for RBT certifies that on March 25, 2026, counsel for RBT corresponded with counsel for Defendants Anthony and Sherrie McKnight, Christopher and Douglas Rios, Performance Triggers, Inc., and C&C Holdings Group LLC, Mr. Smith, to advise him of RBT's intent to file the present motion. Mr. Smith did not respond.

Counsel for RBT could not confer with counsel for non-parties Reginald Robinson and Bump, Cerakoting and More, Inc. because they have not appeared int his matter and RBT is not aware of them being represented by counsel—though RBT shall serve a filed copy of the motion and its exhibits on them.

With respect to High Kaliber Studios, Inc., Mr. Smith has represents its president, Sherrie McKnight, and has previously accepted service on its behalf. To the extent that Mr. Smith does not represent High Kaliber Studios, Inc., RBT's

counsel could not confer with High Kaliber Studios, Inc. because it has not appeared in this matter and RBT is not aware of it being represented by counsel otherwise.

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.1(F)(1), with respect to Defendants, this filing and its attendant papers are being served through an electronic filing system and will be received by counsel for Defendants.; with respect to nonparties Bump, Cerakoting and More, Inc. and Robinson, Plaintiffs have enlisted a process server that will be serving them; with respect to High Kaliber Studios, Inc., RBT will serve it either through requesting that Mr. Smith accept service on its behalf (as he previously did for RBT's notice of the preliminary injunction) or, if Mr. Smith does not accept service, by serving its registered agent.

*/s/ Jacob William Roth*
Jacob William Roth